UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| NAPOLEON HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: 18-cv-3562 (JKB) |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTINE WORMUTH, SECRETARY, | ) | |
| U.S. DEPARTMENT OF THE ARMY | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR MISTRIAL**

Pursuant to the Court's Order (ECF No. 130), Plaintiff, Napoleon Harris, by and through his undersigned counsel, hereby opposes Defendant's Motion for Mistrial in this matter. The Defendant's motion should be denied because the Defendant did not suffer any prejudice that warrants a mistrial. There was no third party contact with any juror and jury deliberations only occurred during the presence of all jurors. In support thereof, Plaintiff states the following:

**INTRODUCTION**

Mr. Harris filed the lawsuit, alleging that Defendant retaliated against him for engaging in protected activity. Specifically, Defendant fired Mr. Harris just three weeks after he contacted an EEO counselor to file a discrimination complaint. The trial began on August 22, 2022. The Court took witness testimony from August 23 – 30, 2022, with the exception of August 26 not being a trial day. On the afternoon of August 30, 2022, the jury began its deliberations, which continued into August 31, 2022. Defendant now seeks a mistrial because (1) Juror No. 6 briefly left the jury

room to buy a sandwich for lunch, and (2) while the Court was questioning him about Juror No. 6's brief absence, Juror No. 2 alluded to the verdict. Neither incident warrants a mistrial.

## **STATEMENT OF FACTS**

### **After the jury reached its verdict, Juror No. 6 briefly left the jury room.**

1. On the afternoon of August 31, 2022, Juror No. 6 left the jury room to buy a sandwich in the Court's cafeteria. [Trial Transcript (Transcript), Vol 7, p. 36, l. 11 – 14; p. 43, l. 10 – 25; p. 56, l. 22 – 24; p. 67, l. 17 – p. 68, l. 2; p. 76, l. 13 – 15; p. 80, l. 23 – 25; p. 87, l. 21 – 23; p. 92, l. 12 – 14; p. 99, l. 3 – 5]

2. After learning of Juror No. 6's absence from the jury room, the Court privately questioned each juror about the circumstances, and specifically, whether any deliberations occurred during Juror No. 6's absence and whether those deliberations were improperly influenced in any manner. [Transcript, p. 33, l. 8 – 35, l. 5; 52, l. 1 – 54, l. 10]

3. The Court directed the jurors not to discuss their testimony with each other in the jury room and confirmed that they did not. [Transcript, p. 74, l. 21 – p. 74, l. 14]

4. The jury agreed on a verdict before Juror No. 6 left the jury room. [Transcript, p. 38, l. 5 – 12; p. 46, l. 24 – p. 47, l. 1; p. 68, l. 2 – 3; p. 73, l. 10 – 25; p. 76, l. 16 – 18; p. 81, l. 1 – 3; p. 87, l. 24 – p. 88, l. 1; p. 89, l. 16 – 24; p. 92, l. 15 – 17; p. 94, l. 11 – 19; p. 99, l. 6 – 8]

5. The jury did not engage in deliberations during Juror No. 6's brief absence. [Transcript, p. 46, l. 7 – 11]

6. During Juror No. 6's absence, none of the remaining eight jurors discussed the case or engaged in deliberations about the verdict. [Transcript, p. 37, l. 15 – p. 38, l. 5 – 20; p. 68, l. 3 – 4; p. 71, l. 1 – 21; p. 82, l. 9 – p. 83, l. 22; p. 85, l. 7 – 10; p. 88, l. 15 – 24; p. 95, l. 7 – 96, l. 18. P. 99, l. .24 – p. 100, l. 1]

7. The jury did not change its agreed-upon verdict when Juror No. 6 returned to the jury room after eating his lunch.  [Transcript, p. 70, l. 2 – 6; p. 83, l. 20 -22; p. 89, l. 16 – 24; p. 94, l. 11 – 19; p. 100, l. 16 – p. 101, l. 13]

