# EXHIBIT 1

```
1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
2                            NORTHERN DIVISION

3    NAPOLEON HARRIS,                    )
                                         )
4           Plaintiff,                   )
        vs.                              )
5                                        ) CIVIL NO.:
     CHRISTINE WORMUTH, Secretary,       ) 1:18-cv-03562-JKB
6    U.S. Department of the Army,        )
                                         )
7           Defendant.                   )
     _____)
8

9                                        Baltimore, Maryland
                                         August 31, 2022
10

11                      TRANSCRIPT OF PROCEEDINGS
                           JURY TRIAL – VOLUME VII
12              BEFORE THE HONORABLE JAMES K. BREDAR
                            Courtroom 5A
13

14   For the Plaintiff:

15        Nekeisha Campbell, Esquire
            Alan Lescht & Associates, PC
16          1825 K Street NW, Suite 750
            Washington, DC 20006
17

18   For the Defendant:

19        Evelyn L. Cusson, Esquire
          Tarra DeShields, Esquire
20          Office of the United States Attorney
            36 S. Charles Street, 4th Floor
21          Baltimore, MD 21202

22

23   Also Present: Michael Carlson, Esquire; Department of the Army

24

25        Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

```
1                    P R O C E E D I N G S
2        (Jury reconvened at 9:30 a.m. for continued deliberations.)
3        (10:05 a.m.)
4             THE COURT:  Good morning.  Be seated, please.
5    Counsel are present.
6             Okay.  We've received a communication from the jury.
7    It has many elements.
8             "Number 1, please clarify what the following acronyms
9    stand for:  SSO, DIA, DAC, NSA CSS, SAFE."  That was SSO, DIA,
10   DAC, NSA CSS, SAFE.
11            "Number 2, could we have the transcript for Corry
12   McGriff's deposition?
13            "Number 3, could we have a calendar for the 2013
14   year?
15            "Number 4, could we have Mr. Harris's deposition?"
16            Interestingly, this is signed Juror No. 3.  Yesterday
17   in court, the indication was that Juror No. 1 was the
18   foreperson.
19            It's dated 8/31/2022, 9:39 a.m.
20            So the evidence in the case, of course, is closed.
21   If the parties are able to stipulate as to what these acronyms
22   stand for and jointly agree that the translation or whatever
23   should be transmitted to the jury, I'll be open to that
24   possibility.
25            SSO, Site Security Officer?
```

```
1              MS. DESHIELDS:  Special Security Officer.
2              THE COURT:  Site Security Officer.
3              MS. CUSSON:  It may also be Site Security Officer.
4              MS. DESHIELDS:  It was very particular, it's Special
5    Security Officer.
6              MS. CAMPBELL:  Plaintiff says Site Security
7    Officer.
8              THE COURT:  So no agreement on that.
9              MS. DESHIELDS:  We can say Site Security Officer,
10   it's fine, Your Honor.  No, Site Security Officer is fine.
11   This is not something that we need to debate about.
12             THE COURT:  DIA?
13             MS. DESHIELDS:  Defense Intelligence Agency.
14             MS. CAMPBELL:  Yes.
15             THE COURT:  Defense Intelligence Agency.
16             DAC?
17             MR. CARLSON:  Department of the Army Civilian,
18   typically.  Although I think it was maybe used in a different
19   context in some document I saw.  I think I remember a document
20   where it had one acronym slash DAC, and the normal DAC didn't
21   make sense to me.  So I apologize.
22             THE COURT:  Is there an agreement among the parties
23   as to what DAC stands for based on what's in our record?
24   Sounds like a question mark to me.
25             MS. CAMPBELL:  I think the parties share the same
```

1   confusion about the context in which it was used.

2          MS. DESHIELDS:  It was on the exhibit related to the

3   transfer of the facility, a removal from the caretaking

4   facility.  There's that long subject line, and that's where it

5   appears, DIA slash DAC.

6          MS. CAMPBELL:  And the document itself doesn't define

7   what DAC means?

8          MS. DESHIELDS:  I don't think it did.  It just had

9   the acronym.  I can't remember.

10          THE COURT:  I don't think you have an answer to

11   that.

12          NSA CSS.  We all know what the NSA stands for but

13   what is CSS?  The way they've written this, it looks like NSA,

14   perhaps she's got a space and then CSS, but it's right on the

15   same line.  NSA equals the National Security Agency, no dispute

16   about that.

17          MS. CAMPBELL:  That's correct.

18          THE COURT:  Maybe we'll answer this with -- by

19   placing CSS on the next line, even though she didn't, with a

20   question mark.

21          SAFE?

22          MR. CARLSON:  Is it all capitals?

23          THE COURT:  All capitals.

24          MR. CARLSON:  The context might matter but there's a

25   system we use for transferring documents that's called DOD

1    SAFE, but I don't remember it being used.

2           MS. CAMPBELL:  Plaintiff is unsure without the

3    context as well.

4           MS. DESHIELDS:  Secure Access File Exchange, Your

5    Honor.

6           THE COURT:  Secure Access File Exchange?

7           MS. DESHIELDS:  Exchange, yes.

8           THE COURT:  What's your basis for saying that?

9           MS. DESHIELDS:  I don't remember if the document

10   itself says that, but I know that is the portal that DOD

11   transfers information.

12          MS. CAMPBELL:  Without context, plaintiff can't agree

13   or disagree.

14          THE COURT:  Let's talk about the McGriff deposition

15   and the Harris deposition.  First of all, as to the Harris

16   deposition, although they referenced the deposition, all that's

17   in evidence are two pages of that deposition.  The great

18   majority of that deposition is not in evidence, so that's not

19   in play; that's not possible.  There is the two pages of the

20   deposition, and then there is the McGriff deposition presumably

21   that exists as an entire document.

22          So there's a basic problem with providing testimony

23   to jurors once they're deliberating, and read-backs and

24   submission of testimony in this fashion is widely discouraged

25   by the appellate courts but not prohibited.  The reason for the

1   discouragement is that it is widely thought that to permit some

2   testimony to be read back or to be delivered in transcript form

3   has the consequence of emphasizing some evidence perhaps to the

4   detriment of other evidence, and courts are loathe to highlight

5   some portion of the proof over other portions.

6           On reflection, my view is that provided the parties

7   both agree that both depositions requested should go back, I'll

8   consider doing it.  But if either or both party objects to any

9   of this, I'm not going to do it.

10          MS. CAMPBELL:  Plaintiff agrees, obviously for the

11  redacted version.

12          THE COURT:  Plaintiff agrees that what should go

13  back?

14          MS. CAMPBELL:  The redacted version of the McGriff

15  transcript that we read into evidence and the pages of the

16  Harris deposition that defense counsel read into evidence could

17  go back.

18          THE COURT:  Okay.  So plaintiff is in favor.  You can

19  take a minute, defendants, or you can tell me your position.

20          MS. DESHIELDS:  Your Honor, our position is that we

21  think that the jurors should rely on their independent

22  recollection of the testimony as it was read to them instead of

23  being privy to the transcript itself.

24          THE COURT:  There's no agreement; the answer will be

25  no.

1          And they're asking for a calendar for the year 2013.

2   I've had my judicial assistant pull one off the internet.

3   Plaintiff, do you agree that a calendar may be supplied?

4          MS. CAMPBELL:  Plaintiff agrees.

5          THE COURT:  Defendant, do you agree?

6          MS. DESHIELDS:  Court's indulgence, Your Honor.

7          We agree, Your Honor.

8          THE COURT:  Show this calendar to counsel for both

9   sides first.  Ms. Campbell, is that calendar acceptable?

10          MS. CAMPBELL:  Yes, Your Honor.

11          THE COURT:  Ms. Cusson, is that calendar acceptable?

12   Is it?

13          MS. CUSSON:  Yes, Your Honor.

14          THE COURT:  Mark it as Court's Exhibit No. 1.  Once

15   we have our overall response prepared --

16          THE CLERK:  Your Honor, I had the juror communication

17   that we sent yesterday as Court's Exhibit 1, so this will be

18   Court's Exhibit 2?

19          THE COURT:  Let's be careful about that, though,

20   because there will be a Juror Communication No. 2 and you don't

21   want an inconsistency in that numbering system to the extent

22   that you've made them Court exhibits.  So let's call this Court

23   Exhibit 100.

24          THE CLERK:  Okay.

25          MS. DESHIELDS:  Your Honor, we do have the definition

1    for the acronym CSS that was beside NSA.

2              THE COURT:  What is that?

3              MS. DESHIELDS:  It's Central Security Service.

4    National Security Agency Central Security Service.

5              THE COURT:  That's part of the NSA?

6              MS. DESHIELDS:  Yes.

7              THE COURT:  Ms. Campbell?

8              MS. CAMPBELL:  Plaintiff agrees.

9              THE COURT:  The Court is going to leave the bench,

10   work on the response.  Counsel, please remain in the courtroom.

11   We will be back as soon as we have this pulled together.

12             THE CLERK:  All rise.  Court stands in recess.

13        (Recess taken at 10:19 a.m., until 10:31 a.m.)

14             THE COURT:  Be seated, please.  Show the jury

15   communication to counsel.

16             Mr. Clerk, this is part of Jury Communication No. 2;

17   Jury Communication No. 1 having occurred last night in relation

18   to how long the jury was going to deliberate.  This is the

19   first note we received from them, but it is part of overall

20   Jury Communication No 2.  Accordingly, please mark this as

21   Court Exhibit 2A.

22             The Court's response to 2A will be marked 2B.  Given

23   that we are going to be attaching that 2013 calendar to the

24   response, we will mark the calendar as Court Exhibit 2C, as in

25   Charles.  Off the record.

1      (Discussion held off the record.)

2            THE COURT:  Yes, ma'am?

3            MS. DESHIELDS:  Should there be a mention to the jury

4      that the communication should come through the actual

5      foreperson since it's been put on the record as the

6      identification of the foreperson?

7            THE COURT:  I suppose there's no harm in that.

8      Ms. Campbell, do you agree?

9            MS. CAMPBELL:  Yes, Your Honor.

10           THE COURT:  Okay.  Brief recess.

11           THE CLERK:  All rise.  Court stands in recess.

12      (Recess taken at 10:34 a.m., until 10:48 a.m.)

13           THE COURT:  All right.  The Court now has finished

14      preparation of its proposed jury -- response to Jury

15      Communication No. 2.  This response, as I previously indicated,

16      will be marked as Court Exhibit 2B, and it has an appendix in

17      the form of this calendar but we're just calling that Court

18      Exhibit 2C.

19           2B reads as follows:  "Jury Communication No. 2.

20      Ladies and gentlemen of the jury, you've sent the following

21      questions.  'One, please clarify what the following acronyms

22      stand for:  SSO, DIA, DAC, NSA CSS, SAFE.  Two, could we have a

23      transcript for Corry McGriff's deposition?  Three, could we

24      have a calendar for the 2013 year?  Four, could we have

25      Mr. Harris's deposition?'

1            "The answers to your questions appear below:

2            "One, acronyms.  A, SSO:  'Site Security Officer.'

3            "B, DIA:  'Defense Intelligence Agency.'

4            "C, DAC:  [Unable to define at this time].

5            "D, NSA CSS:  'National Security Agency Central

6     Security Service.'

7            "E, SAFE:  [Unable to define at this time]."

8            Two:  "You must rely on your collective recollection

9     of the testimony of Corry McGriff together with all of the

10    evidence received during the trial."

11           Three:  "Attached to this jury communication you will

12    find a calendar for the year 2013."

13           Four:  "You must rely on your collective recollection

14    of the testimony of the plaintiff together with all of the

15    evidence received during the trial.

16           "The Court notes that the most recent jury

17    communication was signed by 'Juror No. 3.'  Based on its

18    content, the Court infers that the message was sent on behalf

19    of the entire jury, and the Court has answered accordingly.  To

20    the extent there are further communications, please be certain

21    that any note(s) is signed by Juror No. 1, the juror who was

22    identified as your foreperson when you assembled and were

23    dismissed last evening.  The appearance of 'Juror No. 1' at the

24    bottom of your communications will clarify for the Court that

25    the message is being sent by the foreperson on behalf of the

 1   entire jury.

 2          "If an individual juror wishes to communicate with

 3   the Court, they may do so by sending a written message signed

 4   with their specific juror number.  Thank you.  James K. Bredar,

 5   Chief Judge."

 6          Ms. Campbell, is the response acceptable to the

 7   plaintiff?

 8          MS. CAMPBELL:  Your Honor, my client tells me he

 9   believes he knows what the DAC stands for, Department Army

10   Civilian.  Does that sound correct to you all?

11          MS. DESHIELDS:  It does, Your Honor.

12          MR. CARLSON:  It's not.  In the Army that is the most

13   common use of that acronym.  I believe, but I've not been able

14   to verify it on an official site -- I think it's probably

15   changed its name -- but it's an acronym within an acronym that

16   stands for Defense Information Agency Counterintelligence and

17   Security Activity.  But I have not verified that on DIA's

18   official site so I'm hesitant to throw that out there.  But in

19   context, it's not Department of the Army Civilian.

20          MS. CAMPBELL:  Okay.  So to answer your original

21   question, Your Honor, yes, that sounds accurate to the

22   plaintiff.

23          THE COURT:  What sounds accurate to the plaintiff?

24   What the Army lawyer has just said here in court?

25          MS. CAMPBELL:  No, I'm sorry.  I agree with him we

1   don't have an agreement on what DAC means.

2           THE COURT:  So the Court's proposed response to the

3   jury in its entirety is acceptable to the plaintiff?

4           MS. CAMPBELL:  Yes, Your Honor.

5           THE COURT:  And to the defendant?

6           MS. CUSSON:  Yes, Your Honor.

7           THE COURT:  Take this response No. 2 together with

8   the calendar so that you've got 2B and 2C with you, Court's

9   Exhibits 2B and 2C, and deliver them to the jury.

10          THE CLERK:  Yes, Your Honor.

11          THE COURT:  Do you have exact copies that you are

12  docketing now of these jury communications?

13          THE CLERK:  Yes, Your Honor.

14          THE COURT:  Okay.  I take it the law clerk has

15  provided you with an exact copy for docketing?

16          THE CLERK:  For which exhibit, Your Honor?

17          THE COURT:  2B.

18          THE CLERK:  I have -- yes.

19          THE COURT:  Just want to make sure you have

20  everything you need for docketing even though we're delivering

21  things into the jury room and they're not under your control

22  anymore.

23          THE CLERK:  Correct.

24          THE COURT:  Good.

25      (Pause.)

1          THE COURT:  Mr. Clerk, have you delivered Court

2    Exhibits 2B and 2C to the jury?

3          THE CLERK:  Yes, Your Honor.

4          THE COURT:  We're in recess subject to call.

5          THE CLERK:  All rise.  Court stands in recess.

6      (Recess taken at 10:55 a.m., until 11:58 a.m.)

7          THE COURT:  Be seated, please.  Let the record

8    reflect that we have received another note from the jury.  This

9    will be under the general category of Jury Communication No. 3.

10   The note will be marked as Court Exhibit 3A.  Here's the

11   message:

12          "Regarding the damages, can we increase the amount or

13   is the 300,000K capped, or can we award in excess of the

14   demand?"  Show the note to counsel and mark it and docket it.

15          I propose to respond to the jury as follows, Jury

16   Communication No. 3:  "Ladies and gentlemen of the jury, you

17   have sent the Court the following question:  'Regarding the

18   damages, can we increase the amount or is the 300,000K capped,

19   or can we award in excess of the demand?'

20          "The answer to your question appears below.  As I

21   previously instructed you, if you find defendant liable, then

22   you should award that amount of noneconomic damages that you

23   find the plaintiff has proven he incurred.  The plaintiff bears

24   the burden of proving his damages and their amount by a

25   preponderance of the evidence.  You are instructed that the

1    advice of counsel is not evidence and that you alone must

2    determine the proper amount of damages, if any, based upon the

3    facts you have heard and the Court's charges as to the law.

4    Signed James K. Bredar, Chief Judge."

5              Pass this down to counsel so they can read it.

6              Ms. Campbell, what's your position on the Court's

7    proposed response?

8              MS. CAMPBELL:  No objection.

9              THE COURT:  Ms. DeShields?

10             MS. DESHIELDS:  No objection, Your Honor.

11             THE COURT:  Deliver the Court's response to the jury

12   and report back.

13        (Pause.)

14             THE COURT:  Mr. Gurevich, have you delivered the

15   Court's response to the jury question that was just before us?

16             THE CLERK:  Yes, Your Honor.

17             THE COURT:  Thank you.  So we will mark the note as

18   Court Exhibit 3A and the Court's typed-out response as Court

19   Exhibit 3B, as in baker.

20             What are the lunch plans for the jury?

21             THE CLERK:  Your Honor, the jury has received their

22   lunch.

23             THE COURT:  Okay.  We will be in recess subject to

24   call.

25             THE CLERK:  All rise.  Court stands in recess.

1          (Recess taken at 12:03 p.m., until 12:59 p.m.)

2          THE COURT:  Good afternoon.  Be seated, please.  Do

3   we have officials from the Marshal Service present?  Not yet.

4   We do have the court security officers present and their chain

5   of command.  We have the Clerk of Court present in addition to

6   our courtroom deputy clerk, Mr. Gurevich, who has been working

7   with me throughout this trial.

8          Let me try to reconstruct for the record events that

9   have occurred in approximately the last 45 minutes.  As the

10  record makes clear, the jury in this case retired to deliberate

11  on their verdict sometime yesterday afternoon.  Last evening at

12  about 5:30, they were excused overnight to return this morning

13  to continue their deliberations.

14         There was a substantial note from the jury earlier

15  today.  In consultation with counsel, the Court prepared a

16  detailed response.  That response was delivered back to the

17  jury.

18         Then there was another communication in reference to

19  the computation of damages.  The Court, in consultation with

20  the parties, prepared a response on that, and that response was

21  delivered to the jury.

22         And then subsequent to all of that, approximately 30

23  to 40 minutes ago, my courtroom deputy clerk came to me and

24  advised in chambers that he believed -- I don't know his basis

25  for this -- that the jury had reached a verdict.  He had with

1  him an envelope that apparently had come from the jury that

2  contained certain materials.  He did not open it.  Let me just

3  confirm that with him now.

4          THE CLERK:  Correct, Your Honor.

5          THE COURT:  No one in chambers opened it.  Instead I

6  took possession of it, sealed it with Scotch tape, and have it

7  here in my hand.  So I don't believe that this envelope has

8  been opened at all, and I don't know what the contents of the

9  envelope are, and I don't think anyone except the jury knows

10 what the contents of the envelope are.

11          Then my courtroom deputy advised that he had been

12 advised that a court security officer had perhaps observed a

13 member of the jury entering the jury room.  That then raised

14 the question of, okay, well, did the court security officer

15 observe a juror leave the jury room?

16          The standard operating procedure in the District of

17 Maryland is that once a jury retires to deliberate, they are in

18 the jury room.  There is a bailiff in the form of a court

19 security officer who is on post 100 percent of the time at the

20 door that allows access between the courtroom and the jury

21 room.  There is another door to jury rooms in the northern

22 division in the District of Maryland, including with respect to

23 Courtroom 5A, but my understanding is that the standard

24 practice is that both doors to the jury room are closed and

25 that there's an alarm that is set so that if one of the doors

1    is opened, the alarm will sound.  Perhaps I'm misinformed in

2    that regard, but that has certainly been my long experience

3    with courtrooms and jury rooms here.

4           So we have then two things occurring simultaneously.

5    Apparently a juror left the jury room without court staff or a

6    court security officer knowing that a juror had left, and

7    simultaneous with that event -- or roughly simultaneous --

8    there was a communication somehow to the courtroom deputy that

9    the jury had reached a verdict.

10          The most fundamental question that's presented by all

11   of this is was the verdict, if there is a verdict, arrived at

12   while all of the jurors were present and participating in

13   deliberating.  One of the responsibilities of the court

14   security officer, of course, as we indicate in our instructions

15   when we send a jury out to deliberate, is to keep this jury

16   together in some convenient place so that they might deliberate

17   upon their verdict.  This jury was not kept together, strictly

18   speaking.  Perhaps all of this is completely innocuous, but we

19   need now to make a clear record on exactly what happened.

20          So, Mr. Gurevich, I'm not going to place you under

21   oath.  I'm simply going to ask you questions here on the

22   record.  You've heard me recount my understanding of what

23   transpired.  How did you learn that there was, quote, a verdict

24   in the case?

25          THE CLERK:  Your Honor, I got a call from the CSO,

1   letting me know there was an issue.  I made my way to the

2   courtroom in which he then informed me that he had witnessed a

3   juror sneak back into the courtroom --

4           THE COURT:  Into the courtroom or --

5           THE CLERK:  Sorry, into the jury room.

6           THE COURT:  From the vestibule or through the

7   courtroom, or do you know?

8           THE CLERK:  I do not know.  As I was making my way to

9   chambers to inform that a juror had snuck out, the door had

10  knocked.  The foreperson handed the CSO the envelope and said

11  out loud, "We have a verdict."  I was then given the envelope.

12  As I was making my way to chambers again, the envelope felt

13  thick as if multiple papers were in there, so that's when I let

14  you know there may be a verdict in there just because of the

15  size of the paper.

16          THE COURT:  You let me know that you suspected that

17  the verdict form itself might be contained within the envelope;

18  is that correct?

19          THE CLERK:  Correct, Your Honor.

20          THE COURT:  And that's a suspicion.  You don't know

21  if that's true or not true.

22          THE CLERK:  Correct.

23          THE COURT:  As I indicated, I have an envelope here.

24  Is this the envelope you handed me?

25          THE CLERK:  Yes, it is.

1       THE COURT:  Okay.  Let's first inquire is the court

2   security officer who observed the juror entering the jury room

3   present in the courtroom?

4       CSO:  That's not exactly how it happened, Your

5   Honor.

6       THE COURT:  Come on up, take a seat on the witness

7   stand.  Raise your right hand.  Swear the CSO.

8     (COURT SECURITY OFFICER JAMES SCHREIBER duly sworn.)

9       THE CLERK:  You can have a seat.

10                      EXAMINATION BY THE COURT

11  **Q**   Be seated, please.  Are you fully vaccinated against the

12  COVID-19 virus?

13  **A**   Yes, sir.

14  **Q**   Then you can take your mask off to testify.  Tell us your

15  name.

16  **A**   CSO James Schreiber.

17  **Q**   Spell your last name.

18  **A**   S-c-h-r-e-i-b-e-r.

19  **Q**   Now, Mr. Schreiber, were you on post here in courtroom 5A

20  a little bit earlier, say an hour or so ago, when something

21  unusual occurred?

22  **A**   No, sir, it was less than that.  We were switching at

23  approximately 12:27.

24  **Q**   So at 12:27 which is about 45 minutes ago --

25  **A**   Yes, sir.

1   **Q**    -- were you the officer who had been on post or the one
2   who was coming on?
3   **A**    No, sir I was coming on post.
4   **Q**    You were coming on post.  You were relieving another
5   officer?
6   **A**    Yes, sir.
7   **Q**    Was that officer present in the courtroom?
8   **A**    Yes, sir, he was.
9   **Q**    Who was that officer?
10  **A**    CSO Eason, E-a-s-o-n.
11  **Q**    Okay.  Tell us what you observed, if anything, in relation
12  to movement among jurors who you believe are part of the jury
13  in this case.
14  **A**    CSO Eason, he was sitting in the back in a chair with a
15  clear view of the jury room.
16  **Q**    Who was seated --
17  **A**    CSO Eason.
18  **Q**    Yes.
19  **A**    Very clear view of the jury room door.
20  **Q**    Right here in the courtroom?
21  **A**    Yes, sir.  He explained that they were at lunch.
22  **Q**    First of all, where is Eason?
23          MR. MARK YINGLING:  He's on post, Your Honor.  We're
24  calling him to come to the courtroom now.
25          THE COURT:  Keep him out of the courtroom but have

1   him standing by.  Thank you.

2   BY THE COURT:

3   **Q**    I'm sorry to interrupt.  Go ahead.

4   **A**    He explained that they were at lunch and we were

5   switching.  We switched the half hour --

6   **Q**    That they were eating lunch?

7   **A**    Yes, sir.

8   **Q**    In the jury room?

9   **A**    Yes, sir.  When he left approximately two minutes later,

10  gentleman came out of the back jury room while I was watching

11  it.

12  **Q**    Were you peering through the --

13  **A**    Yes, sir --

14  **Q**    -- the courtroom door window?

15  **A**    Yes, sir, I was looking at the juror room door.  He came

16  to see me.

17  **Q**    I'm sorry, but we have to be clear.  There are two doors

18  to the jury room.

19  **A**    Yes, sir.

20  **Q**    One enters directly from this courtroom, and the other one