8. While Juror No. 6 was outside of the jury room, he did not communicate with anyone about the case; he did not communicate with anyone via text message, telephone call, or any other means; he did not leave the courthouse, [Transcript, p. 44, l. 5 – p. 45, l. 16]

9. When Juror No. 6 returned to the jury room, he did not attempt to change the jury's verdict.  [Transcript, p. 70, l. 2 – 6; p. 83, l. 20 -22; p. 89, l. 16 – 24; p. 94, l. 11 – 19; p. 100, l. 16 – p. 101, l. 13]

**While being questioned by the Court, Juror No. 2 alluded to the verdict.**

10. After learning that Juror No. 6 briefly left the jury room, the Court individually questioned each juror, in the presence of courtroom staff, Plaintiff and his counsel, and Defense counsel. [Transcript, p. 33, l. 8 – 35, l. 5; 52, l. 1 – 54, l. 10]

11. Before the Court began its inquiry of the jurors, the judge stated that "there was a communication to the courtroom deputy that the jury had reached a verdict."  [Transcript, p. 17, l. 8 – 9]

12. When the Court questioned her, Juror No. 2 testified that the jury foreman circled "yes" on the verdict form.  Juror No. 2 did not provide any additional information about the verdict.

13. The jury reached its verdict before Juror No. 2 made this statement to the Court.

14. The court deputy testified that, before the Court began its inquiry, he observed that the foreperson "handed the CSO [Court Security Officer] the envelope and said out loud, "We have a verdict" and gave him the envelope before the Court began questioning the jurors. [Transcript, p. 18, l. 10 – 11]

**ARGUMENT**

The standard of review for a court's denial of a motion for a mistrial is abuse of discretion. *U.S. v. Basham*, 561 F.3d 302, 319 (4th Cir. 2009). A mistrial is an extreme remedy that is only appropriate when an error occurs during trial that is so prejudicial to a party that it cannot be cured by some lesser remedy. *See U.S. v. Johnson*, 587 F.3d 625, 633 (4th Cir. 2009) ("even if we were somehow inclined to find that the disputed comments were improper, no retrial would be necessary because the defendants have failed to show that the comments so prejudicially affected their substantial rights as to deprive them of a fair trial."). When determining whether a mistrial is appropriate, the Court must decide whether the error was so prejudicial that it had some impact on the jury's decision and requires the expenditure of further time and resources to relitigate the matter. The Court's exercise of its discretion to order a mistrial must be made with "great care and only in cases of absolute necessity." *Salvatore v. State of Florida*, 366 So. 2d 745 [Fla. 1978], *cert. denied*, 444 U.S. 885, 100 S. Ct. 177, 62 L. Ed. 2d 115 [1979].

Here, there is no basis for a mistrial. Juror No. 6's brief absence and Juror No. 2's reference to the verdict did not prejudice either party or affect the jury's deliberations or verdict. In fact, it is impossible that these incidents could have affected the outcome in the case because they both occurred *after* the jury had reached the verdict and physically delivered it to the Court. Pursuant to *United States v. Johnson*, 945 F.3d 174, 179 (4th Cir. 2020), the Court conducted an extensive inquiry of each juror, outside of the presence of the other jurors. *See United States v. Johnson,* 945 F.3d at 179 (requiring the court to conduct a hearing if there has been a credible allegation of "external influence" on one or more jury members). [Transcript, p. 33, l. 8 – 35, l. 5; 52, l. 1 – 54, l. 10] The Court directed the jurors not to discuss their testimony with each other in the jury room and confirmed that they did not. [Transcript, p. 74, l. 21 – p. 74, l. 14]