21  enters from the shared vestibule that the courtroom opens into

22  and the jury room opens into and Courtroom 5B enters into.  It

23  sounds like you're now referring to the doorway that provides

24  access between the jury room for Courtroom 5A and the common

25  vestibule?

1   **A**   Yes, sir, that's exactly right.

2   **Q**   And what did CSO Eason tell you he saw?

3   **A**   He was already gone, sir.  I was the one handling this

4   part.

5   **Q**   So Eason has departed; now you're in Courtroom 5A?

6   **A**   Yes, sir.

7   **Q**   You're in a position that affords you a view of both the

8   door into the jury room from the courtroom?

9   **A**   Yes, sir.

10  **Q**   And also the area immediately outside the doorway that

11  affords access between the jury room and the vestibule?

12  **A**   Yes, sir.

13  **Q**   And that's possible because there's a window in the

14  courtroom door?

15  **A**   That's right, Your Honor.

16  **Q**   And you were peering through that window?

17  **A**   Yes, sir.

18  **Q**   And what did you see?

19  **A**   The gentleman that came to see me knocked on the door to

20  tell me that one of the jurors had taken a brief break outside

21  of the juror room to leave out into the hallway.

22  **Q**   Who told you that?

23  **A**   I believe he was the jury foreman, but he didn't identify

24  himself.

25  **Q**   Where did he come from?

1    **A**    The jury room.

2    **Q**    By which door?

3    **A**    The door would leave from the jury room out into the

4    vestibule.

5    **Q**    So he came out to tell you that another juror had

6    departed?

7    **A**    Yes, sir, temporarily.

8    **Q**    Then did the other juror appear at some point?

9    **A**    Not immediately.  As soon as he notified me, I was calling

10   the courtroom deputy.

11   **Q**    Do you know if the juror who was absent -- not the

12   foreperson but the other juror -- ever reappeared?

13   **A**    Yes, sir.

14   **Q**    How do you know that he reappeared?

15   **A**    At the same time I was calling the courtroom deputy, there

16   was a knock on the interior door that leads to the jury room.

17   **Q**    So someone in the jury room is now knocking on the door

18   that provides access directly into the courtroom?

19   **A**    Within a minute of all the incident going on.  It is the

20   same person that I believe is the jury foreman.

21   **Q**    Tall African American man?

22   **A**    Yes, sir.  Hands me the envelope that you have on your

23   desk that's sealed, tells me what it is and says that they're

24   completed and that the gentleman that he told me had

25   temporarily gone outside is already back.

1    **Q**    Got it.

2              THE COURT:  Ms. Campbell, do you have any questions

3    for the court security officer?

4              MS. CAMPBELL:  I do not.

5              THE COURT:  Thank you.  Ms. DeShields?

6              MS. DESHIELDS:  Yes, Your Honor.

7                    EXAMINATION BY THE GOVERNMENT

8    BY MS. DESHIELDS:

9    **Q**    Could you estimate -- did you ever see the individual

10   reappear?

11   **A**    No, ma'am, I did not, but I immediately went in to

12   identify who he was.

13   **Q**    Were you given an explanation?

14             THE COURT:  Let's pursue, first of all, so you

15   entered the jury room?

16             THE WITNESS:  Yes, sir, I did.

17             THE COURT:  Did you identify the juror who had been

18   temporarily missing?

19             THE WITNESS:  Yes, sir, I did.

20             THE COURT:  How did you do that?

21             THE WITNESS:  I asked who it was personally by his

22   juror number.

23             THE COURT:  Did someone identify themselves as having

24   been the juror who had departed?

25             THE WITNESS:  Yes, sir.

1          THE COURT:  Who did that?

2          THE WITNESS:  Juror No. 6.

3          THE COURT:  Juror No. 6.  Would you describe Juror

4   No. 6, please.

5          THE WITNESS:  An African American male, probably

6   about 5'7", hair just above his shoulder, gray T-shirt, thin

7   build, I believe.

8          THE COURT:  Let the record reflect the witness's

9   description of the person he spoke to and who had identified

10  themselves as Juror No. 6, that that description fits with the

11  Court's perception of the appearance of Juror No. 6.  Any

12  objection to that observation, Ms. Campbell?

13         MS. CAMPBELL:  No, Your Honor.

14         THE COURT:  Ms. DeShields?

15         MS. DESHIELDS:  There's no objection to the

16  identification, Your Honor.

17         THE COURT:  You may continue, Ms. DeShields.

18  BY MS. DESHIELDS:

19  **Q**   Do you have any indication whether Juror No. 6 spoke to

20  anyone while he was outside of the sequestered area?

21  **A**   No, ma'am, I do not.

22  **Q**   Did he say to you anything about where it is that he went

23  when he departed?

24  **A**   No, ma'am.

25  **Q**   He gave no explanation whatsoever?

1  **A**    I did ask him; he did not.

2  **Q**    You asked him where he'd been?

3  **A**    No, ma'am.  I asked him why he left, and he did not give

4  me an explanation.

5  **Q**    He did not.

6  **A**    I asked him if he realized the circumstance, and he said

7  that he went out and back, and that's all the explanation I got

8  from him.

9  **Q**    Did you raise this question with him in the presence of

10  the other jurors?

11  **A**    No, ma'am.  I pulled him out in the hallway.

12  **Q**    Did you -- upon receiving no response from him as to why

13  it is that he'd left the sequestered area, did you talk to

14  anyone else in the jury room, like the jury foreperson, about

15  the whereabouts of this particular juror?

16  **A**    No, ma'am because my next move would be to go talk to the

17  courtroom deputy.

18          MS. DESHIELDS:  Understood.  Thank you, Your Honor.

19          THE COURT:  Thank you.  Mr. Schreiber, you may step

20  down.  Please stay close, but please step out of the

21  courtroom.

22          THE WITNESS:  Yes, Your Honor.

23          THE COURT:  Do we have Eason?

24          MR. MARK YINGLING:  Yes, Your Honor.

25          THE COURT:  The Court calls Court Security Officer

1   Eason as a court witness.  Please come forward, sir, all the

2   way up here to the witness stand.  Stand there, turn, face our

3   clerk, and raise your right hand.

4       (COURT SECURITY OFFICER ERIC EASON duly sworn.)

5           THE CLERK:  You may have a seat.

6                   EXAMINATION BY THE COURT

7   **Q**    Pull up close to that mic.  Sir, have you been fully

8   vaccinated against the COVID-19 virus?

9   **A**    I have.

10  **Q**    Then you have the option of removing your mask while

11  you're testifying or keeping it on as you prefer.

12  **A**    Yes, sir.

13  **Q**    Would you tell us your name.

14  **A**    Eric Eason.

15  **Q**    How are you employed, Mr. Eason?

16  **A**    I'm a CSO at the federal courthouse here.

17  **Q**    CSO, court security officer?

18  **A**    Yes.

19  **Q**    In relation to that, were you assigned to be on post

20  monitoring and serving as bailiff for a deliberating jury in

21  Courtroom 5A today, the 31st of August?

22  **A**    Yes.

23  **Q**    And were you, in fact, on duty in that role in the time

24  period roughly 11:00 a.m. to 11:30 a.m. this morning?

25  **A**    Yes.

1  **Q**    And is it the ordinary practice that the court security

2  officers relieve each other from time to time when they are on

3  post monitoring the jury?

4  **A**    That's correct, sir.

5  **Q**    How often do you get relief when you're in that role?

6  **A**    Today -- usually an hour but today was every 30 minutes we

7  were rotating.

8  **Q**    So did there come a time then when you were on duty when

9  you were about to be or were being relieved, did an officer

10  come to relieve you?

11  **A**    Yes.

12  **Q**    Who relieved you?

13  **A**    His name is Jimmy Schreiber.

14  **Q**    Officer Schreiber?

15  **A**    Yes.

16  **Q**    Okay.  Before the time that Officer Schreiber came to

17  relieve you or at about that same time, did anything unusual

18  happen that you noticed in relation to your duties of

19  monitoring this jury?

20  **A**    No, sir.

21  **Q**    So once Officer Schreiber relieved you, what did you do?

22  **A**    I then went to the office to fill out some paperwork, and

23  I went outside and smoked a cigarette.

24  **Q**    Officer Eason, are you familiar with an alarm system that

25  is used in relation to the security of jury rooms in this

1  district?

2  **A**    Yes, sir.  Usually when the jury is out deliberating, the

3  jury room is secured.  It's an alarm.  If someone was to go out

4  the door, the alarm would go off.

5  **Q**    Do you know whether or not the alarm for jury room 5A was

6  set and activated while you were on post in the 11:00 a.m. to

7  11:30 a.m. time period this morning?

8  **A**    No, sir.  When I relieved the person before me, he told me

9  that the alarm system wasn't on; they couldn't find the key.

10  **Q**    They couldn't find the key?

11  **A**    Yes.

12  **Q**    Who told you that?

13  **A**    Paul Stefanelli [phonetic].

14  **Q**    Is he another court security officer?

15  **A**    Yes, sir, he is.

16           THE COURT:  Ms. Campbell, any questions?

17           MS. CAMPBELL:  No questions.

18           THE COURT:  Ms. DeShields, any questions?

19                EXAMINATION BY THE GOVERNMENT

20  BY MS. DESHIELDS:

21  **Q**    Was the fact that the alarm system could not be activated,

22  was that raised with anyone, court personnel?

23  **A**    Not to my knowledge.  The message was passed on to me when

24  I relieved my coworker.

25  **Q**    I'm trying to understand the order.  Did you relieve

1   Mr. Schreiber or did Mr. Schreiber relieve you?

2   **A**    Mr. Schreiber relieved me.  Prior to that, I relieved

3   someone else to come into the post.

4   **Q**    So if the alarm is not activated, they can just, jurors

5   can freely sort of come and exit -- exit the jury room?  I'm

6   trying to get a picture in my mind.

7   **A**    Yes, ma'am, it's possible if the alarm isn't set, we

8   wouldn't hear it.  The person would just freely walk out.  But

9   I positioned myself in the middle so I could see the jury's

10  door and also watch the courtroom here on this side so I could

11  hear the knock.

12  **Q**    And at that time, you didn't hear a knock and you didn't

13  see anyone?

14  **A**    No, ma'am, I didn't.

15            MS. DESHIELDS:  Thank you, Your Honor.

16                    EXAMINATION BY THE COURT

17  **Q**    Just from your prior experience, the alarm would activate

18  or the alarm would sound if it had been properly set when

19  either door to the jury room was opened?

20  **A**    That's correct, to my knowledge.

21  **Q**    Is it the standard practice then that when the jury wants

22  to communicate with the court security officer, they knock on

23  the door?

24  **A**    Correct.

25  **Q**    The court security officer then deactivates the alarm?

1    **A**    Yes.

2    **Q**    And then opens the door and has whatever communication

3    with the jury that the jury requests?

4    **A**    Yes, sir, that's correct.

5              THE COURT:  Any more questions in light of mine,

6    Ms. Campbell?

7              MS. CAMPBELL:  No, Your Honor.

8              THE COURT:  Ms. DeShields?

9              MS. DESHIELDS:  No, Your Honor.

10             THE COURT:  Very good.  Thank you, sir.  You're

11   excused.

12             See if counsel agree or disagree with my sense of the

13   state of things.  I think what's been demonstrated so far is

14   that the jury was deliberating, and then at some point in their

15   deliberations in the -- sometime between 11:15 and 11:30,

16   immediately prior to or almost simultaneous with the

17   Schreiber/Eason transition, Juror No. 6 departed the jury room

18   via the doorway that goes directly to the vestibule and does

19   not pass through the courtroom.  I reach that conclusion

20   inferentially.  CSO Eason was seated in this courtroom so if

21   the juror had left via the courtroom, it would have been

22   obvious and apparent, so by process of elimination, he had to

23   have left through the other door.

24             Ms. Campbell, agree with that conclusion?

25             MS. CAMPBELL:  I agree with the conclusion that he

1   left through the vestibule door at some point.  Exactly when

2   that was as it relates to whether the jury had arrived at a

3   verdict before that or with him in or outside the room, we

4   don't have any clear information about that at this point.

5           THE COURT:  I agree with that completely, and of

6   course that is a major issue and one of the fundamental

7   questions that has us convened in this very special session.

8   So no difference of view whatsoever on that.

9           But do you agree, though, that the proof to this

10  point establishes conclusively that he left via the vestibule

11  door as opposed to the courtroom door?

12          MS. CAMPBELL:  Yes, Your Honor.

13          THE COURT:  And do you agree with that as well,

14  Ms. DeShields?

15          MS. DESHIELDS:  I agree with Your Honor by process of

16  elimination, that it's probably the best reconstruction you can

17  give at this point.

18          THE COURT:  Well, I so find in terms of the inquiry

19  that we're conducting here.  I do find that the juror left the

20  jury room and that the bailiffs -- bailiff, singular, on

21  duty did not know it, was not aware of it when it occurred, and

22  there are two reasons for that.  Number one, the alarm system

23  had not been activated, and ordinarily if standard procedures

24  are followed and the alarm is set, then the opening of that

25  doorway to the vestibule would have tripped the alarm, and the

1    CSO would have immediately been alerted someone was going in or

2    out of the jury room and, of course, would have responded.

3    That didn't happen.

4           And then the additional piece of proof is, of course,

5    that the foreperson notified CSO Schreiber that the person had

6    left.  Then that person eventually returned, and Schreiber had

7    a conversation with him as the record indicates.

8           So now the next matter we need to address then is did

9    any events of significance transpire while the juror was out of

10   the room.  We have an indication that the jury may have reached

11   a verdict, and the question is were all nine jurors present

12   when that verdict was reached, or was one of them missing.  I

13   propose to bring the foreperson of the jury into the courtroom

14   and to ask him questions that scrupulously avoid intruding on

15   the deliberative process and yet at the same time attempt to

16   ascertain the bare fact of whether deliberations were conducted

17   and/or whether a verdict was reached while one of the jurors

18   was missing.

19          Now this is an extremely delicate topic and delicate

20   area of the law where courts must tread with extreme care

21   because the deliberative process is sacrosanct, and we don't

22   intrude on that.  On the other hand, the Court has the

23   responsibility to ensure that the process by which a verdict

24   may have been arrived at in this case was lawful.  You can't

25   deliberate on and reach a verdict as a jury without all of the

1    jurors present.  So that's the quandary, that's the problem

2    that the Court faces.

3            So, Ms. Campbell, I propose that I bring the

4    foreperson into the courtroom.  I do not expect to permit

5    counsel to examine the foreperson.  I expect to conduct the

6    examination entirely myself, and the focus will be solely on

7    the questions that I have just outlined, scrupulously avoiding

8    any intrusion on the deliberative process itself except to nail

9    down whether all were present.

10           Your views, Ms. Campbell?

11           MS. CAMPBELL:  No objection from the plaintiff.

12   Plaintiff simply asks that Your Honor instruct the foreperson

13   before he speaks not to express anything about what the verdict

14   could be or which way any party was leaning or anything like

15   that, but just to talk about whether or not he was there for

16   the deliberations and when the verdict was reached.

17           THE COURT:  I will do that.  Otherwise, you do not

18   object?

19           MS. CAMPBELL:  No objection.

20           THE COURT:  Ms. DeShields.

21           MS. DESHIELDS:  I have no objection, Your Honor.

22           THE COURT:  Do you agree this is the proper

23   procedure?

24           MS. DESHIELDS:  I do.

25           THE COURT:  Very good.  Mr. Gurevich, go to the jury

1    room and ask the jury foreperson, Juror No. 1, to come to the

2    courtroom and then seat Juror No. 1 in his ordinary seat in the

3    jury box.

4             THE CLERK:  Yes, Your Honor.

5         (Juror No. 1 entered the courtroom.)

6             THE COURT:  Be seated, please.  Good afternoon, Juror

7    No. 1.

8             FOREPERSON:  Good afternoon.

9             THE COURT:  If you don't mind, would you be

10   comfortable removing your mask?

11            FOREPERSON:  Sure.

12            THE COURT:  Am I correct that you are the foreperson

13   of this jury?

14            FOREPERSON:  Yes, I am.

15            THE COURT:  Thank you.  I want to talk with you for a

16   few minutes about a matter that is of concern to the Court, but

17   before I get into that, I want to first talk with you about

18   what I don't want to talk to you about.

19            FOREPERSON:  Okay.

20            THE COURT:  As we're about to have this conversation,

21   it is extremely important that you say nothing to me about any

22   deliberations that may have occurred or may be underway in the

23   jury room.  Do you understand that?

24            FOREPERSON:  I understand.

25            THE COURT:  The jury's deliberations are sacrosanct.

1    No one is permitted to intrude on them, including the presiding

2    judge.  Do you understand that?

3              FOREPERSON:  I do.

4              THE COURT:  Accordingly, to the extent I start asking

5    you some questions and we get into a discussion here, you

6    should understand that you are not to say anything to me about

7    that deliberative process that has been occurring, I assume, in

8    the jury room yesterday afternoon, this morning, and perhaps

9    into this afternoon.  Do you understand that?

10             FOREPERSON:  I do.

11             THE COURT:  Okay.  Now I have been informed that

12   there came a time during which the jury was convened in the

13   jury room when one of the jurors left the jury room and that

14   this would have occurred somewhere in the 11:15 to 11:30 time

15   frame this morning.  Do you have any knowledge of a juror

16   leaving the jury room in the time frame that I'm describing?

17             FOREPERSON:  I do.

18             THE COURT:  Did a juror leave the jury room?

19             FOREPERSON:  Yes.

20             THE COURT:  Which juror left the jury room?

21             FOREPERSON:  Juror No. 6.

22             THE COURT:  Do you know for how long Juror No. 6 was

23   away from the jury room?

24             FOREPERSON:  Yes.

25             THE COURT:  How long?

1          FOREPERSON:  Approximately 10 to 15 minutes.

2          THE COURT:  Did Juror No. 6 -- do you know where

3    Juror No. 6 went?

4          FOREPERSON:  Not directly.

5          THE COURT:  Well, I want you to only say what you

6    know for sure.  I don't want you to be supposing anything.  I

7    don't want you to speculate.  But if you believe you know where

8    Juror No. 6 went, you should tell us.  But if you don't know,

9    then you don't know.

10          FOREPERSON:  I believe Juror No. 6 went to the break

11    room on the fourth floor.

12          THE COURT:  Okay.  Why do you believe that?

13          FOREPERSON:  Since the inception of the trial, that

14    juror has been going to have lunch every day.

15          THE COURT:  When Juror No. 6 left the jury room, was

16    the jury otherwise engaged in its deliberations?  I don't want

17    to know, if they were engaged, what they were talking about.  I

18    don't want to know what was on the table, what was under

19    discussion.  It's a simple question of was the jury engaged in

20    its deliberations when he departed, or was it not engaged in

21    its deliberations?

22          FOREPERSON:  No, they weren't.

23          THE COURT:  Did any other jurors depart?

24          FOREPERSON:  No.

25          THE COURT:  So the jurors, I take it, then were not

1    engaged in the process of reasoning through, discussing or

2    ultimately working towards the reaching of their verdict in

3    this case?

4              FOREPERSON:  Correct.

5              THE COURT:  I have received an indication from a

6    communication through a court security officer and courtroom

7    deputy clerk that, in fact, the jury may have reached a verdict

8    in this case.  Have they?

9              FOREPERSON:  We have.

10             THE COURT:  Had the verdict been reached before Juror

11   No. 6 left the jury room?

12             FOREPERSON:  It had.

13             THE COURT:  And had the verdict form been completed

14   and signed by you as the foreperson before Juror No. 6 left the

15   jury room?

16             FOREPERSON:  It had.

17             THE COURT:  After Juror No. 6 left the jury room, did

18   the jury continue to deliberate and reflect upon or perhaps

19   reconsider the verdict that they had reached?

20             FOREPERSON:  They didn't.  We did not.

21             THE COURT:  I'll see counsel on the private channel,

22   outside the hearing of the juror and everyone else in the

23   courtroom.

24             MS. CAMPBELL:  Your Honor, I need a device.

25             THE COURT:  We'll get you one.

1      **(Bench conference on the record:**

2              THE COURT:  Ms. Campbell, can you hear me?

3              MS. CAMPBELL:  Yes, I can.

4              THE COURT:  Are there any other matters that you

5      think I should raise with foreperson of the jury in light of

6      the answers he has provided in my examination of him?

7              MS. CAMPBELL:  No, Your Honor.

8              THE COURT:  Ms. DeShields, are there any other

9      matters that you think I should take up with the foreperson of

10     the jury before we conclude this inquiry?  Get very close to

11     the mic.

12             MS. DESHIELDS:  No, Your Honor.

13             THE COURT:  Thank you.)

14     **(Bench conference concluded.)**

15             THE COURT:  Okay.  Mr. Foreperson, you have advised

16     us that the jury has reached a verdict.  Do not tell me what

17     that verdict is as I ask you additional questions now.  Do you

18     understand?

19             FOREPERSON:  I do.

20             THE COURT:  You were provided with a verdict form on

21     which you were to record your verdict; is that true?

22             FOREPERSON:  Correct.

23             THE COURT:  And you had the verdict form with you in

24     the jury room; is that right?

25             FOREPERSON:  That is correct.

1          THE COURT:  Where is that verdict form now?

2          FOREPERSON:  It was given to the security officer.

3          THE COURT:  Okay.  Accordingly, based on inquiries

4    that I have made previously to this point, it is my belief that

5    I hold in my hand now the envelope that was transmitted by you

6    to the court security officer, to the courtroom deputy clerk,

7    and then ultimately to me in chambers.  But our procedure for

8    reporting a verdict is slightly different from that.  In fact,

9    the verdict form should be held by the foreperson of the jury

10   until the jury is fully assembled in the courtroom, all of you

11   are here and so forth.

12          This envelope has not been opened.  In fact, it's

13   been sealed with tape, and no one has peered inside of it since

14   the time you handed it to the courtroom security officer.  The

15   courtroom deputy clerk will now take this envelope containing

16   what is evidently the verdict form and hand it back to the

17   foreperson of the jury.

18          Have you received that, Mr. Foreperson?

19          FOREPERSON:  Yes.

20          THE COURT:  In a few moments, we will bring you and

21   your colleagues of the jury into the courtroom to return your

22   verdict.  At that time I ask that you bring the completed,

23   signed and dated verdict form with you.  It need not be in an

24   envelope.  It can just be loose in your hand, and then we will

25   ask you certain questions in relation to all of that.  Do you

1  understand those instructions?

2          FOREPERSON:  I do.

3          THE COURT:  Please take the foreperson back to the

4  jury room with the envelope that apparently contains the

5  verdict form.

6          Let the record reflect the foreperson has left the

7  courtroom.

8      (Juror No. 1 exited the courtroom.)

9          THE COURT:  Counsel for either party wish to be heard

10  before the Court brings the jury into the courtroom to receive

11  the verdict in this case?

12          MS. CAMPBELL:  No, Your Honor.

13          THE COURT:  Ms. DeShields?

14          MS. DESHIELDS:  Yes, Your Honor.  I do think that it

15  was very odd that when the court security officer asked Juror

16  No. 6 where he had gone during the period of time that he had

17  departed the sequestered area, that he would not supply an

18  answer or chose not to supply an answer.  It raises a cloud of

19  suspicion with respect to whether he talked to anyone when he

20  left.  The foreperson cannot tell you.  He said, I think --

21  indirectly that he thinks he may have gone to lunch.  There's

22  no conclusive proof of that.

23          THE COURT:  Okay.  But isn't that mooted by the

24  testimony of the foreperson that the verdict had been

25  determined before Juror No. 6 left the courtroom?

1   Alternatively, I suppose there's the question that regardless

2   of what the foreperson's statement is, the verdict hasn't been

3   returned in court so we don't actually have a verdict yet.

4            MS. DESHIELDS:  That's true.

5            THE COURT:  We seem to know what its status is.  It

6   seems to have been decided, the form seems to have been

7   completed, seems to have been signed, but I have not examined

8   it and it hasn't been formally received.

9            What about that, Ms. Campbell?

10           MS. CAMPBELL:  Although it hasn't been formally

11  received, the jury had in fact reached a verdict, they put it

12  on the form, and they transmitted the form to the court's

13  officers.  There's no indication, based on the testimony of

14  anyone, that the jury's verdict was influenced by Juror No. 6

15  leaving the jury room.

16           THE COURT:  Bring Juror No. 6 into the courtroom.

17  Have him sit in his normal seat in the jury box, please.

18           THE CLERK:  Yes, Your Honor.

19      (Juror No. 6 entered the courtroom.)

20           THE COURT:  Good afternoon, sir.  You are Juror No. 6

21  on our jury; is that correct?

22           JUROR NO. 6:  Yes.

23           THE COURT:  If you would be comfortable doing so, you

24  may remove your mask while we are talking to you.  Is that okay

25  with you?