During the Court's inquiry, each juror confirmed that the jury did not discuss the case or

deliberate during Juror No. 6's brief absence from the jury room. [Transcript, p. 37, l. 15 – p. 38, l. 5 – 20; p. 68, l. 3 – 4; p. 71, l. 1 – 21; p. 82, l. 9 – p. 83, l. 22; p. 85, l. 7 – 10; p. 88, l. 15 – 24; p. 95, l. 7 – 96, l. 18. P. 99, l. .24 – p. 100, l. 1]  Moreover, each juror confirmed that the jury agreed on a verdict *before* Juror No. 6 left the jury room. [Transcript, p. 38, l. 5 – 12; p. 46, l. 24 – p. 47, l. 1; p. 68, l. 2 – 3; p. 73, l. 10 – 25; p. 76, l. 16 – 18; p. 81, l. 1 – 3; p. 87, l. 24 – p. 88, l. 1; p. 89, l. 16 – 24; p. 92, l. 15 – 17; p. 94, l. 11 – 19; p. 99, l. 6 – 8]  Each juror also confirmed that the jury did not change its agreed-upon verdict when Juror No. 6 returned to the jury room after eating his lunch. [Transcript, p. 70, l. 2 – 6; p. 83, l. 20 -22; p. 89, l. 16 – 24; p. 94, l. 11 – 19; p. 100, l. 16 – p. 101, l. 13]

Juror No. 6 confirmed that the jury was not engaged in deliberations at the time he left the jury room to get lunch. [Transcript, p. 46, l. 7 – 11]  Juror No. 6 also confirmed that while he was outside of the jury room, he did not communicate with anyone about the case; he did not communicate with anyone via text message, telephone call, or any other means; and he did not leave the courthouse. [Transcript, p. 44, l. 5 – p. 45, l. 16]

The jurors confirmed that when Juror No. 6 returned to the jury room, he did not attempt to change the jury's verdict.  They explicitly testified that when Juror No. 6 returned to the room, they merely reconfirmed the verdict to which they had already agreed.  They also confirmed that they had a brief discussion about the Court's answer to one of their questions, but that did not change the verdict to which the entire jury had previously agreed. [Transcript, p. 70, l. 2 – 6; p. 83, l. 20 -22; p. 89, l. 16 – 24; p. 94, l. 11 – 19; p. 100, l. 16 – p. 101, l. 13]

Defendant argues that it is entitled to a mistrial simply because the process was flawed by Juror No. 6 leaving the jury room. [Transcript, p. 49, l. 7 – 25]  However, there is no legal authority to support that position.  The central issue here is whether there was any inappropriate contact that

may have influenced Juror No. 6's deliberations or decision as a jury member and, if so, whether that contact impacted the verdict. *Bagheri v. Bailey*, 713 Fed.Appex 141, (4th Cir. 2017) ("the district court is to consider the extent of the improper communication; the extent to which the communication was discussed and considered by the jury; the type of information communicated; the timing of the exposure; and the strength of the opposing party's case. Of these, the extent of the communication is "the most important factor.").

Courts have denied a party's request for a mistrial under similar circumstances and more egregious than that which occurred here. In *U.S. v. Frost*, 125 F.3d 346 (6th Cir. 1997), the Sixth Circuit found no error in the court's denial of a hearing and thus denied the request for new trials (on those grounds, there was a new trial ordered re: Brady violations), when, after the jury rendered its verdicts, a juror informed the Defendant's mother that another juror left the jury room during deliberations, with the assistance of a deputy, to lie down for 20 minutes in the clerk's office because she had been feeling ill. Defendants subsequently moved for an evidentiary hearing on whether the juror had been exposed to prejudicial external influences during her absence from the jury room. A hearing on the issue, and thus a mistrial, was denied because there was no evidence that the juror had any contact with anyone about the case during her absence from the jury room.

In *U.S. v. Shackelford*, 777 F.2d 1141, 1144–45 (6th Cir.1985), the court upheld a decision denying a hearing when a juror left deliberations and spoke with his wife for a few minutes before returning to the jury room. The court found that the defendants failed to show that the juror had been exposed to any extraneous information which could have prejudiced them, especially as the juror always had voted for guilt since the beginning of deliberations.