```
1              JUROR NO. 6:  Yes.

2              THE COURT:  You're not required to remove it, but it

3    makes it a little bit easier to talk with you if that's okay.

4              Juror No. 6, you were seated as a juror in the trial

5    of this case early last week and have been participating in

6    this trial as a juror ever since.  We're now on Wednesday,

7    approximately nine days since this whole process began.  Is

8    that fair?

9              JUROR NO. 6:  Yes.

10             THE COURT:  Juror No. 6, it has been reported to me

11   that earlier today while the jury was convened in the jury

12   room, there came a point at which you left the jury room and

13   went elsewhere in the building here of the U.S. Courthouse for

14   the District of Maryland.  Did that happen?

15             JUROR NO. 6:  Yes.

16             THE COURT:  When you left the jury room, can you tell

17   us where you went?

18             JUROR NO. 6:  I went down to get a sandwich from the

19   little cafe on the first floor.

20             THE COURT:  Did you consume the sandwich while you

21   were down there --

22             JUROR NO. 6:  Yes.

23             THE COURT:  -- or bring it back up?  How did that

24   work?

25             JUROR NO. 6:  No, I consumed it while I was there.
```

1          THE COURT:  Okay.  About how long were you gone from
2     the jury room would you say?
3          JUROR NO. 6:  I don't know, I guess about anywhere
4     from 15 to about 17 minutes.
5          THE COURT:  Okay.  Then after you were finished down
6     there on the first floor in the little cafeteria, you came back
7     to the jury room?
8          JUROR NO. 6:  Yes.
9          THE COURT:  Did you go anywhere else?
10         JUROR NO. 6:  No.
11         THE COURT:  Did you leave the building?
12         JUROR NO. 6:  No.
13         THE COURT:  While you were outside of the jury room,
14    did you communicate with anyone else?
15         JUROR NO. 6:  No.
16         THE COURT:  You probably had to engage in a
17    transaction to purchase the sandwich --
18         JUROR NO. 6:  Yes.
19         THE COURT:  -- and find out how much it cost, pass
20    money, those kind of greetings and so forth.
21         JUROR NO. 6:  Yes.
22         THE COURT:  I'm not talking about that.  I'm talking
23    about any kind of a conversation other than that which was
24    necessary to purchase and consume the sandwich.
25         JUROR NO. 6:  No one.

1          THE COURT:  Didn't speak to anyone else?

2          JUROR NO. 6:  No.

3          THE COURT:  Did you make any telephone calls?

4          JUROR NO. 6:  No.

5          THE COURT:  Did you use any text or email function on

6     an electronic device?

7          JUROR NO. 6:  No, I did not.

8          THE COURT:  So you didn't communicate with any other

9     person in any way, shape or form?

10         JUROR NO. 6:  No.

11         THE COURT:  Okay.  Did you encounter anyone in the

12    vestibule, in the hallways, on the elevator, in the cafeteria,

13    anything of note that you remember in that regard?

14         JUROR NO. 6:  No, sir.

15         THE COURT:  Pretty much just a solo experience?

16         JUROR NO. 6:  Yep.

17         THE COURT:  Okay.  Now the next area of questions, I

18    want to be crystal clear with you about what I'm not asking you

19    about.

20         JUROR NO. 6:  Okay.

21         THE COURT:  I do not ask you about and do not want to

22    know anything about the jury's deliberations, the work of the

23    jury, the discussions of the jury, the concerns of the jury,

24    issues that the jury has discussed.  All of that is off limits,

25    and you should say nothing about any of those topics as you and

 1   I are having our additional conversation.

 2            JUROR NO. 6:  Okay.

 3            THE COURT:  Because that process is sacrosanct.  Not

 4   even the judge is entitled to know about that process.  Do you

 5   understand me?

 6            JUROR NO. 6:  Yes, sir.

 7            THE COURT:  Without telling me what might have been

 8   in consideration, under discussion, anything along those lines,

 9   was the jury engaged in deliberations when you departed the

10   jury room to go get your sandwich?

11            JUROR NO. 6:  No.

12            THE COURT:  Had -- did the jury have plans to

13   continue deliberations at some point after you departed the

14   jury room to get your sandwich?

15            JUROR NO. 6:  No.

16            THE COURT:  Of course, jury deliberations often ripen

17   into the return of a verdict.  That's part of the process and

18   part of what a jury is asked to do if they are able to.  Do you

19   agree with that?

20            JUROR NO. 6:  Yes.

21            THE COURT:  At the time that you departed the jury

22   room to get your sandwich, had the jury reached a verdict?  Do

23   not tell me what the verdict was if they had reached a verdict.

24   It's a very simple, direct question.  At the time that you

25   departed the jury room, had the jury reached a verdict?

1          JUROR NO. 6:  Yes.

2          THE COURT:  Had the verdict been recorded on the

3     verdict form, the piece of paper?

4          JUROR NO. 6:  Yes.

5          THE COURT:  If you know, had the foreperson of the

6     jury added his signature to the verdict form before you left

7     the jury room?

8          JUROR NO. 6:  Yes.

9          THE COURT:  I'm going to talk to the lawyers

10    privately.  You won't be able to hear.  Bear with me.

11         JUROR NO. 6:  Okay.

12    **(Bench conference on the record:**

13         THE COURT:  Ms. Campbell, do you have any other

14    topics that you request that I get into with Juror No. 6?

15         MS. CAMPBELL:  No, Your Honor.

16         THE COURT:  Ms. DeShields?  You have to get right up

17    on the mic.

18         MS. DESHIELDS:  I'm sorry, Your Honor.  How does he

19    know that the verdict sheet was actually signed?

20         THE COURT:  How does he know?

21         MS. DESHIELDS:  Yes.

22         THE COURT:  Okay.  Anything else?

23         MS. DESHIELDS:  No, Your Honor.

24         THE COURT:  So we're finished with him as far as

25    you're concerned once I elicit an answer to that question?

1         MS. DESHIELDS:  Correct.

2         THE COURT:  Thank you.)

3     **(Bench conference concluded.)**

4         THE COURT:  Juror No. 6, how do you know that the

5 verdict form had been signed by the foreperson before you left

6 the jury room to go get your sandwich?

7         JUROR NO. 6:  Well, the paper was brought in.  He

8 took it and after that, he was told he had to sign it, and then

9 the guy brought the food in that was ordered and put it on the

10 table.  Then everybody stopped at that point to have lunch.

11        THE COURT:  Had the verdict form already been signed

12 at that point?

13        JUROR NO. 6:  I believe so.

14        THE COURT:  But you're not sure?

15        JUROR NO. 6:  I'm not 100 percent sure.

16        THE COURT:  Did you see the foreperson sign the

17 verdict form?

18        JUROR NO. 6:  No.

19        THE COURT:  You didn't see him sign it?

20        JUROR NO. 6:  No.

21        THE COURT:  Okay.  Thank you, Juror No. 6.  Please

22 return Juror No. 6 to the jury room.

23     (Juror No. 6 exited the courtroom.)

24        THE COURT:  We have the testimony of the jury

25 foreperson that he signed the verdict form before Juror No. 6

1  left the courtroom [sic].  Do you agree that that was the

2  testimony of the foreperson, Ms. Campbell?

3          MS. CAMPBELL:  Yes, Your Honor.

4          THE COURT:  Ms. DeShields?

5          MS. DESHIELDS:  Yes, Your Honor.

6          THE COURT:  I'll entertain any motions.

7          MS. DESHIELDS:  Your Honor, the Government would move

8  for a mistrial in this particular case.  The reason being is

9  that we have a flawed process that has now taken place.  You

10  have a juror who is not an alternate but is a member of the

11  main jury who left when the jury was supposed to be sequestered

12  and to be deliberating together.  He cannot affirmatively tell

13  you that deliberations had been complete at the time that the

14  verdict sheet was signed by the foreperson.  He told you that

15  he was not 100 percent sure.  He left for 10 to 15 minutes --

16  sorry, 15 to 17 minutes.  I believe the court person said it

17  was 10 to 15 minutes departure.

18          We do not know whether he actually did talk with

19  anyone during that particular time frame or whether he accessed

20  any electronic devices or whether he did anything other than

21  what he says to you today.  Again, I still find it very odd

22  that when the court security officer asked him where he went

23  when he left the room, he did not respond to him.

24          So, in any event, I think because the process itself

25  is flawed, we have to move for a mistrial.

1           THE COURT:  Thank you, Ms. DeShields.  Ms. Campbell?

2           MS. CAMPBELL:  Any alleged flaws in the process have

3      not prejudiced either party.  Both the foreperson and Juror

4      No. 6 testified that they had all reached a decision, a

5      unanimous verdict before Juror No. 6 left the room.  It's clear

6      that he left the room when it was lunchtime.  He said

7      sandwiches had been brought in, so he went and got a sandwich

8      somewhere else.  They had already put the verdict down on the

9      form; the foreperson said that he signed it.  Juror No. 6 said

10     that he saw the CSO or someone come over and hand the

11     foreperson the form and tell him that he had to sign it, the

12     sandwiches were put down, and then he departed for a few

13     moments and everyone else ate lunch --

14          THE COURT:  Wait a minute.  Is that your

15     interpretation of his testimony, that someone outside the jury

16     told him that he had to sign the form?

17          MS. CAMPBELL:  He said someone handed him a form and

18     told him that he had to sign it.  I'm not clear who that was.

19     But he had the verdict form.

20          THE COURT:  Mr. Gurevich, were you present when lunch

21     was delivered into the jury room?

22          THE CLERK:  Yes, Your Honor, I brought lunch into the

23     jury room.  I brought it in, sat it on the table, and let them

24     know that -- how the food was spread out so that they could

25     organize their lunches.  That was all that was said by me.

1          THE COURT:  Did you observe the verdict form on that

2     trip to the jury room?

3          THE CLERK:  I did not even look around the table.  I

4     just sat the food down and got out.

5          THE COURT:  Did you have any interaction whatsoever

6     with the foreperson in relation to the verdict form during that

7     jury room visit?

8          THE CLERK:  No.

9          THE COURT:  Did anyone accompany you into the jury

10    room, a court security officer, anyone like that?

11         THE CLERK:  It was just me.

12         MS. CAMPBELL:  Perhaps it was a person inside the

13    jury room who told him that he had to sign it.  There's been

14    absolutely no testimony that there was any unauthorized person

15    inside the jury room.  The only issue was the juror leaving.

16    Both the foreperson and Juror No. 6 testified that the jury had

17    unanimously reached a decision before Juror No. 6 left and that

18    they did not have any further deliberations once he returned to

19    the room, so there's no indication that the jury's verdict was

20    tainted in any way.

21         THE COURT:  Okay, thank you.  I'll take the matter

22    under advisement.  We're in recess subject to call.

23         THE CLERK:  All rise.  This Court stands in recess.

24      (Recess taken at 1:55 p.m., until 2:11 p.m.)

25         THE COURT:  Be seated, please.

1           In their opinion deciding the *United States v. Gerald*

2   *Thomas Johnson*, reported at 954 F.3d 174 on March 25 of 2020,

3   the U.S. Court of Appeals for the Fourth Circuit admonished

4   this court and other trial courts in this circuit to redouble

5   their focus, the care they took, the procedures that they

6   executed in the circumstance where there was the possibility of

7   there having been any outside influence on the work of a

8   jury.

9           This Court has taken to heart the directives that the

10  Fourth Circuit has given in that regard and accordingly intends

11  to conduct an exhaustive evidentiary process with respect to

12  the matter that it is presented with today in this trial.

13  While my judgment is that the evidence that's been elicited so

14  far has largely illuminated exactly what occurred here, the

15  Court, following the strict directive from the court of appeals

16  for how it is to conduct itself in these sorts of

17  circumstances, is going to take the additional step now of

18  interviewing and taking the testimony of every juror before it

19  reaches conclusion on the question of whether there has been

20  any sort of outside influence or other contamination of the

21  process here that would render any verdict infirm.

22           So, accordingly, we will now proceed to interviews of

23  each of the jurors who are sitting in this case.  I am

24  satisfied that we have conducted sufficient examinations of

25  Jurors Nos. 1 and 6 to this point.  The first thing we will do

1   is bring Jurors 1 and 6 back into the courtroom briefly to

2   admonish them not to discuss the topics on which they're being

3   questioned here in court with anyone else.  Then we'll return

4   Nos. 1 and 6 to the jury room, and we'll bring in No. 2 and we

5   will proceed accordingly, 2, 3, 4, 5, 7, 8, 9.

6           Bring in 1 and 6.

7      (Juror Nos. 1 and 6 entered the courtroom.)

8           THE COURT:  Be seated, please, gentlemen.  This will

9   be a very short session with each of you.  Let the record

10  reflect Jurors 1 and 6 are present in the courtroom.  Each of

11  you have previously participated in a one-on-one discussion

12  with the Court in reference to Juror No. 6's departure from the

13  jury room earlier today.

14          The point I want to register with each of you is that

15  my direction to you is that you are not to discuss the fact

16  that we are having this discussion or the topics that I have

17  discussed with each of you in your individual discussions with

18  me here in the courtroom within the last hour or so.  You're

19  not to discuss that with anyone, including you're not to

20  discuss it with any of your fellow jurors.  I recognize that

21  you are in the jury room with your fellow jurors, but you are

22  instructed not to have any discussion with any of your fellow

23  jurors or with each other about the topics about which you have

24  been interviewed in the last hour or so here in the courtroom

25  when you've been in here individually.

```
1              Juror No. 1, do you understand my instructions?

2              JUROR NO. 1:  I do.

3              THE COURT:  Juror No. 6, do you understand my

4    instructions?

5              JUROR NO. 6:  I do.

6              THE COURT:  Thank you, gentlemen.  Please return

7    Juror 1 and 6 into the jury room and bring Juror No. 2 into the

8    courtroom.

9         (Juror Nos. 1 and 6 exited; Juror No. 2 entered the

10   courtroom.)

11             THE COURT:  Please be seated.  Good afternoon, Juror

12   No. 2.

13             JUROR NO. 2:  Good afternoon.

14             THE COURT:  If you're comfortable doing so, you may

15   remove your mask while you're speaking in here.  It's up to

16   you.  You don't have to, but it makes it a little easier.

17   Thank you for joining us here.  You're the only juror in the

18   courtroom at the moment.  I have a few questions for you, and I

19   hope you'll be able to answer them.

20             JUROR NO. 2:  Okay.

21             THE COURT:  Juror No. 2, to your knowledge and to

22   your belief -- let me begin by saying this.  It's very

23   important that you listen exactly to my questions and answer

24   only exactly what I ask you.

25             JUROR NO. 2:  Okay.
```

1          THE COURT:  And nothing else.  Don't add anything

2     else.  Number 2 thing I want you to know is that no matter what

3     we discuss here in the next few minutes, I don't want you to

4     tell me anything about the jury's deliberations.

5          JUROR NO. 2:  Okay.

6          THE COURT:  If the jury has reached a verdict in this

7     case, I instruct you not to tell me what that verdict is.

8          JUROR NO. 2:  Okay.

9          THE COURT:  So there's two things that are just

10    completely off limits: telling me anything about the substance

11    of the jury's deliberations, their discussion, their thinking,

12    their reasoning, the talking back and forth.  You cannot

13    discuss or mention any of that in here.  Do you understand

14    that?

15         JUROR NO. 2:  Understand.

16         THE COURT:  And the second thing is that to the

17    extent we talk about whether there's a verdict in this case,

18    you absolutely cannot say what that verdict is or even allude

19    to it.  Do you understand that, ma'am?

20         JUROR NO. 2:  Yes, sir.

21         THE COURT:  To your knowledge and to your belief, has

22    the jury reached a verdict in this case?

23         JUROR NO. 2:  Yes, sir.

24         THE COURT:  And do you remember as you sit here,

25    sitting here in the courtroom, do you remember when in your

1    mind the jury had reached a verdict in the case?

2           JUROR NO. 2:  After lunch.

3           THE COURT:  I'm not asking you when.  I'm just asking

4    you to go to the point in time and answer do you remember when

5    the jury reached a verdict?

6           JUROR NO. 2:  Yes, sir.

7           THE COURT:  Perfect.  Now, do you remember that there

8    is a verdict form on which the verdict is to be recorded?

9           JUROR NO. 2:  Yes, sir.

10          THE COURT:  Who is to record the verdict on that

11   form?

12          JUROR NO. 2:  Our foreman.

13          THE COURT:  To your knowledge, did the foreman record

14   your verdict on the form?

15          JUROR NO. 2:  Yes, sir.

16          THE COURT:  Did you see him do it?

17          JUROR NO. 2:  Yes, sir.

18          THE COURT:  Did he sign the verdict form?

19          JUROR NO. 2:  Yes, sir.

20          THE COURT:  Did you see him do it?

21          JUROR NO. 2:  Yes, sir.

22          THE COURT:  Okay.  Now, did there come a time when

23   Juror No. 6 left the jury room?

24          JUROR NO. 2:  Yes, sir.

25          THE COURT:  Do you remember that?

1          JUROR NO. 2:  Yes, sir.

2          THE COURT:  Was that today?

3          JUROR NO. 2:  Yes, sir.

4          THE COURT:  Had the jury reached its verdict and had

5    the foreman signed the verdict form before Juror No. 6 left the

6    jury room, or did Juror No. 6 leave the jury room before the

7    verdict form was signed and before the verdict had been

8    reached?

9          JUROR NO. 2:  The verdict form was signed once --

10   before -- like after Juror No. 6 came back.  It was -- I know

11   everyone was in the room.

12         THE COURT:  Okay.  So Juror No. 6 left the jury

13   room.

14         JUROR NO. 2:  Yes, sir.

15         THE COURT:  Do you remember about how long he was

16   gone?

17         JUROR NO. 2:  He wasn't gone too long, say about 10,

18   15 minutes.

19         THE COURT:  Okay.  Then after he came back, the

20   foreperson signed the verdict form then?

21         JUROR NO. 2:  Yes.  Everything was done once everyone

22   was in the room.

23         THE COURT:  Okay.  So Juror No. 6 left the

24   courtroom -- left the jury room and then returned to the jury

25   room and was present --

1          JUROR NO. 2:  Uh-huh.

2          THE COURT:  -- and then the -- and then the foreman

3   signed the verdict form?

4          JUROR NO. 2:  Yes, sir.

5          THE COURT:  The foreman didn't sign the verdict form

6   before Juror No. 6 left the jury room?

7          JUROR NO. 2:  No.

8          THE COURT:  He signed it after Juror No. 6 returned

9   to the jury room?

10         JUROR NO. 2:  Returned to.  I know everyone was

11  sitting there when he signed the form.  I just... but he did

12  leave the jury room.

13         THE COURT:  And he left the jury room before the

14  verdict form was signed but he returned?

15         JUROR NO. 2:  Returned and then the verdict form was

16  signed.

17         THE COURT:  Okay.  Just sit tight for just a moment.

18  Now we're going to talk on that annoying private line that we

19  have with the husher noise going on so it's a private

20  conversation.

21         JUROR NO. 2:  Okay.

22         THE COURT:  Thank you, ma'am.

23      **(Bench conference on the record:**

24         THE COURT:  Ms. Campbell, any questions that you

25  think I need to get into beyond what I have already uncovered

1   with this witness?

2            MS. CAMPBELL:  Yes, Your Honor.

3            THE COURT:  Go ahead.

4            MS. CAMPBELL:  Can you ask her how she knows the

5   foreperson signed the form after Juror No. 6 returned.

6            THE COURT:  Well, as you can imagine, that's a matter

7   of prime concern for me, and I think I've already asked her

8   about three times for what that sequence was.  And she seems to

9   be consistent each time in her response which is that, while

10  she's sure that everyone was present when the verdict form was

11  signed, the... the juror had departed and then returned before

12  it occurred.  Is there any ambiguity in her testimony about

13  that to this point?

14           MS. CAMPBELL:  No, Your Honor.  I just wanted to

15  clarify how she knew it was after he returned versus before

16  because she does seem to continue to say, "I just know we were

17  all there."  So that actually could create a little bit of

18  ambiguity.

19           THE COURT:  I'll take one last crack at it.)

20       **(Bench conference concluded.**)

21           THE COURT:  I'm going to return to something that I

22  asked you about previously and ask you to search your memory to

23  the best of your ability, and then give us the answer that, of

24  course, is as accurate as it can be in terms of what your

25  memory tells you, okay?  And the question is:  Can you tell us

1  what, if anything, helps you to remember or causes you to

2  believe that the foreman signed the verdict form after Juror

3  No. 6 came back?

4       JUROR NO. 2:  Yes, he said everybody's here, you

5  know --

6       THE COURT:  Take your mask off if you would.

7       JUROR NO. 2:  Sorry.  He circled "yes" --

8       THE COURT:  No, no, don't say anything.  Don't say

9  anything about the verdict.  Just tell us, okay, what -- what

10  it is that you remember about the timing.  What happened in

11  terms of who was where?

12       JUROR NO. 2:  Everyone was at the table.

13       THE COURT:  Okay.  But Juror No. 6 had not been at

14  the table but he came back?

15       JUROR NO. 2:  Juror No. 6 was at the table when the

16  foreman was --

17       THE COURT:  When there was an initial discussion

18  about the verdict?  Or when the verdict form was signed?

19       JUROR NO. 2:  It was a discussion --

20       THE COURT:  You can tell me there was a discussion;

21  don't tell me what the discussion was about.  You can tell me

22  there was a discussion.

23       THE REPORTER:  Your Honor?  The mask --

24       THE COURT:  Mask off, please.  I understand it's

25  stressful, ma'am.

```
1              JUROR NO. 2:  It is a little stressful.

2              THE COURT:  Let's just boil it down to did Juror

3    No. 6 leave the jury room before the foreman signed the verdict

4    form?  Let me put it to you this way.  Did Juror No. 6 leave

5    the jury room and return to the jury room before the foreman

6    signed the verdict form?

7              JUROR NO. 2:  Yes.

8              THE COURT:  Are you certain?

9              JUROR NO. 2:  Yes, because lunchtime came --

10             THE COURT:  You don't have to elaborate, I don't want

11   details.  Just are you certain?

12             JUROR NO. 2:  Yes.

13             THE COURT:  Thank you.  Back to the private

14   channel.

15        (Bench conference on the record:

16             THE COURT:  Ms. Campbell?

17             MS. CAMPBELL:  No further questions.

18             THE COURT:  Do you agree that I've covered it as much

19   as I possibly can with her?

20             MS. CAMPBELL:  Yes.

21             THE COURT:  Thank you.  Now, Government, anything?

22             MS. DESHIELDS:  I don't think so, Your Honor.  I

23   think it's pretty clear.

24             THE COURT:  I can't hear you.

25             MS. DESHIELDS:  I think it's pretty clear.
```

1          THE COURT:  So no further questions?

2          MS. DESHIELDS:  No.

3          THE COURT:  Thank you.)

4      **(Bench conference concluded.)**

5          THE COURT:  Return Juror No. 2 to the jury room.

6  Thank you, ma'am.

7      (Juror No. 2 exited the courtroom.)

8          THE COURT:  So now we've got a blurt.  I clearly

9  heard the witness, completely unsolicited, in trying to

10  reconstruct what had happened in the jury room indicate that

11  words to the effect of "he circled yes."  I think the record

12  has to be honestly constructed here and that happened.  What's

13  the significance of that, Ms. Campbell?

14          MS. CAMPBELL:  That is accurate, Your Honor.

15          THE COURT:  Did that happen?

16          MS. CAMPBELL:  It did indeed.

17          THE COURT:  All right.  Anything further you want to

18  say?

19          MS. CAMPBELL:  No.

20          THE COURT:  Ms. DeShields, did it happen?

21          MS. DESHIELDS:  It did happen, Your Honor, and I know

22  that Your Honor was trying to be as delicate as possible and

23  had instructed the juror a number of times before you began the

24  colloquy with her that you were not trying to invade the

25  substance of the juror's deliberations at this point, but it

1    happened.  The Government would move for a mistrial.

2           THE COURT:  I understand that the Government has a

3    motion for a mistrial, and I understand that you are now

4    supplementing your basis with this additional blurt that has

5    occurred.  I'm not prepared to rule on that.

6           Far greater concern to the Court is the testimony of

7    this juror indicating that, in fact, the verdict had not been

8    signed by the foreperson at the time that the juror, Juror

9    No. 6, left the room, was gone for 15 or 17 minutes and then

10   returned.

11          MS. DESHIELDS:  Your Honor, if I could just put in a

12   word there.

13          THE COURT:  Yes.

14          MS. DESHIELDS:  Under Rule 47(c) a juror cannot be

15   excused unless there is cause or the Court has allowed it to

16   be, and that did not happen in this case.  He left, he left for

17   15 to 17 minutes.  Juror No. 2's testimony is actually in

18   conflict with what the foreperson also told you about when it

19   was that the verdict sheet was signed.  Juror No. 6 himself

20   isn't conclusive on the point at all.

21          So we're faced with being in catch-up mode, so to

22   speak, in trying to reconstruct after the breach occurred when

23   the breach itself should never have occurred, given the fact

24   that the Court at a number of points during its instructions to

25   the jury impressed upon them the need for them to deliberate

1    together; they have been sequestered.  All of that was very

2    clear on the record.

3              THE COURT:  I understand the points.  I don't think

4    that we have all of the evidence or data yet that we need.  I

5    think we should continue on with our process.

6              MS. CAMPBELL:  Your Honor, if I may --

7              THE COURT:  Yes, ma'am.

8              MS. CAMPBELL:  -- note for the record thus far,

9    there's still been no testimony elicited that Juror No. 6 spoke

10   with anyone outside of the jury deliberations and that him

11   leaving the room for that period of time to get a sandwich

12   influenced the jury's decision in any way.

13             MS. DESHIELDS:  I would just say, Your Honor, just to

14   add this point that the fact of the violation itself sort of

15   undercuts the whole credibility of the process here.

16             THE COURT:  That's going to be a question that we're

17   going to have to resolve obviously at some point.  I don't

18   think that Ms. Campbell has misstated the record that's been

19   assembled so far.

20             MS. DESHIELDS:  No, I'm not in any way intimating

21   that.

22             THE COURT:  And that's a matter of significance.  But

23   we need to continue on building our sort of understanding of

24   what transpired.  Bring in Juror No. 3.

25             THE REPORTER:  Your Honor, may we have a mic there?

1              THE COURT:  Yes, can we do that.

2              MS. DESHIELDS:  Your Honor, may I also just say we

3    don't really have a clear understanding of whether the jurors

4    themselves are discussing what is going on amongst themselves.

5              THE COURT:  Let's see.  Did I fail to tell No. 2 not

6    to discuss this with anyone else?  Bring No. 2 back into the

7    courtroom, Mr. Gurevich.

8              THE CLERK:  Yes, Your Honor.

9              MS. DESHIELDS:  I would also add too, Your Honor,

10   before we started the whole process of talking with them, the

11   various individuals, you recall that the foreperson went back,

12   Juror No. 6 went back, and there was no admonishment at that

13   point.

14             THE COURT:  That's true.  We're doing this on the

15   fly.

16             MS. DESHIELDS:  Understood.

17             THE COURT:  Putting it together as quickly and as

18   accurately and competently as we can.  Bring No. 2 back,

19   please.

20        (Juror No. 2 entered the courtroom.)

21             THE COURT:  Ma'am, you can stay right there.  I just

22   have a closing instruction for you, and that is my instruction

23   to you is that while you can continue to chat with your fellow

24   jurors in the jury room, you may not discuss what I have

25   questioned you about here in the courtroom.  That topic is

1  completely off limits, you can't discuss that with anyone.  Do

2  you understand?

3             JUROR NO. 2:  Yes, sir.

4             THE COURT:  Thank you, ma'am.  You may return to the

5  jury room.  Please bring in Juror No. 3.

6      (Juror No. 2 exited; Juror No. 3 entered the courtroom.)

7             THE COURT:  Good afternoon, Juror No. 3.

8             JUROR NO. 3:  Good afternoon.

9             THE COURT:  If you are comfortable doing so, you may

10 remove your mask.  Thank you so much.

11            I have some questions for you that I hope you are

12 able to answer with great precision and clarity.  I know you

13 will do your best.  It's a slightly delicate subject, and I

14 need to tell you a few things first.  Specifically what I'm not

15 asking you about.

16            We're going to have a conversation here in a moment,

17 but the ground rules for that conversation are you're not to

18 tell me anything about the jury's deliberations in this case.

19 You're not to tell me about the jury's discussion or

20 consideration of any of the issues in the case.  You're not to

21 tell me where any jurors stood, how people felt, what they

22 said, what they thought and so forth.  Everything that goes on

23 in that jury room is sacrosanct, and we don't intrude on that

24 at all.

25            JUROR NO. 3:  Understood.

1           THE COURT:  The second thing is that I may be asking

2     you about some of your work in there, especially some of your

3     work this morning.  To the extent that we start talking about

4     anything relating to the verdict, verdict forms and that sort

5     of thing, you are not to tell me directly or indirectly what

6     any verdict might be if there is a verdict in the case.  You're

7     not to tell me what that verdict is.  I may be asking you about

8     whether there is a verdict, and you might be able to answer

9     that question yes or no and you should, but you cannot tell me

10    what the verdict is.

11          JUROR NO. 3:  Okay.

12          THE COURT:  Thank you.  Did the jury reach a verdict

13    in the case?

14          JUROR NO. 3:  Yes.

15          THE COURT:  Did Juror No. 6 leave the jury room at

16    some point?

17          JUROR NO. 3:  Yes.

18          THE COURT:  Had the jury decided upon their verdict

19    before Juror No. 6 left the courtroom -- left the jury room?

20    Or did they decide upon their verdict after Juror No. 6 left

21    the courtroom?  Don't tell me what the verdict is or was.

22          JUROR NO. 3:  Correct.  Juror No. 6 -- the deputy, is

23    that the correct terminology?

24          THE COURT:  The courtroom deputy clerk.

25          JUROR NO. 3:  Had come in with the sandwich bags

1    shortly before noon, and Juror No. 6 went out the door and went

2    downstairs to Mrs. T's to get a sandwich.  Prior to Juror No. 6

3    leaving, we had come to a decision.  No discussions occurred

4    during the lunch as the other eight of us remained in the room.

5    And then it got to be -- we had assumed Juror 6 went to the

6    bathroom, and then he was gone for some time, and it was

7    discovered that he had gone downstairs for a sandwich.  No

8    discussions occurred during his hiatus from the room, if you

9    will.  When he returned, the form was handled in all of our

10   presence.

11           THE COURT:  By the form, do you mean the verdict

12   form?

13           JUROR NO. 3:  Correct.

14           THE COURT:  And the Court's instructions were that

15   the foreman should complete the verdict form and sign the

16   verdict form after the jury had reached a unanimous verdict in

17   this case.  I assume that's what you're generally referring

18   to --

19           JUROR NO. 3:  Correct, that's what happened.

20           THE COURT:  So tell me if I'm incorrect, I don't want

21   to put words in your mouth.  But I think you're telling me that

22   the verdict form itself was completed by the foreman and signed

23   by the foreman after lunch had been consumed, after Juror No. 6

24   had left the jury room and then returned.  But I don't want to

25   put words in your mouth.  That's what I'm asking you about

1   though.  Is that the sequence or was it different, even

2   slightly different from how I have just described it?

3              JUROR NO. 3:  We all witnessed the foreman take care

4   of signing the form and filling out the form.

5              THE COURT:  Including Juror No. 6?

6              JUROR NO. 3:  Correct.

7              THE COURT:  Did that occur before or after he left

8   the jury room and returned?

9              JUROR NO. 3:  I believe it occurred after he

10  returned.

11             THE COURT:  Thank you.  I'm going to have a private

12  discussion now with the lawyers.  You won't be able to hear

13  because we'll be on this electronic device just like during the

14  trial.

15             JUROR NO. 3:  Sure.

16             THE COURT:  We'll be back to you in a moment.

17      **(Bench conference on the record:**

18             THE COURT:  Ms. Campbell, anything?

19             MS. CAMPBELL:  Can you ask her if they had any

20  further deliberations after Juror No. 6 returned?

21             THE COURT:  I will.)

22      **(Bench conference concluded.)**

23             THE COURT:  After Juror No. 6 returned to the jury

24  room, you've indicated that the foreperson completed the jury

25  form -- verdict form and signed it.  Am I right about that?

1              JUROR NO. 3:  Yes.

2              THE COURT:  At that time in association with the

3    completion of the form or immediately prior thereto, presumably

4    while Juror No. 6 was present because he had returned, were

5    there any further deliberations?

6              JUROR NO. 3:  No.  We had reached our verdict.  I

7    don't know how to answer the question without revealing

8    additional information.

9              THE COURT:  Then don't.

10             JUROR NO. 3:  Okay.

11             THE COURT:  I appreciate how careful you're being.

12             JUROR NO. 3:  Thank you.

13             THE COURT:  I hesitate to tell the story because I

14   wasn't there, but in some ways this is the safest way to do it,

15   so listen carefully as I recount the story.

16             JUROR NO. 3:  Okay.

17             THE COURT:  If I am incorrect in any respect, you

18   need to point that out.

19             JUROR NO. 3:  Okay.

20             THE COURT:  The jury deliberated on their verdict,

21   all nine of you.

22             JUROR NO. 3:  Correct.

23             THE COURT:  The jury, all nine of you, came to a

24   unanimous conclusion as to what the verdict should be.

25             JUROR NO. 3:  Absolutely correct.

1          THE COURT:  You had reached a decision before you had

2    lunch.

3          JUROR NO. 3:  Correct.

4          THE COURT:  Then Juror No. 6 departed.

5          JUROR NO. 3:  Correct.

6          THE COURT:  The remaining eight of you had lunch.

7          JUROR NO. 3:  Correct.

8          THE COURT:  You did not continue to deliberate while

9    you were eating.

10         JUROR NO. 3:  No, we did not.

11         THE COURT:  You did not discuss the case at all --

12         JUROR NO. 3:  Correct, we did not.

13         THE COURT:  -- during the lunch --

14         JUROR NO. 3:  Correct.

15         THE COURT:  -- when Juror No. 6 was not present.

16         JUROR NO. 3:  Correct, we were told not to.  We did

17   not.  We were told all nine of us should be present for any

18   deliberation.

19         THE COURT:  Who told you that?

20         JUROR NO. 3:  You in this courtroom, and also there's

21   a document on the table.

22         THE COURT:  And then Juror No. 6 returned.

23         JUROR NO. 3:  Correct.

24         THE COURT:  And all nine of you were again present.

25         JUROR NO. 3:  Correct.

1          THE COURT:  Then Juror No. 1, the foreperson, either

2     on his own initiative or upon the prompting of someone else,

3     took up the matter of the completion of the verdict form.

4          JUROR NO. 3:  Correct.  We all agreed on the verdict,

5     the form was completed, and knocked on the door.

6          THE COURT:  Did the foreman then sign the verdict

7     form?

8          JUROR NO. 3:  Correct.

9          THE COURT:  Did you see him do it?

10          JUROR NO. 3:  Correct.  He sat right to the right of

11    me.

12          THE COURT:  And then someone notified the courtroom

13    deputy.

14          JUROR NO. 3:  Correct.

15          THE COURT:  Thank you, ma'am.

16          JUROR NO. 3:  You're welcome.

17          THE COURT:  Few more questions, just a second.

18       **(Bench conference on the record:**

19          THE COURT:  Ms. Campbell, anything else with this

20    juror?

21          MS. CAMPBELL:  No, Your Honor.

22          THE COURT:  Ms. DeShields?

23          MS. DESHIELDS:  Your Honor, I just had one question

24    about as the form itself was being completed --

25          THE COURT:  You're breaking up.  Right up on that

1   microphone, please.

2          MS. DESHIELDS:  Once Juror No. 6 returned and the

3   foreperson started to sign or to complete the verdict form, was

4   there discussion before the form was actually executed about

5   whether they were all firm in their verdict or if there was

6   some sort of polling that was going on.

7          THE COURT:  Okay, I think I've covered it, but I'll

8   ask that.  Thank you.)

9      **(Bench conference concluded.)**

10          THE COURT:  Directing your attention to the moments

11   just before when the foreperson completed the verdict form and

12   signed it, was there any additional discussion at that time

13   between and among jurors about the case, the verdict, what the

14   verdict should be?

15          JUROR NO. 3:  There was no further discussion on the

16   verdict of the case.  It was decided.

17          THE COURT:  It was merely the what we would call

18   administerial task of completing?

19          JUROR NO. 3:  X'ing or checking the box and then

20   Juror No. 1's signature.

21          THE COURT:  And otherwise no substantive discussion

22   about --

23          JUROR NO. 3:  The verdict?

24          THE COURT:  -- what the verdict would be?

25          JUROR NO. 3:  No.

1           THE COURT:  Thank you.  Take Juror No. 3 back and

2     bring in Juror No. 4.  Juror No. 3, please do not have any

3     conversations with anyone else on the jury or any other person

4     at all about what we've been talking about just now here in the

5     courtroom.  Do you understand?

6           JUROR NO. 3:  I understand.

7           THE COURT:  Thank you, ma'am.

8        (Juror No. 3 exited the courtroom.)

9           MS. DESHIELDS:  Your Honor?

10          THE COURT:  There are no jurors present.  Ms.

11    DeShields -- go ahead.

12          MS. DESHIELDS:  Might you propose to the next juror

13    who takes the box whether or not there have been any

14    discussions in the jury room about what's going on presently?

15          THE COURT:  I will do that.

16          MS. DESHIELDS:  Thank you, Your Honor.

17       (Juror No. 4 entered the courtroom.)

18          THE COURT:  Sit right in front of the microphone,

19    that will make it easier.  Good afternoon.

20          JUROR NO. 4:  Hello.

21          THE COURT:  Juror No. 4.  I have some questions for

22    you.  The first question is whether there has been any

23    discussion in the jury room in the last 30, 40, 50 minutes

24    about what is occurring here in the courtroom or whether jurors

25    are addressing other subjects?

1              JUROR NO. 4:  No.

2              THE COURT:  So there has been no discussion that

3    you're aware of that is addressing what's going on in here?

4              JUROR NO. 4:  Only that they can't talk about it.

5              THE COURT:  Okay.  And you have been in the jury room

6    this entire time as jurors have been going in and out of the

7    courtroom?

8              JUROR NO. 4:  Correct.

9              THE COURT:  Is that fair?

10             JUROR NO. 4:  Yes.

11             THE COURT:  Would you have heard a discussion going

12   on in there about what's going on in the courtroom if it had

13   occurred?

14             JUROR NO. 4:  Yes.

15             THE COURT:  Okay.  So now when I have this

16   conversation with you, we have to have some ground rules, very

17   important ones because this is a delicate subject.  As I ask

18   you questions, please understand I am not asking you about and

19   do not want to hear about any deliberations that have occurred

20   in the jury room.  That process is sacred.  Nobody intrudes on

21   that, including the judge.  Presumably there have been

22   conversations, discussions, view points expressed and so on and

23   so forth.  You should share absolutely none of that in this

24   forum now with me.  Do you understand that?

25             JUROR NO. 4:  Yes.

1          THE COURT:  Similarly, in a moment I'll be asking you

2    some questions around the topic of a verdict in the case.  To

3    the extent I get into that with you, you need to understand

4    there's an overarching rule operating, and that is in no way,

5    shape or form, directly or indirectly, are you to indicate to

6    me, telegraph to me, suggest to me what the verdict is in this

7    case.  You simply cannot go there.

8          JUROR NO. 4:  Understood.

9          THE COURT:  Okay.  Now to walk right up to the edge

10   of the cliff but not step off of it, has the jury reached a

11   verdict in this case?

12         JUROR NO. 4:  Yes.

13         THE COURT:  Did Juror No. 6 leave the jury room at

14   some point today?

15         JUROR NO. 4:  Yes.

16         THE COURT:  Had the jury reached a verdict before

17   Juror No. 6 left the courtroom?

18         JUROR NO. 4:  Yes.

19         THE COURT:  Did the foreperson of the jury record the

20   jury's verdict on the verdict form before Juror No. 6 left the

21   courtroom?

22         JUROR NO. 4:  Yes.

23         THE COURT:  At some point lunch was delivered to the

24   jurors.  Is that true?

25         JUROR NO. 4:  Yes.