In *Wolfe v. Johnson*, 565 F.3d 140 (4th Cir. 2009), that court held that the trial court's conclusion that the habeas petitioner, who was convicted of capital murder, failed to show

prejudicial influence on jury's deliberations where a juror spoke to his wife on the phone during deliberations was not an unreasonable application of federal law. The court noted that the defendant's assertion that the call constituted an external influence was speculative because there was no evidence of what the juror discussed with his wife.

Here, there was no improper jury communication. Juror No. 6 testified that he did not speak or communicate with anyone about the case during his brief absence. [Transcript, p. 44, l. 5 – p. 45, l. 16] Likewise, the remaining members of the jury confirmed that they had already reached a verdict before Juror No. 6 left, they did so when Juror No. 6 was present, they did not discuss the case or engage in deliberations when Juror No. 6 was absent, and they did not engage in further deliberations about the verdict when Juror No. 6 returned. They merely reconfirmed the verdict to which they had previously agreed and discussed the Court's response to their question. [Transcript, p. 37, l. 15 – p. 38, l. 5 – 20; p. 68, l. 3 – 4; p. 71, l. 1 – 21; p. 82, l. 9 – p. 83, l. 22; p. 85, l. 7 – 10; p. 88, l. 15 – 24; p. 95, l. 7 – 96, l. 18. P. 99, l. .24 – p. 100, l. 1; p. 38, l. 5 – 12; p. 46, l. 24 – p. 47, l. 1; p. 68, l. 2 – 3; p. 73, l. 10 – 25; p. 76, l. 16 – 18; p. 81, l. 1 – 3; p. 87, l. 24 – p. 88, l. 1; p. 89, l. 16 – 24; p. 92, l. 15 – 17; p. 94, l. 11 – 19; p. 99, l. 6 – 8; p. 70, l. 2 – 6; p. 83, l. 20 -22; p. 89, l. 16 – 24; p. 94, l. 11 – 19; p. 100, l. 16 – p. 101, l. 13] Therefore, the Defendant is not entitled to a mistrial on that basis.

Likewise, the Defendant is not entitled to a mistrial because Juror No. 2 inadvertently alluded to the jury's verdict during the Court's inquiry. There is no evidence that the Defendant was prejudiced by potentially being made aware of the verdict before it was officially rendered because ***the jury had already come to its decision*** before Juror No. 2 made the statement. This is supported by the testimony of the Court's deputy that the foreperson told the CSO that the jury had reached a verdict before the Court began its inquiry of any of the jurors. [Transcript, p. 17, l. 8 – 9] Further,

the foreperson gave the CSO what he indicated was the verdict form in an envelope. [Transcript, p. 18, l. 10 – 11] Clearly, Juror No. 2's statement did not affect the outcome of the verdict because she made the statement only in the presence of the Court and the attorneys for the parties in the case and *after* the jury reached a verdict. Therefore, the Defendant is not entitled to a mistrial on that basis.

## CONCLUSION

WHEREFORE, Plaintiff hereby requests that the Court DENY Defendant's Motion for Mistrial and receive and enter the jury's verdict. A proposed Order is enclosed.

RESPECTFULLY SUBMITTED,

ALAN LESCHT AND ASSOCIATES, P.C.

/s/ *N. Campbell*

Nekeisha Campbell [Bar No. 21681]
Alan Lescht & Associates, P.C.
1825 K Street NW, Suite 750
Washington, DC 20006
Tel (202) 315-1738
Fax (202) 463-6067
nekeisha.campbell@leschtlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2022, I filed a copy of the foregoing via the Court's electronic filing system, which will serve notice on:

Evelyn Lombardo Cusson (Bar No. 13926)
Tarra DeShields
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4833
Evelyn.Cusson@usdoj.gov
*Attorney for the Department of the Army*

          /s/ *N. Campbell*

Nekeisha Campbell [Bar No. 21681]
Alan Lescht & Associates, P.C.
1825 K Street NW, Suite 750
Washington, DC 20006
Tel (202) 315-1738
Fax (202) 463-6067
nekeisha.campbell@leschtlaw.com
*Counsel for Plaintiff*