```
1                THE COURT:  Did you consume some of the lunch?
2                JUROR NO. 4:  I did.
3                THE COURT:  Do you know where Juror No. 6 went when
4    Juror No. 6 left the jury room?
5                JUROR NO. 4:  I did not.
6                THE COURT:  Do you know now where he went?
7                JUROR NO. 4:  Yes.
8                THE COURT:  How do you know?
9                JUROR NO. 4:  He told us.
10               THE COURT:  Where did he go?
11               JUROR NO. 4:  The fourth floor.
12               THE COURT:  Why did he go there?
13               JUROR NO. 4:  He goes there every day to eat his
14   lunch, I believe.
15               THE COURT:  Okay.  How long was he gone today?
16               JUROR NO. 4:  Maybe 30 minutes.
17               THE COURT:  He eventually returned to the jury room?
18               JUROR NO. 4:  Correct.
19               THE COURT:  Once he had returned to the jury room,
20   without telling me anything about deliberations or the
21   substance of any verdict, what happened after he came back?
22   Did any events occur?
23               JUROR NO. 4:  No, no.  But I believe it was the
24   bailiff asked to talk to the foreman and then asked to talk
25   with Juror No. 6, and then he came back in.
```

1          THE COURT:  Relative to when you ate lunch and when

2     Juror No. 6 was away from the jury room and then returned to

3     the jury room, relative to those events, when was the verdict

4     form completed by the foreman?

5          JUROR NO. 4:  Before he vacated for lunch.

6          THE COURT:  How do you know that?

7          JUROR NO. 4:  I saw him sign it.

8          THE COURT:  And how do you know and why are you

9     confident that you know when he signed it relative to the

10    events that I have been describing, i.e., before lunch, before

11    the departure of Juror No. 6?

12         JUROR NO. 4:  I don't understand.  Can you?

13         THE COURT:  Yes.  How and why are you confident as to

14    the timing of when the foreperson signed the verdict form in

15    relation to the other events we've been describing?  You're

16    eating lunch, Juror No. 6 leaving, Juror No. 6 returning.  You

17    have a memory of when the verdict form was signed relative to

18    those events.  Can you tell us anything about why you believe

19    what you believe in terms of that sequence?

20         JUROR NO. 4:  I was looking at him while he was doing

21    it.

22         THE COURT:  Okay, thank you.  I'm going to talk to

23    the lawyers in private.  You won't be able to hear us for a

24    minute, and I'll get back to you.

25         JUROR NO. 4:  Okay.

1      **(Bench conference on the record:**

2              THE COURT:  Ms. Campbell, any questions?

3              MS. CAMPBELL:  No, Your Honor.

4              THE COURT:  Ms. DeShields?

5              MS. DESHIELDS:  No, Your Honor.

6              THE COURT:  Thank you.)

7      **(Bench conference concluded.**)

8              THE COURT:  Juror No. 6, I instruct you not to

9      discuss the topics that we've been discussing here in the

10     courtroom with anyone, including any of your fellow jurors in

11     the jury room.  Do you understand that instruction?

12             JUROR NO. 4:  Yes, but I'm Juror No. 4.

13             THE COURT:  Juror No. 4, I apologize.  Juror No. 4,

14     do you understand the instruction I just gave you about

15     discussing what's been transpiring in here?

16             JUROR NO. 4:  Yes, sir.

17             THE COURT:  Thank you, sir.  You may return to the

18     jury room.  Now bring in Juror No. 5.

19        (Juror No. 4 exited; Juror No. 5 entered the courtroom.)

20             THE COURT:  Good afternoon, Juror No. 5.

21             JUROR NO. 5:  Hello.

22             THE COURT:  Are you still cold?

23             JUROR NO. 5:  Yes.

24             THE COURT:  We're still trying in that regard, and I

25     apologize to you about the temperature.  I have to ask you a

1    few questions about a topic.  Before I ask those questions,

2    though, I want to make sure that you understand what I'm not

3    asking you about.  I do not want to hear anything about the

4    jury's deliberations, the substance of the deliberations, what

5    jurors think, what the group thinks, what individuals think,

6    what was said, how they view the evidence, any discussions back

7    and forth that might have happened in the jury room.  I do not

8    want to hear anything about any of that.  Do you understand?

9              JUROR NO. 5:  Yes.

10             THE COURT:  I may also touch upon the question of

11   whether there's been a verdict in this case and so forth.  In

12   fact, I will be asking you some questions about that.  It's

13   very important for you to understand that as we're talking

14   about that, I do not want to know in any way, shape or form

15   what the verdict is, if there is a verdict.  I do not want to

16   know what it is, and you're not to tell me.  Do you understand

17   that?

18             JUROR NO. 5:  Yes.

19             THE COURT:  Okay.  Here we go.  Has the jury reached

20   a verdict in the case?  I don't want to know what the verdict

21   is, but I just want to know has the jury reached a verdict?

22             JUROR NO. 5:  Yes.

23             THE COURT:  Did Juror No. 6 leave the jury room at

24   some point?

25             JUROR NO. 5:  Yes.

```
1            THE COURT:  Had the jury reached a verdict before
2   Juror No. 6 left the jury room?
3            JUROR NO. 5:  Yes.
4            THE COURT:  Where did Juror No. 6 go?
5            JUROR NO. 5:  I don't know.
6            THE COURT:  You don't know.
7            JUROR NO. 5:  No.
8            THE COURT:  How long was he gone?
9            JUROR NO. 5:  From the time we were brought lunch --
10  after we were brought lunch.  And then he came back when we let
11  the bailiff know.  So I'm not sure how long that was.
12           THE COURT:  Okay.  Did the foreperson of the jury
13  complete the verdict form?  If you know the answer to that
14  question, don't tell me what he put on the form.  All I'm
15  asking you is did he complete the form.  Did the foreperson of
16  the jury complete the form?  Did he fill out the form, the
17  verdict form?
18           JUROR NO. 5:  Are you saying before he left or?
19           THE COURT:  I'm going to ask you about that in a
20  minute.  First question is:  Did he complete the form?
21           JUROR NO. 5:  Yes.
22           THE COURT:  Did he sign the form?
23           JUROR NO. 5:  Yes.
24           THE COURT:  When did the foreperson of the jury
25  complete the form?  Did he do it before?  Did he do it before
```

1    Juror No. 6 left?  Did he do it while Juror No. 6 was gone?

2    Did he do it after Juror No. 6 had returned?

3            JUROR NO. 5:  When he returned.

4            THE COURT:  He completed the form after Juror No. 6

5    returned.

6            JUROR NO. 5:  Yes.

7            THE COURT:  And are you certain of that?

8            JUROR NO. 5:  Yes.

9            THE COURT:  Why are you certain of that, if you can

10   tell us?  What in your memory sparks that?  Again, don't tell

11   us what the verdict was.

12           JUROR NO. 5:  Because we were waiting for an answer

13   from you from the letter, the message we sent to you.  So we

14   got the answer back, but he was gone when we got the letter

15   back.  So we were waiting for him to come back to read it, to

16   read your answer to the question we had.

17           THE COURT:  Okay.  He was gone when the response to

18   one of the jury questions came back from the Court and came

19   into the jury room?

20           JUROR NO. 5:  Yes.

21           THE COURT:  He wasn't there when that happened?

22           JUROR NO. 5:  No.

23           THE COURT:  Okay.  Then was there any discussion

24   about the Court's response to those questions?  Don't tell me

25   what the discussion was.  Just was there discussion or was

1    there not?

2                    JUROR NO. 5:  No.

3                    THE COURT:  There was no discussion in relation to

4    the answers that the Court supplied?

5                    JUROR NO. 5:  No.  We said we weren't reading it

6    until he came back.

7                    THE COURT:  Okay.  And then he came back?

8                    JUROR NO. 5:  Yes.

9                    THE COURT:  And then did you read it?

10                   JUROR NO. 5:  Yes.

11                   THE COURT:  And then was there a discussion?

12                   JUROR NO. 5:  Yes.

13                   THE COURT:  Okay.  Had the verdict already been

14   reached at that point?

15                   JUROR NO. 5:  Yes.

16                   THE COURT:  After he came back or before he left?

17                   JUROR NO. 5:  I guess it's hard to say without saying

18   it.

19                   THE COURT:  Yeah, don't say what the verdict was.

20                   JUROR NO. 5:  So we already reached a verdict before

21   he left.  We were waiting for the answer to complete the form.

22   I guess that's the best way I can say it without saying.

23                   THE COURT:  Okay.  Then the form -- did the jury

24   foreman complete the verdict form before Juror No. 6 left the

25   jury room or after he left the jury room and came back?

1        JUROR NO. 5:  And came back.  He completed it when he

2   came back.

3        THE COURT:  Thank you.  Now I'm going to talk with

4   the lawyers a minute, and you won't be able to hear us.

5        **(Bench conference on the record:**

6        THE COURT:  Ms. Campbell?

7        MS. CAMPBELL:  No questions, Your Honor.

8        THE COURT:  No questions?

9        MS. CAMPBELL:  No.

10       THE COURT:  Thank you.  Ms. DeShields?

11       MS. DESHIELDS:  Your Honor, I do have a question.

12       THE COURT:  I can't hear you.

13       MS. DESHIELDS:  Can you hear me now?

14       THE COURT:  Yes.

15       MS. DESHIELDS:  She indicated that they were waiting

16   for a response from the Court based on their communication to

17   the Court.

18       THE COURT:  Yes.

19       MS. DESHIELDS:  I'd like to know if there were any

20   discussions about the Court's, the nature of the response

21   before Juror 6 returned and after Juror 6 returned.

22       THE COURT:  I think she answered that.  I think she

23   said that they were told that they couldn't talk about anything

24   because everybody wasn't there.  Isn't that what she said?

25   I'll ask her again.

1          MS. CAMPBELL:  She did already speak to that.)

2      **(Bench conference concluded.**)

3          THE COURT:  You previously said that when the Court's

4    response to the juror's questions came back, Juror No. 6 was

5    not present.

6          JUROR NO. 5:  Correct.

7          THE COURT:  Were there any discussions among the

8    jurors, any deliberations, any discussion about the response

9    that the Court delivered while Juror No. 6 was not present?

10          JUROR NO. 5:  No.

11          THE COURT:  Was there discussion about the Court's

12    response after Juror No. 6 returned?

13          JUROR NO. 5:  Yes.

14          THE COURT:  So there were no discussions about the

15    Court's response while Juror No. 6 was gone, but there were

16    discussions about the Court's response after Juror No. 6

17    returned?

18          JUROR NO. 5:  Yes, that's correct.

19          THE COURT:  Have I just recited it correctly?

20          JUROR NO. 5:  Yes.

21          THE COURT:  Are you certain?

22          JUROR NO. 5:  Yes.

23          THE COURT:  Okay.  And when in all of that did the

24    foreperson fill out and sign the verdict form?

25          JUROR NO. 5:  After he came back and we discussed

```
 1   what the response was, that's when.
 2            THE COURT:  That's when the foreman filled out and
 3   signed the form?
 4            JUROR NO. 5:  Yes.
 5            THE COURT:  Thank you.  Private channel.
 6        (Bench conference on the record:
 7            THE COURT:  Anything else, Ms. DeShields?
 8            MS. DESHIELDS:  No, Your Honor.
 9            THE COURT:  Thank you.)
10        (Bench conference concluded.)
11            THE COURT:  Juror No. 5, I instruct you not to
12   discuss with your fellow jurors or with anyone what we have
13   been talking about here in the courtroom.
14            JUROR NO. 5:  Okay.
15            THE COURT:  Do you understand that instruction?
16            JUROR NO. 5:  Yes.
17            THE COURT:  Thank you, ma'am.  You may return to the
18   jury room.  Number 7.
19      (Juror No. 5 exited; Juror No. 7 entered the courtroom.)
20            THE COURT:  Front row right by the microphone,
21   please.  Good afternoon, Juror No. 7.
22            JUROR NO. 7:  Good afternoon.
23            THE COURT:  Thank you for joining us here in the
24   courtroom.  I'm going to have a conversation with you and ask
25   you a few questions in a moment, but I want to begin by telling
```

1  you what we cannot discuss so that we're crystal clear where

2  the guardrails are and don't jump the tracks, what we cannot

3  discuss.

4           JUROR NO. 7:  Yes.

5           THE COURT:  As I'm talking with you here in a moment,

6  I do not want to hear anything about the jury's deliberations.

7  I don't want to hear anything about the substance of them, who

8  said what, who thought what, we thought this, we felt that.

9  Anything along those lines, that's all off limits.  Can't go

10 there at all.

11          JUROR NO. 7:  Yes, Your Honor.

12          THE COURT:  Number 2, I'm almost certainly going to

13 ask you about whether there's a verdict in the case and so

14 forth.  It's extremely important as we're discussing that that

15 you not reveal to me what any verdict might be.  You understand

16 what I'm saying?

17          JUROR NO. 7:  Yes, Your Honor.

18          THE COURT:  Here we go.  Has the jury reached a

19 verdict in the case?

20          JUROR NO. 7:  Yes.

21          THE COURT:  Did Juror No. 6 leave the jury room at

22 some point?

23          JUROR NO. 7:  Yes.

24          THE COURT:  Had the jury reached a verdict before

25 Juror No. 6 left the jury room?

1              JUROR NO. 7:  Yes.

2              THE COURT:  Had the foreperson of the jury recorded

3    the jury's verdict on the verdict form and signed the verdict

4    form before Juror No. 6 left the jury room?

5              JUROR NO. 7:  No.

6              THE COURT:  How long was Juror No. 6 gone?

7              JUROR NO. 7:  Close to an hour, I think.

8              THE COURT:  Where did Juror No. 6 go?

9              JUROR NO. 7:  I believe that he went downstairs to

10   get a sandwich.

11             THE COURT:  Was Juror No. 6 the only juror who left?

12             JUROR NO. 7:  Yes.

13             THE COURT:  So that left eight of you?

14             JUROR NO. 7:  Yes.

15             THE COURT:  What did you do while Juror No. 6 was

16   gone?

17             JUROR NO. 7:  We ate our lunch.  We just talked about

18   totally irrelevant topics.  We did not discuss the case at

19   all.

20             THE COURT:  Was there any discussion about the fact

21   that you should or should not discuss the case while you were

22   eating lunch?

23             JUROR NO. 7:  It was understood.  No one tried to

24   talk about it.

25             THE COURT:  Okay.  At some point Juror No. 6

1   returned?

2           JUROR NO. 7:  Yes.  We noticed that he had been -- I

3   thought that he went to the bathroom at first, and then I

4   noticed he had been gone for a while, and that's when we all

5   kind of realized that he had left.

6           THE COURT:  But at some point he came back?

7           JUROR NO. 7:  He came back.

8           THE COURT:  I think you've indicated after he came

9   back, the verdict form was completed?

10          JUROR NO. 7:  Correct.

11          THE COURT:  Before the verdict form was completed,

12  was there additional case-related discussion among the jurors?

13          JUROR NO. 7:  After he came back?

14          THE COURT:  After he came back.

15          JUROR NO. 7:  After he came back, yes.

16          THE COURT:  And was that discussion that you would

17  call -- was it a substantive discussion?  Was it -- I don't

18  want to put words in your mouth -- purely administerial, do you

19  have a pen or things like that, administrative?  Or was it

20  about the case, your deliberations, your decision?  How would

21  you characterize it?  Again, without telling me what your

22  verdict was.

23          JUROR NO. 7:  It was just reconfirming what we had

24  all agreed before he left.

25          THE COURT:  And was your foreperson sort of presiding

1  at that point?

2          JUROR NO. 7:  Yes.

3          THE COURT:  Okay.  Bear with me a minute.

4      **(Bench conference on the record:**

5          THE COURT:  Ms. Campbell?  Anything?

6          MS. CAMPBELL:  I didn't hear you.

7          THE COURT:  Do you have anything, any issues, any

8  questions, any points you want to make with me?

9          MS. CAMPBELL:  No, Your Honor.

10          THE COURT:  Thank you.  Ms. DeShields?

11          MS. DESHIELDS:  No, Your Honor.

12          THE COURT:  Thank you.)

13      **(Bench conference concluded.**)

14          THE COURT:  Juror No. 7, I'm going to excuse you to

15  return to the jury room.  It's important that you not discuss

16  with any of your fellow jurors or anyone what has transpired

17  here in the courtroom, the topics that were raised here, the

18  discussion we've had and so forth.  Completely off limits in

19  the jury room.  Do you understand my instruction?

20          JUROR NO. 7:  Yes, Your Honor.

21          THE COURT:  Thank you, ma'am.  You may return to the

22  jury room.

23          JUROR NO. 7:  Thank you.

24          THE COURT:  Bring us No. 8.

25      (Juror No. 7 exited; Juror No. 8 entered the courtroom.)

1           THE COURT:  Good afternoon, Juror No. 8.

2           JUROR NO. 8:  Good afternoon.

3           THE COURT:  Thank you for joining us.  I have a few

4    questions for you.  Before I ask those questions though, I have

5    to first tell you what I'm not asking you and what we can't get

6    into in this discussion because we're at a somewhat delicate

7    moment in this process, and I want to make sure you and I are

8    on exactly the same page in terms of what the ground rules are.

9    So you and I will have a conversation in a moment, you'll hear

10   questions from me, and you'll be thinking about the answers

11   that you have to those questions.  But there's an overarching

12   principle or rule that's in effect here, a couple of them

13   actually.

14          The first is you cannot tell me anything about the

15   jury's deliberations, the substance of them, what you thought,

16   what others thought, how evidence was evaluated, how a witness

17   was perceived, what some people thought ought to be the

18   outcome, what other people thought.  All of that is completely

19   off limits, and you can't even touch that in our discussion.

20   Do you understand that?

21          JUROR NO. 8:  Yes.

22          THE COURT:  The second thing is I am going to be

23   talking to you about the process related to the returning of a

24   verdict and whether a verdict has been reached in the case and

25   so forth.  So I'm going to have to walk up to the edge of a

```
 1    cliff here, but it's very important that we not step off the
 2    cliff.  Stepping off the cliff is revealing what any verdict
 3    might be.  That can't happen.  So in any answers that you gave
 4    me to your questions be circumspect, and make sure that you're
 5    not saying or implying what verdict may have been reached in
 6    this case.  We can't get into that.
 7               JUROR NO. 8:  Okay.
 8               THE COURT:  Are you with me?
 9               JUROR NO. 8:  Yes.
10               THE COURT:  Has a verdict been reached in the case?
11               JUROR NO. 8:  Yes.
12               THE COURT:  Did Juror No. 6 leave the jury room at
13    some point?
14               JUROR NO. 8:  Yes.
15               THE COURT:  Had the verdict been reached before Juror
16    No. 6 left the jury room?
17               JUROR NO. 8:  Yes.
18               THE COURT:  Where did Juror No. 6 go?
19               JUROR NO. 8:  Do you want me to say what I heard or
20    what I --
21               THE COURT:  Did Juror No. 6 tell you this?
22               JUROR NO. 8:  Yes.
23               THE COURT:  Where did Juror No. 6 tell you that he
24    went?
25               JUROR NO. 8:  To get a sandwich.
```

```
1              THE COURT:  How long was Juror No. 6 gone?

2              JUROR NO. 8:  Maybe 30 minutes.

3              THE COURT:  Juror No. 6 returned at some point?

4              JUROR NO. 8:  Yes.

5              THE COURT:  What did you and the other jurors do

6    while Juror No. 6 was gone?

7              JUROR NO. 8:  We were eating lunch.

8              THE COURT:  Was Juror No. 6 the only juror that left?

9              JUROR NO. 8:  Yes.

10             THE COURT:  While you ate lunch, did you continue to

11   deliberate in the case?

12             JUROR NO. 8:  No.

13             THE COURT:  Are you sure about that?

14             JUROR NO. 8:  Yes.

15             THE COURT:  Did the jury foreperson complete the

16   verdict form?  Don't tell me if you know what he wrote on the

17   verdict form.  I'm only asking you did he complete the verdict

18   form.

19             JUROR NO. 8:  Yes.

20             THE COURT:  He filled it out?

21             JUROR NO. 8:  Mm-hmm.

22             THE COURT:  Did he sign it?

23             JUROR NO. 8:  Yes.

24             THE COURT:  Did you see him do it?

25             JUROR NO. 8:  Yes.
```

1    THE COURT:  When did he do that in this process, in
2    this series of events that I've been quizzing you about for the
3    last five minutes?  When did he do that?
4    JUROR NO. 8:  After Juror 6 came back.
5    THE COURT:  So when Juror 6 came back and all nine
6    were present, was there further discussion then about the case?
7    JUROR NO. 8:  No -- well, to talk about the
8    verdict.
9    THE COURT:  To talk about the verdict.
10   JUROR NO. 8:  Mm-hmm.
11   THE COURT:  Was there confirmation among the nine
12   about what the verdict was?  Or did that not occur?
13   JUROR NO. 8:  Yes.
14   THE COURT:  There was such a confirmation?
15   JUROR NO. 8:  Mm-hmm.
16   THE COURT:  Beyond that confirmation, was there a
17   discussion that went beyond confirmation as to the whys of what
18   we are doing, anything along those lines?
19   JUROR NO. 8:  No.
20   THE COURT:  We'll stop there.  Let me talk with the
21   lawyers a second.  Thank you, ma'am.
22   **(Bench conference on the record:**
23   THE COURT:  Any questions, Ms. Campbell?
24   MS. CAMPBELL:  No, Your Honor.
25   THE COURT:  Ms. DeShields?

1          MS. DESHIELDS:  Your Honor, if you could just ask

2     when it was that the jury received the Court's response to the

3     juror's communication and whether there was any discussion

4     about the response.

5          THE COURT:  Yes.)

6          **(Bench conference concluded.**)

7          THE COURT:  During the time that Juror No. 6 was away

8     from the jury room, did the jury receive any messages from the

9     Court including responses to questions that the jury had posed

10    earlier in the morning?

11         JUROR NO. 8:  Yes.

12         THE COURT:  Did a response or more than one response

13    come to the jury room via the clerk while Juror No. 6 was

14    absent?

15         JUROR NO. 8:  Yes.

16         THE COURT:  When the response arrived, was the

17    response reviewed by the jurors in the absence of Juror No. 6?

18         JUROR NO. 8:  No, we waited for him to get back.

19         THE COURT:  Say again.

20         JUROR NO. 8:  We waited for him to get back.

21         THE COURT:  I still didn't get it.

22         JUROR NO. 8:  We waited for him to get back.

23         THE COURT:  You waited for him to get back.

24         JUROR NO. 8:  Mm-hmm.

25         THE COURT:  So there was no substantive discussion

1    about the response --

2            JUROR NO. 8:  No.

3            THE COURT:  -- while Juror No. 6 was not there?

4            JUROR NO. 8:  No.

5            THE COURT:  Once Juror No. 6 returned, did you then

6    have a substantive discussion about the response?

7            JUROR NO. 8:  Yes.

8            THE COURT:  You did?

9            JUROR NO. 8:  Mm-hmm -- yes, sorry.

10           THE COURT:  How long did that discussion last?

11           JUROR NO. 8:  Maybe a few seconds.  It wasn't very

12   long.

13           THE COURT:  A brief discussion?

14           JUROR NO. 8:  It was very brief, less than a minute.

15   Less than a minute.

16           THE COURT:  Then was the verdict form completed

17   sometime after that?

18           JUROR NO. 8:  Yes.

19           THE COURT:  Soon thereafter?

20           JUROR NO. 8:  A few minutes.

21           THE COURT:  A few minutes after that, okay.

22           JUROR NO. 8:  Mm-hmm.

23           THE COURT:  Bear with me.

24           **(Bench conference on the record:**

25           THE COURT:  Ms. DeShields, anything else?

1          MS. DESHIELDS:  No, Your Honor.

2          THE COURT:  Thank you.)

3     **(Bench conference concluded.)**

4          THE COURT:  It's very important that you not discuss

5     what has transpired here in the courtroom with any of your

6     fellow jurors or anyone else for that matter, and I instruct

7     you not to talk about what you've been quizzed about here in

8     the courtroom at all.  Do you understand?

9          JUROR NO. 8:  Yes, sir.

10         THE COURT:  You may return to the jury room.  Thank

11    you, ma'am.  Bring in No. 9.

12       (Juror No. 8 exited; Juror No. 9 entered the courtroom.)

13         THE COURT:  Good afternoon, sir.

14         JUROR NO. 9:  Good afternoon.

15         THE COURT:  You are Juror No. 9?

16         JUROR NO. 9:  Yes, sir.

17         THE COURT:  Thank you for joining us just by yourself

18    here in the jury box.  I have some questions for you.

19         JUROR NO. 9:  Yes, sir.

20         THE COURT:  I will be asking you some questions about

21    a sensitive subject, and, accordingly, before I begin, I

22    actually want to start by telling you what I'm not asking you

23    about so I can be certain that you don't give me answers to

24    things that we should not be discussing.

25         JUROR NO. 9:  Okay.

1        THE COURT:  For instance, as we have our conversation

2   in a few minutes, I do not want you to tell me anything about

3   any deliberations that the jury has engaged in in the jury

4   room.  By that, I mean any of the conversations that you have

5   had since the case was given to you for deliberation, for

6   decision in the case, I do not want to hear about the substance

7   of any of those conversations between and among the jurors.  Do

8   you understand that?

9        JUROR NO. 9:  Yes, I do.

10       THE COURT:  Okay.  There's a related topic.  That is

11  that I am almost certainly going to be asking you questions

12  about whether or not the jury has reached a verdict in the

13  case, and to the extent that I get into that, I absolutely,

14  positively do not want to know what any verdict is.  If there's

15  a verdict, I don't want to know what it is, and you cannot tell

16  me at this time.  Do you understand that?

17       JUROR NO. 9:  Yes, I do.

18       THE COURT:  Okay.  This is a little bit subtle, but I

19  think you're with me.  Now I'm going to get into my questions.

20  Here we go.  Pause before you answer so that you make sure your

21  answers are going to be within the guardrails I just described.

22  Can't disclose any deliberations, can't disclose any verdict.

23  With me?

24       JUROR NO. 9:  Yes, sir.

25       THE COURT:  Has the jury reached a verdict in the

1  case?

2          JUROR NO. 9:  Yes.

3          THE COURT:  Did Juror No. 6 leave the jury room at

4  some point?

5          JUROR NO. 9:  Yes.

6          THE COURT:  Had the jury reached a verdict before

7  Juror No. 6 left the jury room?

8          JUROR NO. 9:  Yes.

9          THE COURT:  Where did Juror No. 6 go?

10          JUROR NO. 9:  As far as I know, when lunch was

11  brought in, he said he was going to get a sandwich.  We thought

12  at first he left to use the restroom because there was another

13  bathroom to the left door.  But we all started eating and when

14  he didn't come back, we realized he might have gone to get

15  something to eat.

16          THE COURT:  How long was he gone?

17          JUROR NO. 9:  I don't know.  Our lunch was about

18  maybe 30 to 40 minutes or so.

19          THE COURT:  During your lunch -- while you were

20  eating lunch, Juror No. 6 was not present?

21          JUROR NO. 9:  Yes.

22          THE COURT:  That's correct; he was not present?

23          JUROR NO. 9:  Yes.

24          THE COURT:  Did you discuss the case while he was not

25  present?

1              JUROR NO. 9:  No.

2              THE COURT:  Did the jury foreperson complete the

3   verdict form in this case?  Did he fill out the verdict form?

4              JUROR NO. 9:  Not while --

5              THE COURT:  Yes or no.  Did the foreperson complete

6   the verdict form ever in this case?  Did he fill it out?

7              JUROR NO. 9:  At any time?

8              THE COURT:  At any time?  Did it ever happen?

9              JUROR NO. 9:  Yes.

10             THE COURT:  Okay.  Now we'll get into when.  I just

11  first wanted to establish he did complete the verdict form.

12  Are you quite certain of that?

13             JUROR NO. 9:  Yes, sir.

14             THE COURT:  Did you see him do it?

15             JUROR NO. 9:  Yes, sir.

16             THE COURT:  Okay.  When did the jury foreperson fill

17  out and sign the verdict form?

18             JUROR NO. 9:  After Juror No. 6 returned.  When he

19  came back, we went over the form together, and he signed it in

20  front of all of us.  I witnessed it.

21             THE COURT:  And before the verdict form was actually

22  signed, did you again discuss the substance of your

23  deliberations, conclusions and so forth?  Don't tell me what

24  those were, but did you discuss them further at that point?

25             JUROR NO. 9:  Before it was signed?

```
1              THE COURT:  Yes.

2              JUROR NO. 9:  Yes.

3              THE COURT:  Would it be fair to characterize those

4   discussions as mere confirmation of what you had agreed before

5   Juror No. 6 left when you said that a verdict had been reached,

6   or was it more than a confirmation but a recapitulation and

7   reconsideration and a discussion of the relevant issues once

8   again?

9              JUROR NO. 9:  It was a confirmation.

10             THE COURT:  It was a confirmation.

11             JUROR NO. 9:  Yeah.

12             THE COURT:  As opposed to a reconsideration?

13             JUROR NO. 9:  Yes.

14             THE COURT:  Bear with me for a minute.  I'm going to

15  talk with the lawyers in private.

16             JUROR NO. 9:  Okay.

17        (Bench conference on the record:

18             THE COURT:  Ms. Campbell?

19             MS. CAMPBELL:  No questions.

20             THE COURT:  Ms. DeShields?

21             MS. DESHIELDS:  Your Honor, if you could just ask the

22  same questions that you posed to Juror No. 8.

23             THE COURT:  Which was?

24             MS. DESHIELDS:  Which was when the Court's

25  communication --
```

1          THE COURT:  About the messages, yes.)

2      **(Bench conference concluded.**)

3          THE COURT:  During the course of the morning, the

4  jury and the Court communicated with each other twice through

5  written communications.  Do you remember that?

6          JUROR NO. 9:  Yes, sir.

7          THE COURT:  The jury would pose a question, and then

8  sometime later the clerk would deliver a written answer to that

9  question.  Is that what you saw happen?

10          JUROR NO. 9:  Yes, sir.

11          THE COURT:  Did any of those responses from the Court

12  arrive while Juror No. 6 was absent?

13          JUROR NO. 9:  No.

14          THE COURT:  The responses to the questions, did any

15  of them arrive while the jurors were having their lunch?

16          JUROR NO. 9:  No.

17          THE COURT:  When did the responses arrive relative to

18  the events that we've been talking about, to the extent you

19  remember?

20          JUROR NO. 9:  To my knowledge, my memory of it, the

21  second response to our questions arrived before lunch was

22  brought in.  I don't know how many minutes before, but it was

23  probably 20 minutes before or so.  So we had the responses when

24  everyone was in the room.

25          THE COURT:  And were the responses discussed by the

1   jurors after they came from the Court?

2           JUROR NO. 9:  Yes.

3           THE COURT:  Was Juror No. 6 present for the

4   discussion of those responses?

5           JUROR NO. 9:  He was.

6           THE COURT:  Bear with me one more minute.

7       **(Bench conference on the record:**

8           THE COURT:  Anything else, Ms. DeShields?

9           MS. DESHIELDS:  No, Your Honor.

10          THE COURT:  Thank you.)

11      **(Bench conference concluded.**)

12          THE COURT:  Juror No. 9, you may now return to the

13  jury room.  It's very important, though, that you follow this

14  instruction.  You're not allowed to discuss with your fellow

15  jurors, or anyone for that matter, what we've been discussing

16  here in the courtroom just now, this whole inquiry, this

17  process, Juror No. 6 leaving, that sort of thing.  You can't

18  discuss it with them in any way, shape or form.  You can't

19  discuss it with your fellow jurors.  Do you understand?

20          JUROR NO. 9:  Yes, sir, I do.

21          THE COURT:  Thank you, sir.  You may return to the

22  jury room, and thank you.

23          JUROR NO. 9:  Thank you.

24      (Juror No. 9 exited the courtroom.)

25      (Discussion held off the record.)

1    THE COURT:  We're back on the record.  So in light of

2  the day's events, I am not going to proceed further today and

3  instead will ask for the parties' briefs on the question of

4  what should occur next in light of what has come to light and

5  considering relevant case law.

6    The court reporter will have a certified transcript

7  available for counsel by 10:00 a.m. tomorrow morning recording

8  what has transpired today which is all that's relevant to the

9  current question.

10    Counsel shall have their briefs docketed with the

11  Court by 9:00 a.m. on Friday morning addressing the various

12  topics that are in front of us.  First and foremost, the

13  Government's motion for mistrial should be formalized.  You've

14  alleged, I think, two bases.  You need to formally make that

15  motion in writing, and then you need to submit your brief in

16  support of your position.  But to the extent that you have

17  other views that are very much directed and guided by the law

18  relevant to these kinds of issues and problems, then I will

19  want to take those views as well.

20    On the plaintiff's side, if plaintiff wishes to move

21  for a mistrial, of course, they're equally free to do so.  But

22  regardless, plaintiff should file their brief simultaneously

23  stating their view of where we are at this point and what is

24  the next appropriate step.

25    I am going to excuse the jury now and direct them to

1   return for further proceedings at 12:00 noon on Friday which is

2   when this matter will next continue in the courtroom.

3           The clerk will take an envelope -- let's get a larger

4   manila envelope.  The law clerk -- I want the Clerk herself to

5   remain -- I think she's off and running.  See if she's going to

6   get an envelope from just in chambers.  If so, I'm going to

7   wait until it comes back in.

8           Hand the manila envelope to Mr. Gurevich.

9   Mr. Gurevich, your instructions are to go to the entrance to

10  the jury room and to instruct the jury foreperson to take the

11  verdict form in whatever shape or condition it is in.  I don't

12  know if it's still in that white envelope that we had that was

13  all sealed up or whether it's been pulled out of the envelope

14  or whatever, you're not to view it.  You're to hand him the

15  manila envelope and tell him to place the verdict form in the

16  manila envelope and then to seal it with tape and then to sign

17  his name across the taped, sealed closure of the envelope.  And

18  then once he's done that, he's to knock on the door and hand it

19  out to you.  Do you understand the instructions?

20          THE CLERK:  Yes, Your Honor.

21          MS. DESHIELDS:  Your Honor, might I ask a question

22  while we wait?

23          THE COURT:  Yes, ma'am.

24          MS. DESHIELDS:  Do you want counsel to be prepared to

25  argue at 12:00 noon on Friday?

1          THE COURT:  That's a good point.  I'll bring the jury

2     back at 1:00.  We'll plan to see counsel at 12:00.

3          (Pause.)

4          THE COURT:  Mr. Gurevich, you've just handed me a

5     manila envelope.  Did you follow the instructions that I gave

6     you a moment ago?

7          THE CLERK:  Yes, Your Honor.

8          THE COURT:  I see that this envelope has been sealed

9     up and there appears to be the name of a person, a signature

10    across the seal.  Is that consistent with the instructions that

11    you gave to the foreperson of the jury?

12         THE CLERK:  Yes, Your Honor.

13         THE COURT:  Do you believe that this envelope

14    contains the verdict form?

15         THE CLERK:  Yes, Your Honor.

16         THE COURT:  Let the record reflect that I'm now

17    adding my signature across the envelope, the sealing of the

18    envelope.  On the front of the envelope I'm placing the case

19    number, the name of the case, the fact that this is an

20    impounded verdict form, possibly completed but not viewed by

21    the Court.  I'm adding the date which is August 31, 2022 and

22    the time which is 3:38 p.m.

23         I'm now personally handing this to the Clerk of

24    Court, Catherine Stavlas, who's present in the courtroom and

25    directing her to place this impounded verdict form in the

1   Court's vault and to ensure that it is secure there until such

2   time as I request that the verdict form be returned to the

3   courtroom.  Ms. Stavlas, will you do that?

4           MS. STAVLAS:  I will, Judge.

5           THE COURT:  Thank you.  I think all that remains to

6   happen is to excuse the jury until 1:00 p.m. on Friday.  Is

7   there anything else we can productively address?  Ms. Campbell?

8           MS. CAMPBELL:  No, Your Honor.

9           THE COURT:  Ms. DeShields?

10          MS. DESHIELDS:  No, Your Honor.

11          THE COURT:  Thank you.  Mr. Clerk, bring the jury in.

12          You're excused; thank you, Ms. Stavlas.

13      (Jury entered the courtroom at 3:40 p.m.)

14          THE COURT:  Be seated, please.  Good afternoon,

15  ladies and gentlemen.  We have come to the end of our court

16  day.  As you are aware, certain matters have been addressed

17  with you since we were last together.  Those matters continue

18  to be the subject of the Court's attention and will remain so

19  in the coming days.

20          Your work here for today is finished.  You will not

21  return to the court tomorrow when the Court will be otherwise

22  involved in legal matters related to this case, but they will

23  not directly involve the jurors, so there will be no need for

24  the jurors to be present.  Then you are directed to return to

25  this court on Friday afternoon at 1:00 p.m. for further

1   proceedings.

2           I recognize that this development is inconsistent

3   with the plan and schedule that the Court had expected to

4   follow in the case, but trials are real world events and

5   experiences, and not every twist and turn in the road can be

6   anticipated by the Court as we plan out our schedule and our

7   time together.  Now we're in circumstances that require this

8   change in our schedule, and the jurors are required to return

9   in person to the jury room at 1:00 p.m. on Friday.  Just to be

10  crystal clear, that would be the 2nd of September.  So the jury

11  will not be in attendance tomorrow, but they will be in

12  attendance on Friday beginning at 1:00 p.m.

13          During this recess, do not discuss the case with

14  anyone.  Do not discuss it with your fellow jurors.  Do not

15  discuss it with any of your friends or family.  Do not allow

16  yourselves to be exposed to any news articles or reports that

17  touch upon the case or the issues it presents or the

18  participants in the trial.  Avoid all contact of any kind with

19  any of the participants in the trial.

20          Do not make any independent investigation of the law

21  or the facts relevant to the case.  Do not conduct internet

22  searches with respect to the issues presented or the persons

23  participating in the trial.  Do not consult external sources

24  such as encyclopedias or dictionaries in reference to the

25  issues and terms that have been presented to you here.

1          You are excused until 1:00 p.m. on Friday when you

2    are required to return.  Take the jury out.

3       (Jury left the courtroom at 3:43 p.m.)

4          THE CLERK:  Your Honor, on the way out, the

5    foreperson asked me if he could ask me a question.

6          THE COURT:  Of course you did not answer?

7          THE CLERK:  No.

8          THE COURT:  And you should not.  Thank you.  We'll

9    wait to give the jury time to clear the building.

10          Mr. Gurevich, it is essential that the -- there's a

11   knock at the door.  Tell the jurors that if they have anything

12   to communicate, they need to place it in writing, and we'll

13   stand by and wait for their note.

14      (Pause.)

15          THE CLERK:  Your Honor, they're making that note

16   now.

17          THE COURT:  Did you make sure all the jurors remain?

18          There's a hanging question, counsel.  That is whether

19   the Court should take the verdict that apparently has been

20   reached on a provisional basis, subject to the submissions of

21   counsel and so forth.  But I have considered that option and

22   decided that it's not the right road to take, particularly at

23   this moment in time, because the question is more sort of

24   purely and unambiguously presented as to what should happen

25   next when the verdict itself has not yet been received.  But

1    I'll entertain counsel's views on that question since we're

2    here waiting for the jury to respond in any case.

3              Ms. Campbell, do you have a view?

4              MS. CAMPBELL:  Plaintiff's view on the matter is that

5    the jury arrived at a verdict that was not tainted by any

6    outside influence and that the Court should accept it, and if

7    the defendant has an issue with it, then they file an

8    appropriate motion.  But we have to have a verdict on the

9    record.

10             THE COURT:  But, of course, there's a pending motion

11   for a mistrial, and shouldn't that issue be resolved before the

12   Court takes a verdict because if it's a mistrial, the verdict's

13   a nullity?

14             MS. CAMPBELL:  Plaintiff doesn't believe that a

15   mistrial should be granted because while there was some

16   ambiguity or question about whether or not -- when the form was

17   signed, there was absolute consistency with all of the jurors

18   that they didn't have any deliberations or communications

19   outside of the presence of Juror No. 6.  None of them testified

20   that when Juror 6 came back, he tried to influence their

21   decision in any way.  None of them testified their decision

22   changed from before he left the room until after he left the

23   room.  Juror No. 6 told us here in the courtroom that he didn't

24   have any communications with anyone about anything aside from

25   buying his sandwich.  There's simply no grounds for a mistrial

1    here.

2            As it relates to Juror No. 2 saying that "yes" was

3    circled, there's nothing on the form to be circled.  There's a

4    line there for them to write their answer, and defendant isn't

5    prejudiced by that in any way.  The Court could simply poll

6    each of the jurors to determine if they agree with the verdict

7    once it's read.

8            THE COURT:  But that doesn't address the question of

9    whether the verdict was appropriately arrived at.  In other

10   words, arrived at via a process that was entirely compliant

11   with the rules.  The jury is supposed to be kept together.

12           MS. CAMPBELL:  The crux of these cases -- even when

13   it involves third party communications when a juror actually

14   has seen a news story or something when they were in a trial or

15   inadvertently talked to someone, that in and of itself doesn't

16   guarantee an automatic mistrial.  The crux of it, what the

17   court looks at, this circuit in particular, is the extent of

18   the communication that they had.  Here Juror No. 6 didn't have

19   any communication at all.

20           So I just don't see where there would be grounds for

21   a mistrial based on him going to get a sandwich, and the rest

22   of the jury all confirmed that they didn't have any

23   communications whatsoever about the case at all while he was

24   gone and that when he came back, they didn't change their

25   verdict and discuss what the verdict should be; they merely

1   confirmed it and set it to paper.

2         THE COURT:  I tend to agree with your view,

3   Ms. Campbell, preliminarily, but what's holding me back is an

4   inclination that your opponent should at least be given the

5   opportunity to be fully heard before anything -- any action is

6   taken that's sort of irrevocable.

7         MS. CAMPBELL:  Understand, Your Honor.

8         THE COURT:  Ms. DeShields, do you want to be heard or

9   not?

10         MS. DESHIELDS:  No, Your Honor.  I think my views are

11   aligned.  I think it would be the most prudent exercise not to

12   take the verdict at this time to allow the parties to brief the

13   issue, as well as the issue of whether a mistrial is

14   appropriate in this matter before the Court moves on to the

15   final issue.

16         THE COURT:  Okay, we have a communication from the

17   jury.  It reads as follows:  "Juror 8 has a flight at 8:00 a.m.

18   on Friday 9/2.  Please advise what I should do."  It's signed

19   Juror No. 1.

20         Let's get the transcript done by 9:00 a.m., have your

21   briefs in by noon tomorrow.  I will hear argument at 2:00, and

22   we'll have the jury return at 3:00 tomorrow afternoon.  Is that

23   acceptable to plaintiff?

24         MS. CAMPBELL:  Your Honor, I want to be clear that I

25   have it correct if it's okay.

1              THE COURT:  Read it back.

2              MS. CAMPBELL:  File briefs tomorrow by noon --

3              THE COURT:  First of all, the reporter has to have

4    the transcript done by 9:00 and docketed.

5              MS. CAMPBELL:  And parties file the briefs by noon.

6              THE COURT:  By noon.

7              MS. CAMPBELL:  Argument at 2:00.

8              THE COURT:  Argument at 2:00; jury comes back at

9    3:00.  Is that acceptable, Ms. Campbell?

10             MS. CAMPBELL:  Yes, Your Honor.

11             THE COURT:  Ms. DeShields?

12             MS. DESHIELDS:  It is, Your Honor.  Thank you.

13             THE COURT:  Bring the jury back in.

14             THE CLERK:  Your Honor, this is Court's Exhibit 4.

15             THE COURT:  Court's Exhibit 4 is docketed.

16          (Pause.)

17             MS. DESHIELDS:  Your Honor, before the jury comes

18   back, we did not get the full cite for the case you cited, the

19   *Thompson* case.

20             THE COURT:  Just take that to her.

21          (Jury entered the courtroom at 3:54 p.m.)

22             THE COURT:  Be seated, please.  Ladies and gentlemen,

23   after you were excused for the evening, immediately thereafter,

24   the jury sent a note while all of you remained in the jury

25   room.  The substance of that note indicated that one of your

1    number actually is scheduled to leave Baltimore or leave this

2    area on a flight on Friday morning.  Accordingly, I am going to

3    adjust the schedule that I directed a few moments ago.

4          Instead of your returning on Friday afternoon at

5    1:00, the new instruction is for you to return here tomorrow,

6    Thursday, at 3:00 p.m.  I expect that we will complete any

7    business that we need to take care of by 5:00 or 5:30 p.m.

8    tomorrow.

9          So the jurors are required now to return at 3:00 p.m.

10   tomorrow, September 1st.  You're to come straight to the jury

11   room and assemble in the jury room.  The other directions that

12   I gave you earlier in terms of discussing the case, exposing

13   yourself to media, independent investigation of all the facts,

14   of course, all still apply.

15         The jury is excused until 3:00 p.m. tomorrow,

16   Thursday.  Please take the jury out.

17     (Jury left the courtroom at 3:56 p.m.)

18        THE COURT:  Anything else we can productively address

19   tonight, Ms. Campbell?

20        MS. CAMPBELL:  No, Your Honor.

21        THE COURT:  Ms. DeShields?

22        MS. DESHIELDS:  No, Your Honor.  Thank you.

23        THE COURT:  We're in recess until tomorrow afternoon

24   at 2:00 p.m.

25        THE CLERK:  This Court stands in recess.

1      (Proceedings concluded at 3:57 p.m.)

2                              ***

3

4          I, Patricia G. Mitchell, RMR, CRR, do hereby certify

5   that the foregoing is a correct transcript from the

6   stenographic record of August 31, 2022 proceedings in the

7   Harris v. Wormuth matter.

8          Dated this 1st day of September 2022.

9

10                     *Patricia G. Mitchell*

11          _____
                Patricia G. Mitchell
12              Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    <u>INDEX</u>

2                                                            <u>Page</u>

3    **CSO SCHREIBER**

4        Examination By THE COURT ................................... 19

5        Examination By MS. DESHIELDS.............................. 24

6    **CSO ERIC EASON**

7        Examination By THE COURT ................................... 27

8        Examination By MS. DESHIELDS.............................. 29

9        Examination By THE COURT ................................... 30

10   **JUROR NO. 1**

11        .......................................................... 35

12   **JUROR NO. 6**

     .......................................................... 42

13   **JUROR NO. 2**

14        .......................................................... 54

15   **JUROR NO. 3**

     .......................................................... 66

16   **JUROR NO. 4**

17        .......................................................... 74

18   **JUROR NO. 5**

     .......................................................... 79

19   **JUROR NO. 7**

20        .......................................................... 86

21   **JUROR NO. 8**

     .......................................................... 90

22   **JUROR NO. 9**

23        .......................................................... 97

24

25

< Dates >
**8/31/2022** 2:19 .
**August 31, 2022** 1:18, 106:21, 115:8 .
**March 25** 52:2 .
**September 1st** 114:10 .
**September 2022** 115:12 .
**"one** 10:2 .
**'one** 9:21 .
**(10** 2:3 .
**(1005** 2:3 .
.
< 0 >.
**000K** 13:13, 13:18 .
.
< 1 >.
**1** 1:10, 2:8, 2:17, 7:14, 7:17, 8:17, 10:21, 35:1, 35:2, 35:5, 35:7, 41:8, 52:25, 53:1, 53:4, 53:6, 53:7, 53:10, 54:1, 54:2, 54:7, 54:9, 72:1, 73:20, 112:19, 116:19 .
**1'** 10:23 .
**10** 37:1, 49:15, 49:17, 57:17 .
**100** 7:23, 16:19, 48:15, 49:15 .
**10:00** 104:7 .
**10:19** 8:13 .
**10:31** 8:13 .
**10:34** 9:12 .
**10:48** 9:12 .
**10:55** 13:6 .
**11:00** 27:24, 29:6 .
**11:15** 31:15, 36:14 .
**11:30** 27:24, 29:7, 31:15, 36:14 .
**11:58** 13:6 .
**12:00** 105:1, 105:25, 106:2 .
**12:03** 15:1 .
**12:27** 19:23, 19:24 .
**12:59** 15:1 .
**15** 37:1, 44:4, 49:15, 49:16, 49:17, 57:18, 63:9, 63:17 .
**17** 44:4, 49:16, 63:9, 63:17 .
**174** 52:2 .
**18-cv-03562-jkb** 1:10 .
**1825** 1:31 .
**19** 116:7 .

**1:00** 106:2, 107:6, 107:25, 108:9, 108:12, 109:1, 114:5 .
**1:55** 51:24 .
**1st** 115:12 .
.
< 2 >.
**20** 102:23 .
**20006** 1:32 .
**2013** 2:13, 7:1, 8:23, 9:24, 10:12 .
**2020** 52:2 .
**21202** 1:41 .
**24** 116:9 .
**27** 116:13 .
**29** 116:15 .
**2:00** 112:21, 113:7, 113:8, 114:24 .
**2:11** 51:24 .
**2A** 8:21, 8:22 .
**2B** 8:22, 9:16, 9:19, 12:8, 12:9, 12:17, 13:2 .
**2C** 8:24, 9:18, 12:8, 12:9, 13:2 .
**2nd** 108:10 .
.
< 3 >.
**30** 15:22, 28:6, 74:23, 77:16, 93:2, 99:18, 116:17 .
**300** 13:13, 13:18 .
**31st** 27:21 .
**35** 116:20 .
**36** 1:40 .
**3:00** 112:22, 113:9, 114:6, 114:9, 114:15 .
**3:38** 106:22 .
**3:40** 107:13 .
**3:43** 109:3 .
**3:54** 113:21 .
**3:56** 114:17 .
**3:57** 115:1 .
**3A** 13:10, 14:18 .
**3B** 14:19 .
.
< 4 >.
**40** 15:23, 74:23, 99:18 .
**42** 116:23 .
**45** 15:9, 19:24 .
**47(c** 63:14 .
**4th** 1:40 .
.

< 5 >.
**5'7"** 25:6 .
**50** 74:23 .
**54** 116:26 .
**5:00** 114:7 .
**5:30** 15:12, 114:7 .
**5A** 1:24, 16:23, 19:19, 21:24, 22:5, 27:21, 29:5 .
**5B** 21:22 .
.
< 6 >.
**66** 116:29 .
.
< 7 >.
**7** 53:5, 86:18, 86:19, 86:21, 86:22, 87:4, 87:11, 87:17, 87:20, 87:23, 88:1, 88:5, 88:7, 88:9, 88:12, 88:14, 88:17, 88:23, 89:2, 89:7, 89:10, 89:13, 89:15, 89:23, 90:2, 90:14, 90:20, 90:23, 90:25, 116:37 .
**74** 116:32 .
**750** 1:31 .
**79** 116:35 .
.
< 8 >.
**86** 116:38 .
**8:00** 112:17 .
.
< 9 >.
**9/2** 112:18 .
**90** 116:41 .
**954** 52:2 .
**97** 116:44 .
**9:00** 104:11, 112:20, 113:4 .
**9:30** 2:2 .
**9:39** 2:19 .
**[phonetic]** 29:13 .
**[sic]** 49:1 .
**[unable** 10:4, 10:7 .
.
< A >.
**a.m.** 2:2, 2:3, 2:19, 8:13, 9:12, 13:6, 27:24, 29:6, 29:7, 104:7, 104:11, 112:17, 112:20 .
**ability** 59:23 .
**able** 2:21, 11:13, 46:18, 47:10, 54:19, 66:12, 67:8, 69:12,

78:23, 84:4 .
**above** 25:6 .
**absence** 95:17 .
**absent** 23:11, 95:14,
    102:12 .
**absolute** 110:17 .
**Absolutely** 51:14, 55:18, 70:25,
    75:23, 98:13 .
**accept** 110:6 .
**acceptable** 7:9, 7:11, 11:6, 12:3,
    112:23, 113:9 .
**Access** 5:4, 5:6, 16:20, 21:24,
    22:11, 23:18 .
**accessed** 49:19 .
**accompany** 51:9 .
**Accordingly** 8:20, 10:19, 36:4,
    40:3, 52:10, 52:22, 53:5,
    97:21, 114:2 .
**accurate** 11:21, 11:23, 59:24,
    62:14 .
**accurately** 65:18 .
**acronym** 3:20, 4:9, 8:1, 11:13,
    11:15 .
**acronyms** 2:8, 2:21, 9:21,
    10:2 .
**across** 105:17, 106:10,
    106:17 .
**action** 112:5 .
**activate** 30:17 .
**activated** 29:6, 29:21, 30:4,
    32:23 .
**Activity** 11:17 .
**actual** 9:4 .
**actually** 42:3, 47:19, 49:18,
    59:17, 63:17, 73:4, 91:13,
    97:22, 100:21, 111:13,
    114:1 .
**add** 55:1, 64:14, 65:9 .
**added** 47:6 .
**adding** 106:17, 106:21 .
**addition** 15:5 .
**additional** 33:4, 39:17, 46:1,
    52:17, 63:4, 70:8, 73:12,
    89:12 .
**address** 33:8, 107:7, 111:8,
    114:18 .
**addressed** 107:16 .
**addressing** 74:25, 75:3,
    104:11 .
**adjust** 114:3 .

**administerial** 73:18, 89:18 .
**administrative** 89:19 .
**admonish** 53:2 .
**admonished** 52:3 .
**admonishment** 65:12 .
**advice** 14:1 .
**advise** 112:18 .
**advised** 15:24, 16:11, 16:12,
    39:15 .
**advisement** 51:22 .
**affirmatively** 49:12 .
**affords** 22:7, 22:11 .
**African** 23:21, 25:5 .
**afternoon** 15:2, 15:11, 35:6,
    35:8, 36:8, 36:9, 42:20,
    54:11, 54:13, 66:7, 66:8,
    74:19, 79:20, 86:21, 86:22,
    91:1, 91:2, 97:13, 97:14,
    107:14, 107:25, 112:22,
    114:4, 114:23 .
**Agency** 3:13, 3:15, 4:15, 8:4,
    10:5, 11:16 .
**Agency.** 10:3 .
**ago** 15:23, 19:20, 19:24, 106:6,
    114:3 .
**agree** 2:22, 5:12, 6:7, 7:3, 7:5,
    7:7, 9:8, 11:25, 31:12, 31:24,
    31:25, 32:5, 32:9, 32:13,
    32:15, 34:22, 46:19, 49:1,
    61:18, 111:6, 112:2 .
**agreed** 72:4, 89:24, 101:4 .
**agreement** 3:8, 3:22, 6:24,
    12:1 .
**agrees** 6:10, 6:12, 7:4, 8:8 .
**ahead** 21:3, 59:3, 74:11 .
**Alan** 1:30 .
**alarm** 16:25, 17:1, 28:24, 29:3,
    29:4, 29:5, 29:9, 29:21, 30:4,
    30:7, 30:17, 30:18, 30:25,
    32:22, 32:24, 32:25 .
**alerted** 33:1 .
**aligned** 112:11 .
**alleged** 50:2, 104:14 .
**allow** 108:15, 112:12 .
**allowed** 63:15, 103:14 .
**allows** 16:20 .
**allude** 55:18 .
**almost** 31:16, 87:12, 98:11 .
**alone** 14:1 .
**already** 22:3, 23:25, 48:11, 50:8,

58:25, 59:7, 83:13, 83:20,
    85:1 .
**alternate** 49:10 .
**Alternatively** 42:1 .
**Although** 3:18, 5:16, 42:10 .
**ambiguity** 59:12, 59:18,
    110:16 .
**American** 23:21, 25:5 .
**among** 3:22, 20:12, 73:13, 85:7,
    89:12, 94:11, 98:7 .
**amongst** 65:4 .
**amount** 13:12, 13:18, 13:22,
    13:24, 14:2 .
**and/or** 33:17 .
**annoying** 58:18 .
**answer** 4:10, 4:18, 6:24, 11:20,
    13:20, 41:18, 47:25, 54:19,
    54:23, 56:4, 59:23, 66:12,
    67:8, 70:7, 81:13, 82:12,
    82:14, 82:16, 83:21, 98:20,
    102:8, 109:6, 111:4 .
**answered** 10:19, 84:22 .
**answers** 10:1, 39:6, 83:4, 91:10,
    92:3, 97:23, 98:21 .
**anticipated** 108:6 .
**apologize** 3:21, 79:13,
    79:25 .
**apparent** 31:22 .
**Apparently** 16:1, 17:5, 41:4,
    109:19 .
**Appeals** 52:3, 52:15 .
**appear** 10:1, 23:8 .
**appearance** 10:23, 25:11 .
**appears** 4:5, 13:20, 106:9 .
**appellate** 5:25 .
**appendix** 9:16 .
**apply** 114:14 .
**appreciate** 70:11 .
**appropriate** 104:24, 110:8,
    112:14 .
**appropriately** 111:9 .
**Approximately** 15:9, 15:22,
    19:23, 21:9, 37:1, 43:7 .
**area** 22:10, 25:20, 26:13, 33:20,
    41:17, 45:17, 114:2 .
**argue** 105:25 .
**Argument** 112:21, 113:7,
    113:8 .
**Army** 1:11, 1:45, 3:17, 11:9,
    11:12, 11:19, 11:24 .

around 51:3, 76:2 .
arrive 102:12, 102:15,
    102:17 .
arrived 17:11, 32:2, 33:24,
    95:16, 102:21, 110:5, 111:9,
    111:10 .
articles 108:16 .
ascertain 33:16 .
aside 110:24 .
asks 34:12 .
assemble 114:11 .
assembled 10:22, 40:10,
    64:19 .
assigned 27:19 .
assistant 7:2 .
Associates 1:30 .
association 70:2 .
assume 36:7, 68:17 .
assumed 68:5 .
ate 50:13, 78:1, 88:17,
    93:10 .
Attached 10:11 .
attaching 8:23 .
attempt 33:15 .
attendance 108:11, 108:12 .
attention 73:10, 107:18 .
Attorney 1:39 .
August 27:21 .
automatic 111:16 .
available 104:7 .
Avoid 33:14, 108:18 .
avoiding 34:7 .
award 13:13, 13:19, 13:22 .
aware 32:21, 75:3, 107:16 .
away 36:23, 78:2, 95:7 .
    .
< B > .
bags 67:25 .
bailiff 16:18, 27:20, 32:20,
    77:24, 81:11 .
bailiffs 32:20 .
baker 14:19 .
Baltimore 1:17, 1:41, 114:1 .
bare 33:16 .
Based 3:23, 10:17, 14:2, 40:3,
    42:13, 84:16, 111:21 .
bases 104:14 .
basic 5:22 .
basis 5:8, 15:24, 63:4,
    109:20 .

bathroom 68:6, 89:3, 99:13 .
Bear 47:10, 90:3, 96:23, 101:14,
    103:6 .
bears 13:23 .
began 43:7, 62:23 .
begin 54:22, 86:25, 97:21 .
beginning 108:12 .
behalf 10:18, 10:25 .
belief 40:4, 54:22, 55:21 .
believe 11:13, 16:7, 20:12,
    22:23, 23:20, 25:7, 37:7,
    37:10, 37:12, 48:13, 49:16,
    60:2, 69:9, 77:14, 77:23,
    78:18, 78:19, 88:9, 106:13,
    110:14 .
believed 15:24 .
believes 11:9 .
below 10:1, 13:20 .
Bench 8:9, 39:1, 39:14, 47:12,
    48:3, 58:23, 59:20, 61:15,
    62:4, 69:17, 69:22, 72:18,
    73:9, 79:1, 79:7, 84:5, 85:2,
    86:6, 86:10, 90:4, 90:13,
    94:22, 95:6, 96:24, 97:3,
    101:17, 102:2, 103:7,
    103:11 .
beside 8:1 .
best 32:16, 59:23, 66:13,
    83:22 .
Beyond 58:25, 94:16,
    94:17 .
bit 19:20, 43:3, 59:17,
    98:18 .
blurt 62:8, 63:4 .
boil 61:2 .
bottom 10:24 .
box 35:3, 42:17, 73:19, 74:13,
    97:18 .
breach 63:22, 63:23 .
break 22:20, 37:10 .
breaking 72:25 .
Bredar 11:4, 14:4 .
Brief 9:10, 22:20, 96:13, 96:14,
    104:15, 104:22, 112:12 .
briefly 53:1 .
briefs 104:3, 104:10, 112:21,
    113:2, 113:5 .
Bring 33:13, 34:3, 40:20, 40:22,
    42:16, 43:23, 53:1, 53:4,
    53:6, 54:7, 64:24, 65:6,

65:18, 66:5, 74:2, 79:18,
    90:24, 97:11, 106:1, 107:11,
    113:13 .
brings 41:10 .
brought 48:7, 48:9, 50:7, 50:22,
    50:23, 81:9, 81:10, 99:11,
    102:22 .
build 25:7 .
building 43:13, 44:11, 64:23,
    109:9 .
burden 13:24 .
business 114:7 .
buying 110:25 .
    .
< C > .
cafe 43:19 .
cafeteria 44:6, 45:12 .
calendar 2:13, 7:1, 7:3, 7:8, 7:9,
    7:11, 8:23, 8:24, 9:17, 9:24,
    10:12, 12:8 .
call 7:22, 13:4, 14:24, 17:25,
    51:22, 73:17, 89:17 .
called 4:25 .
calling 9:17, 20:24, 23:9,
    23:15 .
calls 26:25, 45:3 .
capitals 4:22, 4:23 .
capped 13:13, 13:18 .
care 33:20, 52:5, 69:3,
    114:7 .
careful 7:19, 70:11 .
carefully 70:15 .
caretaking 4:3 .
CARLSON 1:45, 3:17, 4:22,
    4:24, 11:12 .
case-related 89:12 .
cases 111:12 .
catch-up 63:21 .
category 13:9 .
Catherine 106:24 .
cause 63:15 .
causes 60:1 .
Central 8:3, 8:4, 10:5 .
certain 10:20, 16:2, 40:25, 61:8,
    61:11, 82:7, 82:9, 85:21,
    97:23, 100:12, 107:16 .
certainly 17:2, 87:12,
    98:11 .
certified 104:6 .

**certify** 115:4 .
**chain** 15:4 .
**chair** 20:14 .
**chambers** 15:24, 16:5, 18:9, 18:12, 40:7, 105:6 .
**change** 108:8, 111:24 .
**changed** 11:15, 110:22 .
**channel** 38:21, 61:14, 86:5 .
**characterize** 89:21, 101:3 .
**charges** 14:3 .
**Charles** 1:40, 8:25 .
**chat** 65:23 .
**checking** 73:19 .
**Chief** 11:5, 14:4 .
**chose** 41:18 .
**CHRISTINE** 1:10 .
**cigarette** 28:23 .
**circled** 60:7, 62:11, 111:3 .
**Circuit** 52:3, 52:4, 52:10, 111:17 .
**circumspect** 92:4 .
**circumstance** 26:6, 52:6 .
**circumstances** 52:17, 108:7 .
**cite** 113:18 .
**cited** 113:18 .
**CIVIL** 1:9 .
**Civilian** 3:17, 11:10, 11:19 .
**clarify** 2:8, 9:21, 10:24, 59:15 .
**clarity** 66:12 .
**clear** 15:10, 17:19, 20:15, 20:19, 21:17, 32:4, 45:18, 50:5, 50:18, 61:23, 61:25, 64:2, 65:3, 87:1, 108:10, 109:9, 112:24 .
**clearly** 62:8 .
**client** 11:8 .
**cliff** 76:10, 92:1, 92:2 .
**Close** 26:20, 27:7, 39:10, 88:7 .
**closed** 2:20, 16:24 .
**closing** 65:22 .
**closure** 105:17 .
**cloud** 41:18 .
**cold** 79:22 .
**colleagues** 40:21 .
**collective** 10:8, 10:13 .
**colloquy** 62:24 .
**comes** 105:7, 113:8, 113:17 .
**comfortable** 35:10, 42:23, 54:14,

66:9 .
**coming** 20:2, 20:3, 20:4, 107:19 .
**command** 15:5 .
**common** 11:13, 21:24 .
**communicate** 11:2, 30:22, 44:14, 45:8, 109:12 .
**communicated** 102:4 .
**Communication** 2:6, 7:16, 7:20, 8:15, 8:16, 8:17, 8:20, 9:4, 9:15, 9:19, 10:11, 10:17, 13:9, 13:16, 15:18, 17:8, 31:2, 38:6, 84:16, 95:3, 101:25, 111:18, 111:19, 112:16 .
**communications** 10:20, 10:24, 12:12, 102:5, 110:18, 110:24, 111:13, 111:23 .
**competently** 65:18 .
**complete** 49:13, 68:15, 73:3, 81:13, 81:15, 81:16, 81:20, 81:25, 83:21, 83:24, 93:15, 93:17, 100:2, 100:5, 100:11, 114:6 .
**completed** 23:24, 38:13, 40:22, 42:7, 68:22, 69:24, 72:5, 72:24, 73:11, 78:4, 82:4, 84:1, 89:9, 89:11, 96:16, 106:20 .
**Completely** 17:18, 32:5, 55:10, 62:9, 66:1, 90:18, 91:18 .
**completing** 73:18 .
**completion** 70:3, 72:3 .
**compliant** 111:10 .
**computation** 15:19 .
**computer** 1:49 .
**concern** 35:16, 59:7, 63:6 .
**concerned** 47:25 .
**concerns** 45:23 .
**conclude** 39:10 .
**concluded** 115:1 .
**concluded.** 39:14, 48:3, 59:20, 62:4, 69:22, 73:9, 79:7, 85:2, 86:10, 90:13, 95:6, 97:3, 102:2, 103:11 .
**conclusion** 31:19, 31:24, 31:25, 52:19, 70:24 .
**conclusions** 100:23 .
**conclusive** 41:22, 63:20 .
**conclusively** 32:10 .

**condition** 105:11 .
**conduct** 34:5, 52:11, 52:16, 108:21 .
**conducted** 33:16, 52:24 .
**conducting** 32:19 .
**conference** 39:1, 39:14, 47:12, 48:3, 58:23, 59:20, 61:15, 62:4, 69:17, 69:22, 72:18, 73:9, 79:1, 79:7, 84:5, 85:2, 86:6, 86:10, 90:4, 90:13, 94:22, 95:6, 96:24, 97:3, 101:17, 102:2, 103:7, 103:11 .
**confident** 78:9, 78:13 .
**confirm** 16:3 .
**confirmation** 94:11, 94:14, 94:16, 94:17, 101:4, 101:6, 101:9, 101:10 .
**confirmed** 111:22, 112:1 .
**conflict** 63:18 .
**confusion** 4:1 .
**consequence** 6:3 .
**consider** 6:8 .
**consideration** 46:8, 66:20 .
**considered** 109:21 .
**considering** 104:5 .
**consistency** 110:17 .
**consistent** 59:9, 106:10 .
**constructed** 62:12 .
**consult** 108:23 .
**consultation** 15:15, 15:19 .
**consume** 43:20, 44:24, 77:1 .
**consumed** 43:25, 68:23 .
**contact** 108:18 .
**contained** 16:2, 18:17 .
**containing** 40:15 .
**contains** 41:4, 106:14 .
**contamination** 52:20 .
**content** 10:18 .
**contents** 16:8, 16:10 .
**context** 3:19, 4:1, 4:24, 5:3, 5:12, 11:19 .
**continue** 15:13, 25:17, 38:18, 46:13, 59:16, 64:5, 64:23, 65:23, 71:8, 93:10, 105:2, 107:17 .
**continued** 2:2 .
**control** 12:21 .
**convened** 32:7, 36:12, 43:11 .

convenient 17:16 .
conversation 33:7, 35:20, 44:23, 46:1, 58:20, 66:16, 66:17, 75:16, 86:24, 91:9, 98:1 .
conversations 74:3, 75:22, 98:4, 98:7 .
copies 12:11 .
copy 12:15 .
correctly 85:19 .
Corry 2:11, 9:23, 10:9 .
cost 44:19 .
Counsel 2:5, 6:16, 7:8, 8:10, 8:15, 13:14, 14:1, 14:5, 15:15, 31:12, 34:5, 38:21, 41:9, 104:7, 104:10, 105:24, 106:2, 109:18, 109:21, 110:1 .
Counterintelligence 11:16 .
couple 91:12 .
course 2:20, 17:14, 32:6, 33:2, 33:4, 46:16, 59:24, 102:3, 104:21, 109:6, 110:10, 114:14 .
Courthouse 27:16, 43:13 .
courtroom 35:5, 41:8, 48:23, 53:7, 54:10, 62:7, 65:20, 66:6, 74:8, 79:19, 86:19, 90:25, 97:12, 103:24 .
courtrooms 17:3 .
courts 5:25, 6:4, 33:20, 52:4 .
covered 61:18, 73:7 .
COVID-19 19:12, 27:8 .
coworker 29:24 .
crack 59:19 .
create 59:17 .
credibility 64:15 .
CRR 115:4 .
crux 111:12, 111:16 .
crystal 45:18, 87:1, 108:10 .
CSO 17:25, 18:10, 19:4, 19:7, 19:16, 20:10, 20:14, 20:17, 22:2, 27:16, 27:17, 31:20, 33:1, 33:5, 50:10, 116:5, 116:11 .
CSS 2:9, 2:10, 4:12, 4:13, 4:14, 4:19, 8:1, 9:22, 10:5 .
current 104:9 .
CUSSON 1:37, 3:3, 7:11, 7:13, 12:6 .

.
< D > .
DAC 2:9, 2:10, 3:16, 3:20, 3:23, 4:5, 4:7, 9:22, 10:4, 11:9, 12:1 .
damages 13:12, 13:18, 13:22, 13:24, 14:2, 15:19 .
data 64:4 .
date 106:21 .
Dated 2:19, 40:23, 115:12 .
day 37:14, 77:13, 104:2, 107:16, 115:12 .
days 43:7, 107:19 .
DC 1:32 .
deactivates 30:25 .
debate 3:11 .
decide 67:20 .
decided 42:6, 67:18, 73:16, 109:22 .
deciding 52:1 .
decision 50:4, 51:17, 64:12, 68:3, 71:1, 89:20, 98:6, 110:21 .
Defendant 1:13, 1:35, 7:5, 12:5, 13:21, 110:7, 111:4 .
defendants 6:19 .
Defense 3:13, 3:15, 6:16, 10:3, 11:16 .
define 4:6, 10:4, 10:7 .
definition 7:25 .
deliberate 8:18, 15:10, 16:17, 17:15, 17:16, 33:25, 38:18, 63:25, 71:8, 93:11 .
deliberated 70:20 .
deliberating 5:23, 17:13, 27:20, 29:2, 31:14, 49:12 .
deliberation 71:18, 98:5 .
deliberations. 2:2 .
deliberative 33:15, 33:21, 34:8, 36:7 .
delicate 33:19, 62:22, 66:13, 75:17, 91:6 .
Deliver 12:9, 14:11, 102:8 .
delivered 6:2, 13:1, 14:14, 15:16, 15:21, 50:21, 76:23, 85:9 .
delivering 12:20 .
demand 13:14, 13:19 .
demonstrated 31:13 .
depart 37:23 .

departed 22:5, 23:6, 24:24, 25:23, 31:17, 37:20, 41:17, 46:9, 46:13, 46:21, 46:25, 50:12, 59:11, 71:4 .
Department 1:11, 1:45, 3:17, 11:9, 11:19 .
departure 49:17, 53:12, 78:11 .
deposition 2:12, 2:15, 5:14, 5:15, 5:16, 5:17, 5:18, 5:20, 6:16, 9:23, 9:25 .
depositions 6:7 .
deputy 15:6, 15:23, 16:11, 17:8, 23:10, 23:15, 26:17, 38:7, 40:6, 40:15, 67:22, 67:24, 72:13 .
describe 25:3 .
described 69:2, 98:21 .
describing 36:16, 78:10, 78:15 .
description 25:9, 25:10 .
desk 23:23 .
detailed 15:16 .
details 61:11 .
determine 14:2, 111:6 .
determined 41:25 .
detriment 6:4 .
development 108:2 .
device 38:24, 45:6, 69:13 .
devices 49:20 .
DIA 2:9, 3:12, 4:5, 9:22, 10:3, 11:17 .
dictionaries 108:24 .
difference 32:8 .
different 3:18, 40:8, 69:1, 69:2 .
direct 46:24, 104:25 .
directed 104:17, 107:24, 114:3 .
Directing 73:10, 106:25 .
direction 53:15 .
directions 114:11 .
directive 52:15 .
directives 52:9 .
directly 21:20, 23:18, 31:18, 37:4, 67:5, 76:5, 107:23 .
disagree 5:13, 31:12 .
disclose 98:22 .
discouraged 5:24 .
discouragement 6:1 .

**discovered** 68:7 .

**discuss** 53:2, 53:15, 53:19, 53:20, 55:3, 55:13, 65:6, 65:24, 66:1, 71:11, 79:9, 86:12, 87:1, 87:3, 88:18, 88:21, 90:15, 97:4, 99:24, 100:22, 100:24, 103:14, 103:18, 103:19, 108:13, 108:14, 108:15, 111:25 .

**discussed** 45:24, 53:17, 85:25, 102:25 .

**discussing** 38:1, 65:4, 79:9, 79:15, 87:14, 97:24, 103:15, 114:12 .

**discussions** 45:23, 53:17, 68:3, 68:8, 74:14, 75:22, 80:6, 84:20, 85:7, 85:14, 85:16, 101:4 .

**dismissed** 10:23 .

**dispute** 4:15 .

**District** 1:1, 1:2, 16:16, 16:22, 29:1, 43:14 .

**DIVISION** 1:3, 16:22 .

**do.** 112:18 .

**docket** 13:14 .

**docketed** 104:10, 113:4, 113:15 .

**docketing** 12:12, 12:15, 12:20 .

**document** 3:19, 4:6, 5:9, 5:21, 71:21 .

**documents** 4:25 .

**DOD** 4:25, 5:10 .

**doing** 6:8, 42:23, 54:14, 65:14, 66:9, 78:20, 94:18 .

**done** 57:21, 105:18, 112:20, 113:4 .

**door** 16:20, 16:21, 18:9, 20:19, 21:14, 21:15, 22:8, 22:14, 22:19, 23:2, 23:3, 23:16, 23:17, 29:4, 30:10, 30:19, 30:23, 31:2, 31:23, 32:1, 32:11, 68:1, 72:5, 99:13, 105:18, 109:11 .

**doors** 16:24, 16:25, 21:17 .

**doorway** 21:23, 22:10, 31:18, 32:25 .

**down** 14:5, 26:20, 34:9, 43:18, 43:21, 44:5, 50:8, 50:12, 51:4, 61:2 .

**downstairs** 68:2, 68:7, 88:9 .

**duly** 19:8, 27:4 .

**During** 10:10, 10:15, 36:12, 41:16, 49:19, 51:6, 63:24, 68:4, 68:8, 69:13, 71:13, 95:7, 99:19, 102:3, 108:13 .

**duties** 28:18 .

**duty** 27:23, 28:8, 32:21 .

< E > .

**E-a-s-o-n** 20:10 .

**earlier** 15:14, 19:20, 43:11, 53:13, 95:10, 114:12 .

**early** 43:5 .

**easier** 43:3, 54:16, 74:19 .

**EASON** 20:10, 20:14, 20:17, 20:22, 22:2, 22:5, 26:23, 27:1, 27:4, 27:14, 27:15, 28:24, 31:20, 116:11 .

**eat** 77:13, 99:15 .

**eating** 21:6, 71:9, 78:16, 88:22, 93:7, 99:13, 99:20 .

**edge** 76:9, 91:25 .

**effect** 62:11, 91:12 .

**eight** 68:4, 71:6, 88:13 .

**either** 6:8, 30:19, 41:9, 50:3, 72:1 .

**elaborate** 61:10 .

**electronic** 45:6, 49:20, 69:13 .

**elements** 2:7 .

**elevator** 45:12 .

**elicit** 47:25 .

**elicited** 52:13, 64:9 .

**elimination** 31:22, 32:16 .

**elsewhere** 43:13 .

**email** 45:5 .

**emphasizing** 6:3 .

**employed** 27:15 .

**encounter** 45:11 .

**encyclopedias** 108:24 .

**end** 107:15 .

**engage** 44:16 .

**engaged** 37:16, 37:17, 37:19, 37:20, 38:1, 46:9, 98:3 .

**ensure** 33:23, 107:1 .

**entered** 24:15, 35:5, 42:19, 53:7, 54:9, 65:20, 66:6, 74:17, 79:19, 86:19, 90:25, 97:12,

107:13, 113:21 .

**entering** 16:13, 19:2 .

**enters** 21:20, 21:21, 21:22 .

**entertain** 49:6, 110:1 .

**entire** 5:21, 10:19, 11:1, 75:6 .

**entirely** 34:6, 111:10 .

**entirety** 12:3 .

**entitled** 46:4 .

**entrance** 105:9 .

**envelope** 16:1, 16:7, 16:9, 16:10, 18:10, 18:11, 18:12, 18:17, 18:23, 18:24, 23:22, 40:5, 40:12, 40:15, 40:24, 41:4, 105:3, 105:4, 105:6, 105:8, 105:12, 105:13, 105:15, 105:16, 105:17, 106:5, 106:8, 106:13, 106:17, 106:18 .

**equally** 104:21 .

**equals** 45:3 .

**ERIC** 27:4, 27:14, 116:11 .

**especially** 67:2 .

**Esquire** 1:29, 1:37, 1:38, 1:45 .

**essential** 109:10 .

**establish** 100:11 .

**establishes** 32:10 .

**estimate** 24:9 .

**evaluated** 91:16 .

**Evelyn** 1:37 .

**evening** 10:23, 15:11, 113:23 .

**event** 17:7, 49:24 .

**events** 15:8, 33:9, 77:22, 78:3, 78:10, 78:15, 78:18, 94:2, 102:18, 104:2, 108:4 .

**eventually** 33:6, 77:17 .

**everybody** 48:10, 60:4, 84:24 .

**Everyone** 38:22, 50:13, 57:11, 57:21, 58:10, 59:10, 60:12, 102:24 .

**Everything** 12:20, 57:21, 66:22 .

**evidence** 2:20, 5:17, 5:18, 6:3, 6:4, 6:15, 6:16, 10:10, 10:15, 13:25, 14:1, 52:13, 64:4, 80:6, 91:16 .

**evidentiary** 52:11 .

**evidently** 40:16 .

**exact** 12:11, 12:15 .
**Exactly** 17:19, 19:4, 22:1, 32:1,
    52:14, 54:23, 54:24,
    91:8 .
**Examination** 19:10, 24:7, 27:6,
    29:19, 30:16, 34:6, 39:6,
    116:7, 116:9, 116:13, 116:15,
    116:17 .
**examinations** 52:24 .
**examine** 34:5 .
**examined** 42:7 .
**except** 16:9, 34:8 .
**excess** 13:13, 13:19 .
**Exchange** 5:4, 5:6, 5:7 .
**excuse** 90:14, 104:25,
    107:6 .
**excused** 15:12, 31:11, 63:15,
    107:12, 109:1, 113:23,
    114:15 .
**executed** 52:6, 73:4 .
**exercise** 112:11 .
**exhaustive** 52:11 .
**Exhibit** 4:2, 7:14, 7:17, 7:18,
    7:23, 8:21, 8:24, 9:16, 9:18,
    12:16, 13:10, 14:18, 14:19,
    113:14, 113:15 .
**Exhibits** 7:22, 12:9, 13:2 .
**exists** 5:21 .
**exit** 30:5 .
**exited** 41:8, 48:23, 54:9, 62:7,
    66:6, 74:8, 79:19, 86:19,
    90:25, 97:12, 103:24 .
**expect** 34:4, 34:5, 114:6 .
**expected** 108:3 .
**experience** 17:2, 30:17,
    45:15 .
**experiences** 108:5 .
**explained** 20:21, 21:4 .
**explanation** 24:13, 25:25, 26:4,
    26:7 .
**exposed** 108:16 .
**exposing** 114:12 .
**express** 34:13 .
**expressed** 75:22 .
**extent** 7:21, 10:20, 36:4, 55:17,
    67:3, 76:3, 98:13, 102:18,
    104:16, 111:17 .
**external** 108:23 .
**extreme** 33:20 .
**extremely** 33:19, 35:21,

87:14 .
.
**< F >** .
**F.3d** 52:2 .
**face** 27:2 .
**faced** 63:21 .
**faces** 34:2 .
**facility** 4:3, 4:4 .
**fact** 27:23, 29:21, 33:16, 38:7,
    40:8, 40:12, 42:11, 53:15,
    63:7, 63:23, 64:14, 80:12,
    88:20, 106:19 .
**facts** 14:3, 108:21, 114:13 .
**fail** 65:5 .
**fair** 43:8, 75:9, 101:3 .
**familiar** 28:24 .
**family** 108:15 .
**Far** 31:13, 47:24, 52:14, 63:6,
    64:8, 64:19, 99:10 .
**fashion** 5:24 .
**favor** 6:18 .
**federal** 27:16 .
**fellow** 53:20, 53:21, 53:22,
    65:23, 79:10, 86:12, 90:16,
    97:6, 103:14, 103:19,
    108:14 .
**felt** 18:12, 66:21, 87:8 .
**Few** 35:16, 40:20, 50:12, 54:18,
    55:3, 66:14, 72:17, 80:1,
    86:25, 91:3, 96:11, 96:20,
    96:21, 98:2, 114:3 .
**File** 5:4, 5:6, 104:22, 110:7,
    113:2, 113:5 .
**fill** 28:22, 81:16, 85:24, 100:3,
    100:6, 100:16 .
**filled** 86:2, 93:20 .
**filling** 69:4 .
**final** 112:15 .
**find** 10:12, 13:21, 13:23, 29:9,
    29:10, 32:18, 32:19, 44:19,
    49:21 .
**fine** 3:10 .
**finished** 9:13, 44:5, 47:24,
    107:20 .
**firm** 73:5 .
**First** 5:15, 7:9, 8:19, 19:1, 20:22,
    24:14, 35:17, 43:19, 44:6,
    52:25, 66:14, 74:22, 81:20,
    89:3, 91:5, 91:14, 99:12,
    100:11, 104:12, 113:3 .

**fits** 25:10 .
**five** 94:3 .
**flawed** 49:9, 49:25 .
**flaws** 50:2 .
**flight** 112:17, 114:2 .
**Floor** 1:40, 37:11, 43:19, 44:6,
    77:11 .
**fly** 65:15 .
**focus** 34:6, 52:5 .
**follow** 103:13, 106:5, 108:4 .
**followed** 32:24 .
**following** 2:8, 9:20, 9:21, 13:17,
    52:15 .
**follows** 9:19, 13:15, 112:17 .
**food** 48:9, 50:24, 51:4 .
**foregoing** 115:6 .
**foreman** 22:23, 23:20, 56:12,
    56:13, 57:5, 58:2, 58:5, 60:2,
    60:16, 61:3, 61:5, 68:15,
    68:22, 68:23, 69:3, 72:6,
    77:24, 78:4, 83:24, 86:2 .
**foremost** 104:12 .
**formalized** 104:13 .
**formally** 42:8, 42:10,
    104:14 .
**forms** 67:4 .
**forth** 41:21, 44:20, 55:12, 66:22,
    75:23, 80:7, 80:11, 87:14,
    90:18, 91:25, 100:23,
    109:21 .
**forum** 75:24 .
**forward** 27:1 .
**Four** 9:24, 10:13 .
**Fourth** 37:11, 52:3, 52:10,
    77:11 .
**frame** 36:15, 36:16, 49:19 .
**free** 104:21 .
**freely** 30:5, 30:8 .
**Friday** 104:11, 105:1, 105:25,
    107:6, 107:25, 108:9, 108:12,
    109:1, 112:18, 114:2,
    114:4 .
**friends** 108:15 .
**Front** 74:18, 86:20, 100:20,
    104:12, 106:18 .
**full** 113:18 .
**fully** 19:11, 27:7, 40:10,
    112:5 .
**function** 45:5 .
**fundamental** 17:10, 32:6 .

. 
< G >.
G. 115:4, 115:19 .
gave 25:25, 79:14, 92:3, 106:5, 106:11, 114:12 .
general 13:9 .
generally 68:17 .
gentleman 21:10, 22:19, 23:24 .
gentlemen 9:20, 13:16, 53:8, 54:6, 107:15, 113:22 .
Gerald 52:1 .
give 26:3, 32:17, 59:23, 97:23, 109:9 .
Given 8:22, 18:11, 24:13, 40:2, 52:10, 63:23, 98:5, 112:4 .
Government 24:7, 29:19, 49:7, 61:21, 63:1, 63:2, 104:13 .
granted 110:15 .
gray 25:6 .
great 5:17, 66:12 .
greater 63:6 .
greetings 44:20 .
ground 66:17, 75:16, 91:8 .
grounds 110:25, 111:20 .
group 80:5 .
guarantee 111:16 .
guardrails 87:2, 98:21 .
guess 44:3, 83:17, 83:22 .
guided 104:17 .
Gurevich 14:14, 15:6, 17:20, 34:25, 50:20, 65:7, 105:8, 105:9, 106:4, 109:10 .
guy 48:9 .
.
< H >.
hair 25:6 .
half 21:5 .
hallway 22:21, 26:11 .
hallways 45:12 .
Hand 16:7, 19:7, 27:3, 33:22, 40:5, 40:16, 40:24, 50:10, 105:8, 105:14, 105:18 .
handed 18:10, 18:24, 40:14, 50:17, 106:4 .
handing 106:23 .
handled 68:9 .

handling 22:3 .
Hands 23:22 .
hanging 109:18 .
happen 28:18, 33:3, 43:14, 62:15, 62:20, 62:21, 63:16, 92:3, 100:8, 102:9, 107:6, 109:24 .
happened 17:19, 19:4, 60:10, 62:10, 62:12, 63:1, 68:19, 77:21, 80:7, 82:21 .
hard 83:17 .
harm 9:7 .
Harris 1:5, 2:15, 5:15, 6:16, 9:25, 115:10 .
hear 30:8, 30:11, 30:12, 39:2, 47:10, 61:24, 69:12, 75:19, 78:23, 80:3, 80:8, 84:4, 84:12, 84:13, 87:6, 87:7, 90:6, 91:9, 98:6, 112:21 .
heard 14:3, 17:22, 41:9, 62:9, 75:11, 92:19, 112:5, 112:8 .
hearing 38:22 .
heart 52:9 .
held 9:1, 40:9, 103:25 .
Hello 74:20, 79:21 .
helps 60:1 .
hereby 115:4 .
herself 105:4 .
hesitant 11:18 .
hesitate 70:13 .
hiatus 68:8 .
highlight 6:4 .
hold 40:5 .
holding 112:3 .
honestly 62:12 .
HONORABLE 1:23 .
hope 54:19, 66:11 .
hour 19:20, 21:5, 28:6, 53:18, 53:24, 88:7 .
husher 58:19 .
.
.
< I >.
identification 9:6, 25:16 .
identified 10:22, 25:9 .
identify 22:23, 24:12, 24:17, 24:23 .
illuminated 52:14 .
imagine 59:6 .

immediately 22:10, 23:9, 24:11, 31:16, 33:1, 70:3, 113:23 .
implying 92:5 .
important 35:21, 54:23, 75:17, 80:13, 87:14, 90:15, 92:1, 97:4, 103:13 .
impounded 106:20, 106:25 .
impressed 63:25 .
in. 48:7, 102:22, 105:11, 107:11, 113:13 .
inadvertently 111:15 .
inception 37:13 .
incident 23:19 .
inclination 112:4 .
Including 16:22, 36:1, 53:19, 69:5, 75:21, 79:10, 95:9 .
inconsistency 7:21 .
inconsistent 108:2 .
incorrect 68:20, 70:17 .
increase 13:12, 13:18 .
incurred 13:23 .
independent 6:21, 108:20, 114:13 .
INDEX 116:1 .
indicate 17:14, 62:10, 76:5 .
indicated 9:15, 18:23, 69:24, 84:15, 89:8, 113:25 .
indicates 33:7 .
indicating 63:7 .
indication 2:17, 25:19, 33:10, 38:5, 42:13, 51:19 .
indirectly 41:21, 67:5, 76:5 .
individual 11:2, 24:9, 53:17 .
individually 53:25 .
individuals 65:11, 80:5 .
indulgence 7:6 .
inferentially 31:20 .
infers 10:18 .
infirm 52:21 .
influence 52:7, 52:20, 110:6, 110:20 .
influenced 42:14, 64:12 .
inform 18:9 .
Information 5:11, 11:16, 32:4, 70:8 .
informed 18:2, 36:11 .
initial 60:17 .
initiative 72:2 .

**innocuous** 17:18 .
**inquire** 19:1 .
**inquiries** 40:3 .
**inquiry** 32:18, 39:10,
  103:16 .
**inside** 40:13, 51:12, 51:15 .
**instance** 98:1 .
**Instead** 6:22, 16:5, 104:3,
  114:4 .
**instruct** 34:12, 55:7, 79:8, 86:11,
  97:6, 105:10 .
**instructed** 13:21, 13:25, 53:22,
  62:23 .
**instruction** 65:22, 79:11, 79:14,
  86:15, 90:19, 103:14,
  114:5 .
**instructions** 17:14, 41:1, 54:1,
  54:4, 63:24, 68:14, 105:9,
  105:19, 106:5, 106:10 .
**Intelligence** 3:13, 3:15,
  10:3 .
**intends** 52:10 .
**interaction** 51:5 .
**Interestingly** 2:16 .
**interior** 23:16 .
**internet** 7:2, 108:21 .
**interpretation** 50:15 .
**interrupt** 21:3 .
**interviewed** 53:24 .
**interviewing** 52:18 .
**interviews** 52:22 .
**intimating** 64:20 .
**intrude** 33:22, 36:1, 66:23 .
**intrudes** 75:20 .
**intruding** 33:14 .
**intrusion** 34:8 .
**invade** 62:24 .
**investigation** 108:20,
  114:13 .
**involve** 107:23 .
**involved** 107:22 .
**involves** 111:13 .
**irrelevant** 88:18 .
**irrevocable** 112:6 .
**issue** 18:1, 32:6, 51:15, 110:7,
  110:11, 112:13, 112:15 .
**issues** 45:24, 66:20, 90:7, 101:7,
  104:18, 108:17, 108:22,
  108:25 .
**it.** 59:19 .

**itself** 4:6, 5:10, 6:23, 18:17, 34:8,
  49:24, 52:16, 63:23, 64:14,
  68:22, 72:24, 109:25,
  111:15 .

.

< J >.
**James** 11:4, 14:4, 19:8,
  19:16 .
**JAMES K. BREDAR** 1:23 .
**Jimmy** 28:13 .
**Johnson** 52:2 .
**joining** 54:17, 86:23, 91:3,
  97:17 .
**jointly** 2:22 .
**Judge** 36:2, 46:4, 75:21,
  107:4 .
**Judge.** 11:5, 14:4 .
**judgment** 52:13 .
**judicial** 7:2 .
**jump** 87:2 .
**JURY TRIAL** 1:22 .

.

< K >.
**K.** 11:4, 14:4 .
**Keep** 17:15, 20:25 .
**keeping** 27:11 .
**kept** 17:17, 111:11 .
**key** 29:9, 29:10 .
**kind** 44:20, 44:23, 89:5,
  108:18 .
**kinds** 104:18 .
**knock** 23:16, 30:11, 30:12,
  30:22, 105:18, 109:11 .
**knocked** 18:10, 22:19, 72:5 .
**knocking** 23:17 .
**knowing** 17:6 .
**knowledge** 29:23, 30:20, 36:15,
  54:21, 55:21, 56:13,
  102:20 .
**knows** 11:9, 16:9, 59:4 .

.

.

< L >.
**L.** 1:37 .
**Ladies** 9:20, 13:16, 107:15,
  113:22 .
**largely** 52:14 .
**larger** 105:3 .

**Last** 8:17, 10:23, 15:9, 15:11,
  19:17, 43:5, 53:18, 53:24,
  59:19, 74:23, 94:3, 96:10,
  107:17 .
**later** 21:9, 102:8 .
**law** 12:14, 14:3, 33:20, 104:5,
  104:17, 105:4, 108:20 .
**lawful** 33:24 .
**lawyer** 11:24 .
**lawyers** 47:9, 69:12, 78:23, 84:4,
  94:21, 101:15 .
**leads** 23:16 .
**leaning** 34:14 .
**learn** 17:23 .
**least** 112:4 .
**leave** 8:9, 16:15, 22:21, 23:3,
  36:18, 44:11, 57:6, 58:12,
  61:3, 61:4, 67:15, 76:13,
  80:23, 87:21, 92:12, 99:3,
  114:1 .
**leaving** 36:16, 42:15, 51:15,
  64:11, 68:3, 78:16,
  103:17 .
**legal** 107:22 .
**Lescht** 1:30 .
**Less** 19:22, 96:14, 96:15 .
**letter** 82:13, 82:14 .
**letting** 18:1 .
**liable** 13:21 .
**light** 31:5, 39:5, 104:1,
  104:4 .
**limits** 45:24, 55:10, 66:1, 87:9,
  90:18, 91:19 .
**line** 4:4, 4:15, 4:19, 58:18,
  111:4 .
**lines** 46:8, 87:9, 94:18 .
**listen** 54:23, 70:15 .
**little** 19:20, 43:3, 43:19, 44:6,
  54:16, 59:17, 61:1,
  98:18 .
**loathe** 6:4 .
**long** 4:4, 8:18, 17:2, 36:22,
  36:25, 44:1, 57:15, 57:17,
  77:15, 81:8, 81:11, 88:6,
  93:1, 96:10, 96:12,
  99:16 .
**look** 51:3 .
**looking** 21:15, 78:20 .
**looks** 4:13, 111:17 .
**loose** 40:24 .

**loud** 18:11 .
**lunches** 50:25 .
**lunchtime** 50:6, 61:9 .
.
.
**< M >** .
**Ma'am** 9:2, 24:11, 25:21, 25:24,
    26:3, 26:11, 26:16, 30:7,
    30:14, 55:19, 58:22, 60:25,
    62:6, 64:7, 65:21, 66:4,
    72:15, 74:7, 86:17, 90:21,
    94:21, 97:11, 105:23 .
**main** 49:11 .
**major** 32:6 .
**majority** 5:18 .
**male** 25:5 .
**man** 23:21 .
**manila** 105:4, 105:8, 105:15,
    105:16, 106:5 .
**MARK** 3:24, 4:20, 7:14, 8:20,
    8:24, 13:14, 14:17, 20:23,
    26:24 .
**marked** 8:22, 9:16, 13:10 .
**Marshal** 15:3 .
**Maryland** 1:2, 1:17, 16:17,
    16:22, 43:14 .
**Mask** 19:14, 27:10, 35:10,
    42:24, 54:15, 60:6, 60:23,
    60:24, 66:10 .
**materials** 16:2 .
**matter** 4:24, 33:8, 35:16, 51:21,
    52:12, 55:2, 59:6, 64:22,
    72:3, 97:6, 103:15, 105:2,
    110:4, 112:14, 115:10 .
**matters** 39:4, 39:9, 107:16,
    107:17, 107:22 .
**Mcgriff** 2:12, 5:14, 5:20, 6:14,
    9:23, 10:9 .
**MD** 1:41 .
**mean** 68:11, 98:4 .
**means** 4:7, 12:1 .
**mechanical** 1:48 .
**media** 114:13 .
**member** 16:13, 49:10 .
**memory** 59:22, 59:25, 78:17,
    82:10, 102:20 .
**mention** 9:3, 55:13 .
**mere** 101:4 .
**merely** 73:17, 111:25 .
**message** 10:18, 10:25, 11:3,

    13:11, 29:23, 82:13 .
**messages** 95:8, 102:1 .
**mic** 27:7, 39:11, 47:17,
    64:25 .
**Michael** 1:45 .
**microphone** 73:1, 74:18,
    86:20 .
**middle** 30:9 .
**mind** 30:6, 35:9, 56:1 .
**mine** 31:5 .
**minute** 6:19, 23:19, 50:14,
    78:24, 81:20, 84:4, 90:3,
    96:14, 96:15, 101:14,
    103:6 .
**minutes** 15:9, 15:23, 19:24, 21:9,
    28:6, 35:16, 37:1, 44:4,
    49:15, 49:16, 49:17, 55:3,
    57:18, 63:9, 63:17, 74:23,
    77:16, 93:2, 94:3, 96:20,
    96:21, 98:2, 99:18, 102:22,
    102:23 .
**misinformed** 17:1 .
**missing** 24:18, 33:12, 33:18 .
**misstated** 64:18 .
**mistrial** 49:8, 49:25, 63:1, 63:3,
    104:13, 104:21, 110:11,
    110:12, 110:15, 110:25,
    111:16, 111:21, 112:13 .
**Mitchell** 115:4, 115:19 .
**Mm-hmm** 93:21, 94:10, 94:15,
    95:24, 96:9, 96:22 .
**mode** 63:21 .
**moment** 54:18, 58:17, 66:16,
    69:16, 76:1, 86:25, 87:5,
    91:7, 91:9, 106:6,
    109:23 .
**moments** 40:20, 50:13, 73:10,
    114:3 .
**money** 44:20 .
**monitoring** 27:20, 28:3,
    28:19 .
**mooted** 41:23 .
**morning** 2:4, 15:12, 27:24, 29:7,
    36:8, 36:15, 67:3, 95:10,
    102:3, 104:7, 104:11,
    114:2 .
**motion** 63:3, 104:13, 104:15,
    110:8, 110:10 .
**motions** 49:6 .
**mouth** 68:21, 68:25, 89:18 .

**move** 26:16, 49:7, 49:25, 63:1,
    104:20 .
**movement** 20:12 .
**moves** 112:14 .
**multiple** 18:13 .
**myself** 30:9, 34:6 .
.
.
**< N >** .
**nail** 34:8 .
**name** 11:15, 19:15, 19:17, 27:13,
    28:13, 105:17, 106:9,
    106:19 .
**NAPOLEON** 1:5 .
**National** 4:15, 8:4, 10:5 .
**nature** 84:20 .
**necessary** 44:24 .
**need** 3:11, 12:20, 17:19, 33:8,
    38:24, 40:23, 58:25, 63:25,
    64:4, 64:23, 66:14, 70:18,
    76:3, 104:14, 104:15, 107:23,
    109:12, 114:7 .
**Nekeisha** 1:29 .
**new** 114:5 .
**news** 108:16, 111:14 .
**next** 4:19, 26:16, 33:8, 45:17,
    55:3, 74:12, 104:4, 104:24,
    105:2, 109:25 .
**night** 8:17 .
**nine** 33:11, 43:7, 70:21, 70:23,
    71:17, 71:24, 94:5,
    94:11 .
**Nobody** 75:20 .
**noise** 58:19 .
**None** 75:23, 110:19, 110:21 .
**noneconomic** 13:22 .
**noon** 68:1, 105:1, 105:25,
    112:21, 113:2, 113:5,
    113:6 .
**normal** 3:20, 42:17 .
**NORTHERN** 1:3, 16:21 .
**Nos.** 52:25, 53:4, 53:7, 54:9 .
**note** 8:19, 13:8, 13:10, 13:14,
    14:17, 15:14, 45:13, 64:8,
    109:13, 109:15, 113:24,
    113:25 .
**note(s** 10:21 .
**notes** 10:16 .
**nothing** 35:21, 45:25, 55:1,
    111:3 .

noticed 28:18, 89:2, 89:4 .
notified 23:9, 33:5, 72:12 .
NSA 2:9, 2:10, 4:12, 4:13, 4:15,
    8:1, 8:5, 9:22, 10:5 .
nullity 110:13 .
Number 2:8, 2:11, 2:13, 2:15,
    11:4, 24:22, 32:22, 55:2,
    62:23, 63:24, 86:18, 87:12,
    106:19, 114:1 .
numbering 7:21 .
NW 1:31 .
.
.
< O >.
oath 17:21 .
object 34:18 .
objection 14:8, 14:10, 25:12,
    25:15, 34:11, 34:19,
    34:21 .
objects 6:8 .
observation 25:12 .
observe 16:15, 51:1 .
observed 16:12, 19:2,
    20:11 .
obvious 31:22 .
obviously 6:10, 64:17 .
occur 69:7, 77:22, 94:12,
    104:4 .
occurred 8:17, 15:9, 19:21,
    32:21, 35:22, 36:14, 52:14,
    59:12, 63:5, 63:22, 63:23,
    68:3, 68:8, 69:9, 75:13,
    75:19 .
occurring 17:4, 36:7, 74:24 .
odd 41:15, 49:21 .
Office 1:39, 28:22 .
Officer. 10:2 .
officers 15:4, 28:2, 42:13 .
Official 11:14, 11:18,
    115:20 .
officials 15:3 .
often 28:5, 46:16 .
Once 5:23, 7:14, 16:17, 28:21,
    47:25, 51:18, 57:9, 57:21,
    73:2, 77:19, 96:5, 101:7,
    105:18, 111:7 .
One 3:20, 7:2, 16:5, 16:25,
    17:13, 20:1, 21:20, 22:3,
    22:20, 32:6, 32:22, 33:12,
    33:17, 36:1, 36:13, 38:25,

    40:13, 44:25, 59:19, 72:23,
    82:18, 88:23, 95:12, 103:6,
    113:25 .
one-on-one 53:11 .
ones 75:17 .
open 2:23, 16:2 .
opened 16:5, 16:8, 17:1, 30:19,
    40:12 .
opening 32:24 .
opens 21:21, 21:22, 31:2 .
operating 16:16, 76:4 .
opinion 52:1 .
opponent 112:4 .
opportunity 112:5 .
opposed 32:11, 101:12 .
option 27:10, 109:21 .
order 29:25 .
ordered 48:9 .
ordinarily 32:23 .
ordinary 28:1, 35:2 .
organize 50:25 .
original 11:20 .
others 91:16 .
Otherwise 34:17, 37:16, 73:21,
    107:21 .
ought 91:17 .
outcome 91:18 .
outlined 34:7 .
outside 22:10, 22:20, 23:25,
    25:20, 28:23, 32:3, 38:22,
    44:13, 50:15, 52:7, 52:20,
    64:10, 110:6, 110:19 .
overall 7:15, 8:19 .
overarching 76:4, 91:11 .
overnight 15:12 .
own 72:2 .
.
.
< P >.
p.m. 15:1, 51:24, 106:22, 107:6,
    107:13, 107:25, 108:9,
    108:12, 109:1, 109:3, 113:21,
    114:6, 114:7, 114:9, 114:15,
    114:17, 114:24, 115:1 .
Page 91:8, 116:3 .
pages 5:17, 5:19, 6:15 .
paper 18:15, 47:3, 48:7,
    112:1 .
papers 18:13 .
paperwork 28:22 .

part 8:5, 8:16, 8:19, 20:12, 22:4,
    46:17, 46:18 .
participants 108:18,
    108:19 .
participated 53:11 .
participating 17:12, 43:5,
    108:23 .
particular 3:4, 26:15, 49:8,
    49:19, 111:17 .
particularly 109:22 .
parties 2:21, 3:22, 3:25, 6:6,
    15:20, 104:3, 112:12,
    113:5 .
party 6:8, 34:14, 41:9, 50:3,
    111:13 .
Pass 14:5, 31:19, 44:19 .
passed 29:23 .
Patricia 115:4, 115:19 .
Paul 29:13 .
Pause 98:20 .
Pause. 12:25, 14:13, 106:3,
    109:14, 113:16 .
PC 1:30 .
peered 40:13 .
peering 21:12, 22:16 .
pen 89:19 .
pending 110:10 .
people 66:21, 91:17, 91:18 .
perceived 91:17 .
percent 16:19, 48:15, 49:15 .
perception 25:11 .
Perfect 56:7 .
Perhaps 4:14, 6:3, 16:12, 17:1,
    17:18, 36:8, 38:18,
    51:12 .
period 27:24, 29:7, 41:16,
    64:11 .
permit 6:1, 34:4 .
permitted 36:1 .
person 23:20, 25:9, 29:8, 30:8,
    33:5, 33:6, 45:9, 49:16,
    51:12, 51:14, 74:3, 106:9,
    108:9 .
personally 24:21, 106:23 .
personnel 29:22 .
persons 108:22 .
picture 30:6 .
piece 33:4, 47:3 .
place 17:16, 17:20, 49:9, 105:15,
    106:25, 109:12 .

placing 4:19, 106:18 .
Plaintiff 1:7, 1:27, 3:6, 5:2, 5:12,
      6:10, 6:12, 6:18, 7:3, 7:4, 8:8,
      10:14, 11:7, 11:22, 11:23,
      12:3, 13:23, 34:11, 34:12,
      104:20, 104:22, 110:4,
      110:14, 112:23 .
plan 106:2, 108:3, 108:6 .
plans 14:20, 46:12 .
play 5:19 .
points 63:24, 64:3, 75:22,
      90:8 .
poll 111:5 .
polling 73:6 .
portal 5:10 .
portion 6:5 .
portions 6:5 .
pose 102:7 .
posed 95:9, 101:22 .
position 6:19, 6:20, 14:6, 22:7,
      104:16 .
positioned 30:9 .
positively 98:14 .
possession 16:6 .
possibility 2:24, 52:6 .
possible 5:19, 22:13, 30:7,
      62:22 .
possibly 61:19, 106:20 .
post 16:19, 19:19, 20:1, 20:3,
      20:4, 20:23, 27:19, 28:3,
      29:6, 30:3 .
practice 16:24, 28:1, 30:21 .
precision 66:12 .
prefer 27:11 .
prejudiced 50:3, 111:5 .
preliminarily 112:3 .
preparation 9:14 .
prepared 7:15, 15:15, 15:20,
      63:5, 105:24 .
preponderance 13:25 .
presence 26:9, 68:10,
      110:19 .
Present 1:45, 2:5, 15:3, 15:4,
      15:5, 17:12, 19:3, 20:7,
      33:11, 34:1, 34:9, 50:20,
      53:10, 57:25, 59:10, 70:4,
      71:15, 71:17, 71:24, 74:10,
      85:5, 85:9, 94:6, 99:20,
      99:22, 99:25, 103:3, 106:24,
      107:24 .

presented 17:10, 52:12, 108:22,
      108:25, 109:24 .
presently 74:14 .
presents 108:17 .
presiding 36:1, 89:25 .
Presumably 5:20, 70:3,
      75:21 .
Pretty 45:15, 61:23, 61:25 .
previously 9:15, 13:21, 40:4,
      53:11, 59:22, 85:3 .
prime 59:7 .
principle 91:12 .
Prior 30:2, 30:17, 31:16, 68:2,
      70:3 .
Private 38:21, 58:18, 58:19,
      61:13, 69:11, 78:23, 86:5,
      101:15 .
privately 47:10 .
privy 6:23 .
probably 11:14, 25:5, 32:16,
      44:16, 102:23 .
problem 5:22, 34:1 .
problems 104:18 .
procedure 16:16, 34:23,
      40:7 .
procedures 32:23, 52:5 .
proceed 52:22, 53:5, 104:2 .
Proceedings 1:21, 1:48, 105:1,
      108:1, 115:1, 115:8 .
process 31:22, 32:15, 33:15,
      33:21, 33:23, 34:8, 36:7,
      38:1, 43:7, 46:3, 46:4, 46:17,
      49:9, 49:24, 50:2, 52:11,
      52:21, 64:5, 64:15, 65:10,
      75:20, 91:7, 91:23, 94:1,
      103:17, 111:10 .
produced 1:49 .
productively 107:7, 114:18 .
prohibited 5:25 .
prompting 72:2 .
proof 6:5, 32:9, 33:4, 41:22 .
proper 14:2, 34:22 .
properly 30:18 .
propose 13:15, 33:13, 34:3,
      74:12 .
proposed 9:14, 12:2, 14:7 .
proven 13:23 .
provided 6:6, 12:15, 39:6,
      39:20 .
provides 21:23, 23:18 .

providing 5:22 .
proving 13:24 .
provisional 109:20 .
prudent 112:11 .
Pull 7:2, 27:7 .
pulled 8:11, 26:11, 105:13 .
purchase 44:17, 44:24 .
purely 89:18, 109:24 .
pursue 24:14 .
put 9:5, 42:11, 48:9, 50:8, 50:12,
      61:4, 63:11, 68:21, 68:25,
      81:14, 89:18 .
Putting 65:17 .
.
.
< Q > .
quandary 34:1 .
questioned 53:3, 65:25 .
quickly 65:17 .
quite 100:12 .
quizzed 97:7 .
quizzing 94:2 .
quote 17:23 .
.
.
< R > .
Raise 19:7, 26:9, 27:3, 39:5 .
raised 16:13, 29:22, 90:17 .
raises 41:18 .
reach 31:19, 33:25, 67:12 .
reaches 52:19 .
reaching 38:2 .
Read 6:2, 6:15, 6:16, 6:22, 14:5,
      82:15, 82:16, 83:9, 111:7,
      113:1 .
read-backs 5:23 .
reading 83:5 .
reads 9:19, 112:17 .
real 108:4 .
realized 26:6, 89:5, 99:14 .
really 65:3 .
reappear 24:10 .
reappeared 23:12, 23:14 .
reason 5:25, 49:8 .
reasoning 38:1, 55:12 .
reasons 32:22 .
recall 65:11 .
recapitulation 101:6 .
receive 41:10, 95:8 .
received 2:6, 8:19, 10:10, 10:15,

13:8, 14:21, 38:5, 40:18,
42:8, 42:11, 95:2,
109:25 .
**receiving** 26:12 .
**recent** 10:16 .
**Recess** 8:12, 8:13, 9:10, 9:11,
9:12, 13:4, 13:5, 13:6, 14:23,
14:25, 15:1, 51:22, 51:23,
51:24, 108:13, 114:23,
114:25 .
**recited** 85:19 .
**recognize** 53:20, 108:2 .
**recollection** 6:22, 10:8,
10:13 .
**reconfirming** 89:23 .
**reconsider** 38:19 .
**reconsideration** 101:7,
101:12 .
**reconstruct** 15:8, 62:10,
63:22 .
**reconstruction** 32:16 .
**reconvened** 2:2 .
**record.** 9:1, 103:25 .
**recorded** 1:48, 47:2, 56:8,
88:2 .
**recording** 104:7 .
**recount** 17:22, 70:15 .
**redacted** 6:11, 6:14 .
**redouble** 52:4 .
**reference** 15:18, 53:12,
108:24 .
**referenced** 5:16 .
**referring** 21:23, 68:17 .
**reflect** 13:8, 25:8, 38:18, 41:6,
53:10, 106:16 .
**reflection** 6:6 .
**regard** 17:2, 45:13, 52:10,
79:24 .
**Regarding** 13:12, 13:17 .
**regardless** 42:1, 104:22 .
**register** 53:14 .
**related** 4:2, 91:23, 98:10,
107:22 .
**relates** 32:2, 111:2 .
**relating** 67:4 .
**relation** 8:17, 20:11, 27:19,
28:18, 28:25, 40:25, 51:6,
78:15, 83:3 .
**Relative** 78:1, 78:3, 78:9, 78:17,
102:17 .

**relevant** 101:7, 104:5, 104:8,
104:18, 108:21 .
**relief** 28:5 .
**relieve** 28:2, 28:10, 28:17, 29:25,
30:1 .
**relieved** 28:9, 28:12, 28:21,
29:8, 29:24, 30:2 .
**relieving** 20:4 .
**rely** 6:21, 10:8, 10:13 .
**remain** 8:10, 105:5, 107:18,
109:17 .
**remained** 68:4, 113:24 .
**remaining** 71:6 .
**remains** 107:5 .
**remember** 3:19, 4:9, 5:1, 5:9,
45:13, 55:24, 55:25, 56:4,
56:7, 56:25, 57:15, 60:1,
60:10, 102:5, 102:19 .
**removal** 4:3 .
**remove** 42:24, 43:2, 54:15,
66:10 .
**removing** 27:10, 35:10 .
**render** 52:21 .
**report** 14:12 .
**reported** 43:10, 52:2 .
**Reporter** 60:23, 64:25, 104:6,
113:3, 115:20 .
**reporting** 40:8 .
**reports** 108:16 .
**request** 47:14, 107:2 .
**requested** 6:7 .
**requests** 31:3 .
**require** 108:7 .
**required** 43:2, 108:8, 109:2,
114:9 .
**resolve** 64:17 .
**resolved** 110:11 .
**respect** 16:22, 41:19, 52:11,
70:17, 108:22 .
**respond** 13:15, 49:23,
110:2 .
**responded** 33:2 .
**responses** 95:9, 102:11, 102:14,
102:17, 102:23, 102:25,
103:4 .
**responsibilities** 17:13 .
**responsibility** 33:23 .
**rest** 111:21 .
**restroom** 99:12 .
**retired** 15:10 .

**retires** 16:17 .
**Return** 15:12, 40:21, 46:17,
48:22, 53:3, 54:6, 59:21,
61:5, 62:5, 66:4, 79:17,
86:17, 90:15, 90:21, 97:10,
103:12, 103:21, 105:1,
107:21, 107:24, 108:8, 109:2,
112:22, 114:5, 114:9 .
**returning** 78:16, 91:23,
114:4 .
**reveal** 87:15 .
**revealing** 70:7, 92:2 .
**reviewed** 95:17 .
**ripen** 46:16 .
**rise** 8:12, 9:11, 13:5, 14:25,
51:23 .
**RMR** 115:4 .
**road** 108:5, 109:22 .
**role** 27:23, 28:5 .
**rooms** 16:21, 17:3, 28:25 .
**rotating** 28:7 .
**roughly** 17:7, 27:24 .
**row** 86:20 .
**Rule** 63:5, 63:14, 76:4,
91:12 .
**rules** 66:17, 75:16, 91:8,
111:11 .
**running** 105:5 .
. 
. 

**< S >** .
**S-c-h-r-e-i-b-e-r** 19:18 .
**S.** 1:40 .
**sacred** 75:20 .
**sacrosanct** 33:21, 35:25, 46:3,
66:23 .
**SAFE** 2:10, 4:21, 5:1, 9:22,
10:7 .
**SAFE.** 2:9 .
**safest** 70:14 .
**sandwich** 43:18, 43:20, 44:17,
44:24, 46:10, 46:14, 46:22,
48:6, 50:7, 64:11, 67:25,
68:2, 68:7, 88:10, 92:25,
99:11, 110:25, 111:21 .
**sandwiches** 50:7, 50:12 .
**sat** 50:23, 51:4, 72:10 .
**satisfied** 52:24 .
**saw** 3:19, 22:2, 50:10, 78:7,
102:9 .

**saying** 5:8, 54:22, 81:18, 83:17, 83:22, 87:16, 92:5, 111:2 .

**says** 3:6, 5:10, 23:23, 49:21 .

**schedule** 108:3, 108:6, 108:8, 114:3 .

**scheduled** 114:1 .

**SCHREIBER** 19:8, 19:16, 19:19, 26:19, 28:13, 28:14, 28:16, 28:21, 30:1, 30:2, 33:5, 33:6, 116:5 .

**Schreiber/eason** 31:17 .

**Scotch** 16:6 .

**scrupulously** 33:14, 34:7 .

**seal** 105:16, 106:10 .

**sealed** 16:6, 23:23, 40:13, 105:13, 105:17, 106:8 .

**sealing** 106:17 .

**search** 59:22 .

**searches** 108:22 .

**seat** 19:6, 19:9, 27:5, 35:2, 42:17 .

**seated** 2:4, 8:14, 13:7, 15:2, 19:11, 20:16, 31:20, 35:6, 43:4, 51:25, 53:8, 54:11, 107:14, 113:22 .

**second** 55:16, 67:1, 72:17, 91:22, 94:21, 102:21 .

**seconds** 96:11 .

**Secretary** 1:10 .

**Secure** 5:4, 5:6, 107:1 .

**secured** 29:3 .

**seem** 42:5, 59:16 .

**seems** 42:6, 42:7, 59:8 .

**seen** 111:14 .

**send** 17:15 .

**sending** 11:3 .

**sense** 3:21, 31:12 .

**sensitive** 97:21 .

**sent** 7:17, 9:20, 10:18, 10:25, 13:17, 82:13, 113:24 .

**September** 108:10 .

**sequence** 59:8, 69:1, 78:19 .

**sequestered** 25:20, 26:13, 41:17, 49:11, 64:1 .

**series** 94:2 .

**Service** 8:3, 8:4, 15:3 .

**Service.** 10:6 .

**serving** 27:20 .

**session** 32:7, 53:9 .

**set** 16:25, 29:6, 30:7, 30:18, 32:24, 112:1 .

**shall** 104:10 .

**shape** 45:9, 76:5, 80:14, 103:18, 105:11 .

**share** 3:25, 75:23 .

**shared** 21:21 .

**sheet** 47:19, 49:14, 63:19 .

**short** 53:9 .

**shortly** 68:1 .

**shoulder** 25:6 .

**shouldn't** 110:11 .

**Show** 7:8, 8:14, 13:14 .

**side** 30:10, 104:20 .

**sides** 7:9 .

**sign** 48:8, 48:16, 48:19, 50:11, 50:16, 50:18, 51:13, 56:18, 58:5, 68:15, 72:6, 73:3, 78:7, 81:22, 85:24, 93:22, 100:17, 105:16 .

**signature** 47:6, 73:20, 106:9, 106:17 .

**significance** 33:9, 62:13, 64:22 .

**signing** 69:4 .

**Similarly** 76:1 .

**simple** 37:19, 46:24 .

**simply** 17:21, 34:12, 76:7, 110:25, 111:5 .

**simultaneous** 17:7, 31:16 .

**simultaneously** 17:4, 104:22 .

**singular** 32:20 .

**Sit** 42:17, 55:24, 58:17, 74:18 .

**Site** 2:25, 3:2, 3:3, 3:6, 3:9, 3:10, 10:2, 11:14, 11:18 .

**sitting** 20:14, 52:23, 55:25, 58:11 .

**size** 18:15 .

**slash** 3:20, 4:5 .

**slightly** 40:8, 66:13, 69:2 .

**smoked** 28:23 .

**sneak** 18:3 .

**snuck** 18:9 .

**solely** 34:6 .

**solo** 45:15 .

**somehow** 17:8 .

**someone** 23:17, 24:23, 29:3, 30:3, 33:1, 50:10, 50:15, 50:17, 72:2, 72:12, 111:15 .

**sometime** 15:11, 31:15, 96:17, 102:8 .

**somewhat** 91:6 .

**somewhere** 36:14, 50:8 .

**Soon** 8:11, 23:9, 96:19 .

**Sorry** 11:25, 18:5, 21:3, 21:17, 47:18, 49:16, 60:7, 96:9 .

**sort** 30:5, 52:20, 64:14, 64:23, 67:4, 73:6, 89:25, 103:17, 109:23, 112:6 .

**sorts** 52:16 .

**sound** 11:10, 17:1, 30:18 .

**Sounds** 3:24, 11:21, 11:23, 21:23 .

**sources** 108:23 .

**space** 4:14 .

**sparks** 82:10 .

**speaking** 17:18, 54:15 .

**speaks** 34:13 .

**Special** 3:1, 3:4, 32:7 .

**specific** 11:4 .

**Specifically** 66:14 .

**speculate** 37:7 .

**Spell** 19:17 .

**spoke** 25:9, 25:19, 64:9 .

**spread** 50:24 .

**SSO** 2:9, 2:25, 9:22, 10:2 .

**staff** 17:5 .

**Stand** 2:9, 2:22, 9:22, 19:7, 27:2, 109:13 .

**standard** 16:16, 16:23, 30:21, 32:23 .

**standing** 21:1 .

**stands** 3:23, 4:12, 8:12, 9:11, 11:9, 11:16, 13:5, 14:25, 51:23, 114:25 .

**start** 36:4, 67:3, 97:22 .

**started** 65:10, 73:3, 99:13 .

**state** 31:13 .

**statement** 42:2 .

**States** 1:1, 1:39, 52:1 .

**stating** 104:23 .

**status** 42:5 .

**Stavlas** 106:24, 107:3, 107:4, 107:12 .

**stay** 26:20, 65:21 .

**Stefanelli** 29:13 .

**stenographic** 115:8 .

**stenography** 1:48 .
**step** 26:19, 26:20, 52:17, 76:10, 92:1, 104:24 .
**Stepping** 92:2 .
**stipulate** 2:21 .
**stood** 66:21 .
**stop** 94:20 .
**stopped** 48:10 .
**story** 70:13, 70:15, 111:14 .
**straight** 114:10 .
**Street** 1:31, 1:40 .
**stressful** 60:25, 61:1 .
**strict** 52:15 .
**strictly** 17:17 .
**subject** 4:4, 13:4, 14:23, 51:22, 66:13, 75:17, 97:21, 107:18, 109:20 .
**subjects** 74:25 .
**submission** 5:24 .
**submissions** 109:20 .
**submit** 104:15 .
**subsequent** 15:22 .
**substance** 55:10, 62:25, 77:21, 80:4, 87:7, 91:15, 98:6, 100:22, 113:25 .
**substantial** 15:14 .
**substantive** 73:21, 89:17, 95:25, 96:6 .
**subtle** 98:18 .
**sufficient** 52:24 .
**suggest** 76:6 .
**Suite** 1:31 .
**supplementing** 63:4 .
**supplied** 7:3, 83:4 .
**supply** 41:17, 41:18 .
**support** 104:16 .
**suppose** 9:7, 42:1 .
**supposed** 49:11, 111:11 .
**supposing** 37:6 .
**suspected** 18:16 .
**suspicion** 18:20, 41:19 .
**Swear** 19:7 .
**switched** 21:5 .
**switching** 19:22, 21:5 .
**sworn.** 19:8, 27:4 .
**system** 4:25, 7:21, 28:24, 29:9, 29:21, 32:22 .
.
.
**< T > .**

**T-shirt** 25:6 .
**table** 37:18, 48:10, 50:23, 51:3, 60:12, 60:14, 60:15, 71:21 .
**tainted** 51:20, 110:5 .
**talked** 41:19, 88:17, 111:15 .
**Tall** 23:21 .
**tape** 16:6, 40:13, 105:16 .
**taped** 105:17 .
**Tarra** 1:38 .
**task** 73:18 .
**telegraph** 76:6 .
**telephone** 45:3 .
**tells** 11:8, 23:23, 59:25 .
**temperature** 79:25 .
**temporarily** 23:7, 23:25, 24:18 .
**tend** 112:2 .
**terminology** 67:23 .
**terms** 32:18, 59:24, 60:11, 78:19, 91:8, 108:25, 114:12 .
**testified** 50:4, 51:16, 110:19, 110:21 .
**testify** 19:14 .
**testifying** 27:11 .
**testimony** 5:22, 5:24, 6:2, 6:22, 10:9, 10:14, 41:24, 42:13, 48:24, 49:2, 50:15, 51:14, 52:18, 59:12, 63:6, 63:17, 64:9 .
**text** 45:5 .
**that.** 85:1 .
**themselves** 24:23, 25:10, 65:4 .
**there.** 59:17 .
**thereafter** 96:19, 113:23 .
**thereto** 70:3 .
**they've** 4:13 .
**thick** 18:13 .
**thin** 25:6 .
**thinking** 55:11, 91:10 .
**thinks** 41:21, 80:5 .
**third** 111:13 .
**Thomas** 52:2 .
**Thompson** 113:19 .
**though** 4:19, 7:19, 12:20, 32:9, 69:1, 80:2, 91:4, 103:13 .
**Three** 9:23, 10:11, 59:8 .
**throughout** 15:7 .

**throw** 11:18 .
**Thursday** 114:6, 114:16 .
**tight** 58:17 .
**time]** 10:4 .
**time].** 10:7 .
**timing** 60:10, 78:14 .
**Today** 15:15, 27:21, 28:6, 43:11, 49:21, 52:12, 53:13, 57:2, 76:14, 77:15, 104:2, 104:8, 107:20 .
**together** 8:11, 10:9, 10:14, 12:7, 17:16, 17:17, 49:12, 64:1, 65:17, 100:19, 107:17, 108:7, 111:11 .
**tomorrow** 104:7, 107:21, 108:11, 112:21, 112:22, 113:2, 114:5, 114:8, 114:10, 114:15, 114:23 .
**tonight** 114:19 .
**took** 16:6, 48:8, 52:5, 72:3 .
**topic** 33:19, 65:25, 76:2, 80:1, 98:10 .
**topics** 45:25, 47:14, 53:2, 53:16, 53:23, 79:9, 88:18, 90:17, 104:12 .
**totally** 88:18 .
**touch** 80:10, 91:19, 108:17 .
**towards** 38:2 .
**tracks** 87:2 .
**transaction** 44:17 .
**TRANSCRIPT** 1:21, 1:48, 2:11, 6:2, 6:15, 6:23, 9:23, 104:6, 112:20, 113:4, 115:6 .
**transfer** 4:3 .
**transferring** 4:25 .
**transfers** 5:11 .
**transition** 31:17 .
**translation** 2:22 .
**transmitted** 2:23, 40:5, 42:12 .
**transpire** 33:9 .
**transpired** 17:23, 64:24, 90:16, 97:5, 104:8 .
**transpiring** 79:15 .
**tread** 33:20 .
**trial** 10:15, 15:7, 37:13, 43:4, 43:6, 52:4, 52:12, 69:14, 108:18, 108:19, 108:23, 111:14 .
**trial.** 10:10 .

trials 108:4 .
tried 88:23, 110:20 .
trip 51:2 .
tripped 32:25 .
true 18:21, 39:21, 42:4, 65:14,
    76:24 .
try 15:8 .
trying 29:25, 30:6, 62:9, 62:22,
    62:24, 63:22, 79:24 .
turn 27:2, 108:5 .
twice 102:4 .
twist 108:5 .
Two 5:17, 5:19, 9:22, 10:8, 17:4,
    21:9, 21:17, 32:22, 55:9,
    104:14 .
typed-out 14:18 .
typically 3:18 .
    .
    .
< U > .
U.S. 1:11, 43:13, 52:3 .
ultimately 38:2, 40:7 .
unambiguously 109:24 .
unanimous 50:5, 68:16,
    70:24 .
unanimously 51:17 .
unauthorized 51:14 .
uncovered 58:25 .
undercuts 64:15 .
understanding 16:23, 17:22,
    64:23, 65:3 .
Understood 26:18, 65:16, 66:25,
    76:8, 88:23 .
underway 35:22 .
United 1:1, 1:39, 52:1 .
unless 63:15 .
unsolicited 62:9 .
unsure 5:2 .
until 8:13, 9:12, 13:6, 15:1,
    40:10, 51:24, 83:6, 105:7,
    107:1, 107:6, 109:1, 110:22,
    114:15, 114:23 .
unusual 19:21, 28:17 .
    .
    .
< V > .
v. 52:1, 115:10 .
vacated 78:5 .
vaccinated 19:11, 27:8 .
various 65:11, 104:11 .

vault 107:1 .
verdict. 18:11 .
verified 11:1 .
verify 11:14 .
version 6:11, 6:14 .
versus 59:15 .
vestibule 18:6, 21:21, 21:25,
    22:11, 23:4, 31:18, 32:1,
    32:10, 32:25, 45:12 .
via 31:18, 31:21, 32:10, 95:13,
    111:10 .
view 6:6, 20:15, 20:19, 22:7,
    32:8, 75:22, 80:6, 104:23,
    105:14, 110:3, 110:4,
    112:2 .
viewed 106:20 .
views 34:10, 104:17, 104:19,
    110:1, 112:10 .
VII 1:22 .
violation 64:14 .
virus 19:12, 27:8 .
visit 51:7 .
VOLUME 1:22 .
vs 1:8 .
    .
    .
< W > .
Wait 50:14, 105:7, 105:22,
    109:9, 109:13 .
waited 95:18, 95:20, 95:22,
    95:23 .
waiting 82:12, 82:15, 83:21,
    84:15, 110:2 .
walk 30:8, 76:9, 91:25 .
wanted 59:14, 100:11 .
wants 30:21 .
Washington 1:32 .
watch 30:10 .
watching 21:10 .
ways 70:14 .
Wednesday 43:6 .
week 43:5 .
welcome 72:16 .
whatever 2:22, 31:2, 105:11,
    105:14 .
whatsoever 25:25, 32:8, 51:5,
    111:23 .
whereabouts 26:15 .
whether 25:19, 29:5, 32:2,
    33:16, 33:17, 34:9, 34:15,

    41:19, 49:18, 49:19, 49:20,
    52:19, 55:17, 65:3, 67:8,
    73:5, 74:13, 74:22, 74:24,
    80:11, 87:13, 91:24, 95:3,
    98:12, 105:13, 109:18,
    110:16, 111:9, 112:13 .
white 105:12 .
whole 43:7, 64:15, 65:10,
    103:16 .
whys 94:17 .
widely 5:24, 6:1 .
will. 69:21 .
window 21:14, 22:13,
    22:16 .
wish 41:9 .
wishes 11:2, 104:20 .
Within 11:15, 18:17, 23:19,
    53:18, 98:21 .
Without 5:2, 5:12, 17:5, 33:25,
    46:7, 70:7, 77:20, 83:17,
    83:22, 89:21 .
WITNESS 19:6, 24:16, 24:19,
    24:21, 24:25, 25:2, 25:5,
    25:8, 26:22, 27:1, 27:2, 59:1,
    62:9, 91:16 .
witnessed 18:2, 69:3,
    100:20 .
word 63:12 .
words 62:11, 68:21, 68:25,
    89:18, 111:10 .
work 8:10, 43:24, 45:22, 52:7,
    67:2, 67:3, 107:20 .
working 15:6, 38:2 .
world 108:4 .
Wormuth 1:10, 115:10 .
write 111:4 .
writing 104:15, 109:12 .
written 4:13, 11:3, 102:5,
    102:8 .
wrote 93:16 .
    .
    .
< X > .
X'ing 73:19 .
    .
    .
< Y > .
year 2:14, 7:1, 9:24, 10:12 .
Yep 45:16 .
Yes. 62:11, 95:5, 102:1 .

**Yesterday** 2:16, 7:17, 15:11,
    36:8 .
**YINGLING** 20:23, 26:24 .
**you.** 39:13, 48:2, 62:3, 73:8,
    79:6, 86:9, 90:12, 97:2,
    103:10 .
**yourself** 97:17, 114:13 .
**yourselves** 108:16 .